IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-CV-20436

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

  v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL
MANAGEMENT, LLC, and
BROAD STREET, INC.,

      Defendants, and

JOSEPHBENJAMIN, INC., and
JUST A NICE DAY, INC.

**DEFENDANTS' AND RELIEF DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

4904-3586-3603.11

**TABLE OF CONTENTS**

I. **PRELIMINARY STATEMENT** ............................................................................................... 1

II. **STATEMENT OF FACTS** .................................................................................................... 2

III. **ARGUMENT** ....................................................................................................................... 4

   A. Legal Standards ............................................................................................................ 4

   B. The SEC Has Not Sufficiently Alleged Violations of the Antifraud Provisions of the Exchange Act, Securities Act, and Advisers Act ......................................................... 5

      1. The Complaint Lacks Particularized Allegations Demonstrating Falsity of the Alleged Misstatements ........................................................................................... 7

         a. The Complaint lacks particularity to establish the falsity of alleged statements regarding MCA returns. ............................................................... 8

         b. The Complaint lacks particularity to establish the falsity of alleged statements regarding Series cross liability. ................................................ 11

         c. The Complaint lacks particularity to establish the falsity of alleged statements regarding the use of investor funds. .......................................... 13

         d. The Complaint lacks particularity to establish the falsity of alleged statements regarding the Qualified Small Business Stock Series. .............. 16

         e. The Complaint lacks particularity to establish the alleged falsity of statements regarding BSG Fund recordkeeping and financial statement practices. ................... 17

      2. The Complaint Lacks Particularized Allegations Demonstrating Materiality of Several Alleged Misstatements ......................................................................... 18

         a. The Complaint lacks particularized allegations supporting the materiality of the alleged misstatements related to the use of investor funds. ..................................... 19

         b. The Complaint lacks particularized allegations supporting the materiality of alleged misstatements regarding cross liability. .................................................... 20

         c. The Complaint lacks particularized allegations supporting the materiality of alleged misstatements regarding BSG Fund recordkeeping and financial statement practices. ............................................................................................ 20

      3. The Complaint Does Not Satisfy Rule 9(b)'s Pleading Requirements for Scienter ...... 21

      4. The Complaint does not properly allege Scheme Liability ......................................... 23

IV. **CONCLUSION** .................................................................................................................. 25

4904-3586-3603.11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................ 4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................ 4

*Bickley v. Caremark RX, Inc.,*
  461 F.3d 1325 (11th Cir. 2006) .............................................................................. 2

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.,*
  116 F.3d 1364 (11th Cir. 1997) .................................................................... 4, 12, 15

*Chaparro v. Carnival Corp.,*
  693 F.3d 1333 (11th Cir. 2012) .............................................................................. 4

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) ................................................................................. 24

*Corsello v. Lincare, Inc.,*
  428 F.3d 1008 (11th Cir. 2005) ........................................................................... 7, 8

*Crystal v. Foy,*
  562 F. Supp. 422 (S.D.N.Y. 1983) ........................................................................ 8

*Curts v. Edgewell Personal Care Co.,*
  2024 WL 405044 (W.D. Mo. Feb. 2, 2024) ......................................................... 10

*FindWhat Inv'r Grp. v. FindWhat.com,*
  658 F.3d 1282 (11th Cir. 2011) .............................................................................. 7

*Ganino v. Citizens Utilities Co.,*
  228 F.3d 154 (2d Cir. 2000) ................................................................................. 18

*Garfield v. NDC Health Corp.,*
  466 F.3d 1255 (11th Cir. 2006) .............................................................................. 7

*IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.,*
  660 F. App'x 850 (11th Cir. 2016) ........................................................................ 24

*In re Bankatlantic Bancorp, Inc. Sec. Litig.,*
  2010 WL 6352664 (S.D. Fla. Sept. 9, 2010) .......................................................... 9

4904-3586-3603.11

*In re BP P.L.C., Sec. Litig.*,
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................................................. 23

*Laird v. Integration Res.*,
  897 F.2d 826 (5th Cir. 1990) .............................................................................. 7

*Lorenzo v. SEC*,
  587 U.S. 71 (2019)............................................................................................... 5

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998)................................................................................... 23

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ........................................................................... 4

*SEC v. Brennan*,
  2013 WL 12091655 (S.D. Fla. Dec. 10, 2013) .................................................. 24

*SEC v. Carriba Air, Inc.*,
  681 F.2d 1318 (11th Cir. 1982) .................................................................... 18, 21

*SEC v. Complete Business Solutions Group*,
  538 F. Supp. 3d 1309 (S.D. Fla. 2021) ......................................................... 18, 21

*SEC v. Farmer*,
  2015 WL 5838867 (S.D. Tex. Oct. 7, 2015)........................................................ 6

*SEC v. Ginsburg*,
  362 F.3d 1292 (11th Cir. 2004) .......................................................................... 21

*SEC v. K.W. Brown and Co.*,
  555 F. Supp. 2d 1275 (S.D. Fla. 2007) ................................................................ 5

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011).................................................................. 24

*SEC v. Kinetic Investment Group, LLC*,
  2024 WL 4869623 (M.D. Fla. Nov. 22, 2024) ..................................................... 6

*SEC v. Monterosso*,
  756 F.3d 1326 (11th Cir. 2014) .................................................................. 5, 6, 21

*SEC v. Mueller*,
  2024 WL 400897 (W.D. Tex. Jan. 11, 2024) ....................................................... 5

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ................................................................................... 6

4904-3586-3603.11

*SEC v. Solow*,
  554 F. Supp. 2d 1356 (S.D. Fla. 2008) ................................................................................ 7

*SEC v. Westhead*,
  733 F. Supp. 3d 1284 (S.D. Fla. 2024) ...................................................................... 5, 6, 18

*Siegmund v. Xuelian Bian*,
  2018 WL 1611197 (S.D. Fla. Apr. 2, 2018) .................................................................. 6, 24

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ............................................................................................................ 18

*U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*,
  671 F.3d 1217 (11th Cir. 2012) ........................................................................................... 4

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ........................................................................................... 24

*ZPR Inv. Mgmt v. SEC*,
  861 F.3d 1239 (11th Cir. 2017) ........................................................................................... 6

**Statutes**

6 Del. C. § 18-215 ..................................................................................................................... 12

**Rules**

F.R.C.P. 9(b) ...................................................................................................................... passim

F.R.C.P. 12(b)(6) ............................................................................................................. 1, 4, 25

4904-3586-3603.11

Defendants and Relief Defendants, by and through undersigned counsel, respectfully move this Court to dismiss the Securities and Exchange Commission's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), and in support state as follows:

## I.        PRELIMINARY STATEMENT

The SEC's Complaint in this action is emblematic of the hasty circumstances under which it initiated this case. As briefed extensively in the TRO proceedings[1], the SEC initiated this matter as an emergency action seeking a TRO, appointment of a receiver, and an asset freeze against the Defendants. Despite the SEC's aggressive posture from the outset, it essentially abandoned the TRO, asset freeze, and motion for receiver *on the first day* of the TRO hearing – ultimately settling the TRO with the Defendants in exchange for the appointment of a corporate monitor over the Broadstreet-related parties.[2] The SEC's surprising retreat during the TRO hearing underscores the weaknesses in its case, and these flaws are evident in the Complaint alleged against the Defendants. Moreover, the SEC's complaint allegations ignore the expansive and valuable billion-dollar business Defendants have built through the Broadstreet enterprise which was and is poised to deliver substantial value to the Fund's investors. As of the date this case was initiated, Broadstreet's billion-dollar business was comprised of various business lines including infrastructure development, home development, hotel/lodging, land banking, restaurants, specialty finance/merchant cash advance, crypto mining, self-storage facilities, automobile dealerships, and data centers.

As explained further below, the SEC's Complaint suffers from several fatal defects. First, the SEC fails to allege sufficient particularized facts establishing the falsity of the alleged

---

[1] *See* Defendants' TRO briefs and related materials at Dkt. #'s 54 and 55.
[2] On April 21, 2025, the Court issued the Order appointing the monitor as agreed to by the parties. Dkt. # 95.

4904-3586-3603.11

misstatements at issue. Instead, the SEC relies on conclusory allegations, selective disclosures, and takes otherwise benign statements out of context. Second, the SEC fails to allege particularized facts supporting the materiality of several of the misstatements for similar reasons. Third, the SEC fails to allege sufficient facts supporting scienter against the individual Defendants, and in turn, against the entity Defendants. Finally, the SEC fails to adequately plead scheme liability. For these reasons, and for reasons more fully explained below, the Court should dismiss the SEC's Complaint in its entirety.

## II.    STATEMENT OF FACTS[3]

Broadstreet is a South Carolina-based private equity firm with over $1 billion raised. Compl. ¶¶ 1, 15, 20. Broadstreet is comprised of Broad Street, Inc. ("BSI"), Broad Street Global Management ("BSG Management") (collectively with BSI, the "Entity Defendants"), Broadstreet Global Holdings, LLC ("BSG Holdings"), Broad Street Global Fund, LLC ("BSG Fund"), and BSG Series CM, LLC ("BSG Series CM").[4] BSG Management manages and operates the BSG Fund, which is a multi-Series Delaware LLC comprised of multiple different Series with different business lines. *Id.* ¶¶ 15, 19. These Series and business lines include real estate infrastructure, home development, hotel development, qualified small business stock ("QSBS"), pre-IPO securities, fixed income securities, self-storage facilities, merchant cash advance portfolios ("MCA"), and crypto mining. *Id.* ¶¶ 2, 21, 60-94.

Joseph Baldassarra and Steven Baldassarra are the managing members of BSG Management. *Id.* ¶ 28. According to the SEC, the Baldassarras and David Feingold (collectively,

---

[3] This factual background derives from the Complaint, because when considering a motion to dismiss, the Court is limited to the allegations in the Complaint, including attached or incorporated exhibits. *E.g.*, *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006).
[4] Defendants will refer to "Broadstreet" to include BSI and its affiliated entities, BSG Holdings, BSG Fund, BSG Series CM, and BSG Management.

the "Individual Defendants") control the operations of BSG Management. *Id.* ¶ 28. The Baldassarras and BSG Management are investment advisers to BSG Fund. *Id.* ¶ 7.

The SEC's antifraud claims rely on a number of alleged misstatements to BSG Fund investors. The primary alleged misstatements at issue are:

- The SEC alleges that BSG Management, the Baldassarras, and Feingold misrepresented the returns earned by the MCA portfolios. *Id.* ¶¶ 200-03.

- The SEC alleges that BSG Management and the Baldassarras misrepresented that assets and liabilities of each Series in the BSG Fund would be kept separate and distinct and that there would not be commingling or cross-liability between the Fund Series. Compl. ¶¶ 174-76.

- The SEC alleges that BSG Management and the Baldassarras misrepresented that investor funds would be used to make investments owned and controlled solely by the BSG Fund. *Id.* ¶¶ 187-88.

- The SEC alleges that BSG Management and the Baldassarras misrepresented the tax-free treatment of returns generated in BSG Fund's QSBS Series. *Id.* ¶¶ 212-14.

- The SEC alleges that BSG Management and the Baldassarras misrepresented that BSG Fund Series would maintain separate records and they would use commercially reasonable efforts to prepare and provide investors with audited financial statements in accordance with Generally Accepted Accounting Principles ("GAAP"). *Id.* ¶¶ 221-22, 227-28.

4904-3586-3603.11

## III. ARGUMENT

### A. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, the court must accept well-pleaded allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). However, the court is not required to accept legal conclusions and conclusory allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper under these standards when the facts pleaded do not state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

For its securities fraud claims, the SEC must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires the plaintiff to state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the SEC must plead "the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *see also U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) ("The particularity requirement of Rule 9(b) is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.") (internal quotations and citation omitted)).

- 4 -

4904-3586-3603.11

With regard to the SEC's negligence-based claims, the SEC must also meet Rule 9(b)'s heightened pleading standards. *SEC v. Westhead*, 733 F. Supp. 3d 1284, 1295 (S.D. Fla. 2024).

       **B.**       **The SEC Has Not Sufficiently Alleged Violations of the Antifraud Provisions of the Exchange Act, Securities Act, and Advisers Act**

The SEC alleges that Defendants' actions violated Sections 17(a)(1)-(3) of the Securities Act of 1933 ("Securities Act"),[5] Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a)-(c) thereunder,[6] and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act").[7] There is substantial overlap among these statutes, but there are a few key differences. *See Lorenzo v. SEC*, 587 U.S. 71, 80 (2019).  First, Rule 10b-5(b) and Section 17(a)(2) address materially misleading statements or omissions, while Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) address fraudulent schemes generally (known as "scheme liability"). *See Westhead*, 733 F. Supp. 3d at 1302; *see also SEC v. Mueller*, 2024 WL 400897, at *8 (W.D. Tex. Jan. 11, 2024). Second, Section 10(b) and Rule 10b-5 apply to acts conducted in connection with the purchase or sale of any security while Section 17(a) applies to conduct in the offer or sale of any securities. *Westhead*, 733 F. Supp. 3d at 1297. Last, claims under Section 17(a)(2) and (3) and Section 206(2) do not require allegations of scienter. *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014); *SEC v. K.W. Brown and Co.*, 555 F. Supp. 2d 1275, 1308 (S.D. Fla. 2007). Regardless, claims under Section 17(a)(2) and (3) and Section 206(2) must still satisfy Rule 9(b)'s heightened pleading standards.  *Westhead*, 733 F. Supp. 3d at 1295.

To support claims under Rule 10b-5(b), the SEC must allege facts showing "(1) a material misrepresentation or materially misleading omission; (2) in connection with the purchase or sale of securities; (3) made with scienter." *Monterosso*, 756 F.3d at 1333-34. Claims under Section

---

[5] Compl. ¶¶ 254-259 (first and second claims for relief).
[6] Compl. ¶¶ 260-265 (third and fourth claims for relief).
[7] Compl. ¶¶ 266-269 (fifth clam for relief)

4904-3586-3603.11

17(a)(2) are substantially the same, requiring factual allegations showing "(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with negligence." *Id.* at 1334 (citation omitted).

Scheme liability claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) "hinge[] on the performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Farmer*, 2015 WL 5838867, at *14 (S.D. Tex. Oct. 7, 2015) (citation omitted); *Westhead*, 733 F. Supp. 3d at 1302 ("[S]cheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b-5(b)."). "Misstatements and omissions can form part of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination." *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). To support a scheme liability claim, the SEC must allege facts showing "(1) the defendant committed a deceptive or manipulative act (2) in furtherance of the alleged scheme to defraud (3) with scienter," with the exception of Section 17(a)(3) that requires just a showing of negligence. *Westhead*, 733 F. Supp. 3d at 1301-02.  The SEC must also show that *each* defendant committed a manipulative or deceptive act.  *Siegmund v. Xuelian Bian*, 2018 WL 1611197, at *7 (S.D. Fla. Apr. 2, 2018).

To state a claim under Section 206(1) and (2) of the Advisers Act, the SEC must allege facts showing "the investment adviser made a material misrepresentation with a culpable mental state." *SEC v. Kinetic Investment Group, LLC*, 2024 WL 4869623, at *42 (M.D. Fla. Nov. 22, 2024) (quoting *ZPR Inv. Mgmt v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017)). Section 206(1) requires a showing of scienter while negligence is sufficient under Section 206(2). *Id.*

4904-3586-3603.11

The SEC's remaining claims for control person liability under Section 20(a) of the Exchange Act[8] and disgorgement from Relief Defendants under Section 6501 of the National Defense Authorization Act for Fiscal Year 2021 and equitable principles[9] are fully dependent on the SEC's substantive antifraud claims.  They must be dismissed if the court dismisses the antifraud claims.  *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (Section 20(a) claim cannot stand when there is no primary violation of securities law); *SEC v. Solow*, 554 F. Supp. 2d 1356, 1363 (S.D. Fla. 2008) (disgorgement is dependent on finding wrongdoing).

### 1.    The Complaint Lacks Particularized Allegations Demonstrating Falsity of the Alleged Misstatements

The Complaint does not sufficiently allege why the primary statements at issue are misleading or constitute misrepresentations. Rule 9(b) requires that the Complaint set forth "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations omitted).

To sufficiently allege a misrepresentation, the SEC must allege facts showing that "the information disclosed, understood as a whole, would mislead a reasonable potential investor." *Laird v. Integration Res.*, 897 F.2d 826, 832 (5th Cir. 1990). For the following alleged misstatements, the SEC has not alleged the misstatements with sufficient particularity under Rule 9(b), and thus, the SEC's antifraud claims under the Securities Act, Exchange Act and Advisers Act that are based on these alleged statements should be dismissed.  *See Corsello v. Lincare, Inc.*,

---

[8] Compl. ¶¶ 270-275 (sixth claim for relief).
[9] Compl. ¶¶ 276-278 (seventh claim for relief).

4904-3586-3603.11

428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam) ("Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.").

### a. The Complaint lacks particularity to establish the falsity of alleged statements regarding MCA returns.

The SEC has not made sufficiently particularized allegations showing the falsity of the alleged misrepresentations regarding the MCA Series returns. The gravamen of the SEC's allegations is that Broadstreet represented the MCA Series would generate annual returns of 14% to 18%, depending on the particular MCA sub-Series. Compl. ¶ 139. The SEC further takes issue with Broadstreet's statement in 2022 that "[t]he average factor rate so far in 2022 has been 1.36 which is a 36% return, assuming a 12-month duration on a deal," and Broadstreet's statement in 2023 that "[t]he average factor rate for the first half of 2023 was 1.34 which is a 34% return, assuming a 12-month duration on a deal." *Id*. ¶¶ 200-02. The SEC also contends that Broadstreet's unaudited financial statement for the 2023 fiscal year was false when it stated that the "MCA portfolio historically generated average monthly returns of 2.87% and reported $56,355,806 in profits for the MCA Series." *Id*. ¶ 203. However, the SEC has not pleaded particularized allegations showing why any of these statements were false or misleading when made.

For example, the SEC alleges that BSG Fund's MCA portfolios "will likely generate no more than $20 million and will not generate more than $37 million," and that in 2022 and 2023 the MCA portfolios "did not generate 34% annual returns [or] 2.87% monthly returns." *Id*. ¶¶ 145, 205. These allegations are merely conclusory and the Complaint lacks any factual allegations supporting these conclusory figures. These types of conclusory allegations do not satisfy Rule 9(b). *See, e.g.*, *Crystal v. Foy*, 562 F. Supp. 422, 430 (S.D.N.Y. 1983) (plaintiff's allegation that defendant failed to disclose that its pension plan liability exceeded $2 billion failed to satisfy Rule 9(b) because it was "an arbitrary figure without factual support"); *Corsello*, 428 F.3d at 1013-14

4904-3586-3603.11

(plaintiff did not satisfy Rule 9(b) where they "failed to provide an underlying basis" for the alleged fraudulent claims).

Rather, to support the alleged falsity of the MCA allegations generally, the SEC alleged that the MCA management fees and commissions reduced the returns to Broadstreet, that actual returns on closed MCA deals generated less than a 3% annual return, that five of the eight MCA portfolios have lost more than $1.6 million as of July 27, 2024, and that the MCA portfolios had large numbers of accounts that were in collections and default status. Compl. ¶¶ 146-149. These arbitrary figures may appear interesting at first blush, but they ultimately do not explain why the stated MCA returns were false or misleading. First, the existence of management fees and commissions, without more particularized information, does not mean that the MCA returns were below the stated 14%-18% annual return. Second, even if returns on closed MCA deals generated less than a 3% annual return, the SEC does not specify the percentage of closed versus open deals, and the Complaint contains no allegations regarding the profitability for open MCA deals. The SEC's allegations concerning five of eight portfolios having lost money suffer the same problems. From these nonspecific allegations, it remains entirely plausible that the remaining three portfolios were large and profitable enough to cover investor obligations. Last, the SEC assumes without explanation that 96% of accounts in collections or default could not be collected, justifying its average return of less than 2%. However, the SEC does allege particularized facts showing that this percentage is justified based on Broadstreet's prior experience or any reasonable methodology. Moreover, the SEC's use of data as of July 27, 2024 (Compl. ¶¶ 148, 149), well after the Defendants made the alleged misstatements at issue, does not support the falsity of the alleged statements when made. *See In re Bankatlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6352664, at *2

- 9 -

(S.D. Fla. Sept. 9, 2010) ("The falsity of alleged misrepresentations must be determined at the time the statements were made.").

Additionally, the SEC alleges that Feingold received periodic reports on the profitability of the MCA portfolios. With regards to these periodic reports, the SEC alleges that the "projected profits on open MCA deals were less than 14% annually, and the open MCA deals included accounts in collections and default." Compl. ¶ 158. However, the Complaint does not allege that the periodic reports actually projected and showed this information, and the SEC does not once specify what the reported returns on open MCA portfolios were in any of these periodic reports.

Finally, the SEC alleges that Feingold received an "internal *stress test*" in late 2022 showing that anticipated returns would not be sufficient to satisfy investor obligations. *Id.* ¶ 160. A stress test does not, however, support falsity of the alleged statements regarding MCA returns. The more plausible inference of the SEC's allegations is that the stress test purposefully applied conservative assumptions to project a worst-case scenario that may not reflect actual expected outcomes.[10]

At bottom, the SEC's allegations are carefully crafted to paint a negative picture of the MCA portfolio returns without alleging particularized facts that demonstrate why the stated MCA returns were in fact false and misleading. Accordingly, the Court should dismiss the SEC's

---

[10] Plaintiff in *Curts v. Edgewell Personal Care Co.*, tried a similar strategy of attacking falsity by pleading falsity around the margins rather than addressing the key figures head on. Plaintiff alleged defendants falsely claimed that Wet One wipes killed 99.99% of germs. 2024 WL 405044, at *1 (W.D. Mo. Feb. 2, 2024). According to plaintiff in that case, this statement was false because the Wet One wipes were ineffective against certain bacteria and viruses. *Id.* However, this did not satisfy Rule 9(b) because it did not provide the court with enough qualitative information to infer that the 99.99% claim was false. *Id.* at *3. Likewise, the SEC's allegations herein attempt to show falsity at the margins without particularized allegations directly addressing the MCA returns. Without more the Court is left to speculate on whether the disclosed MCA returns were false.

4904-3586-3603.11

antifraud claims under the Securities Act, Exchange Act and Advisers Act that are based on these alleged misstatements.

**b.      The Complaint lacks particularity to establish the falsity of alleged statements regarding Series cross liability.**

The SEC has not made sufficiently particularized allegations establishing the falsity of the alleged misrepresentations regarding Broadstreet's statements about potential cross liability between the Fund Series. The SEC makes numerous allegations related to the BSG Fund's status as a Delaware multi-series LLC. Compl. ¶¶ 174-177. The SEC cites to statements in the Fund's PPM and Operating Agreement that discuss certain broad aspects of a Delaware multi-series LLC. For example, "[t]he Fund is divided into separate [S]eries operated in a manner so as to avoid cross-liability between the Series" (Compl. ¶ 175.a.); "[a]ach Series is a separate pool of assets with its own investment objective and strategy" (Compl. ¶ 175.b.); "[i]n general, each Series shall have a differentiated investment strategy from each other Series" (Compl. ¶ 176.a.); and "the Company shall establish and maintain separate and distinct records for such Series, and shall cause the assets, debts, liabilities, obligations, expenses, profits and losses associated with any such Series to be accounted for separately from the assets, debt, liabilities, obligations, profits and losses of the Company . . . and each other Series." Compl. ¶ 176.b.  The SEC alleges in conclusory fashion that based on the Defendants' alleged failures to treat each Series as a separate pool of assets, they created cross-liability between the Series. In this regard, the SEC states "[a]s the October 2020 PPM notes, 'such [cross-liability] protection can be lost if certain formalities are not observed, including not commingling assets and maintaining separate books and records for each series.'" *Id.* ¶ 179.

The fatal problem with the SEC's cross-liability allegations, however, is that the Complaint lacks any allegations regarding what steps an entity is required to take in order to maintain

Delaware multi-series LLC status under Delaware law.  The operative part of the Delaware LLC Act that applies to Delaware multi-series LLC's (6 Del. C. § 18-215) is not even cited by the SEC in the Complaint. Without any particularized allegations regarding what is required under Delaware law in order to avoid cross liability between Series, it is impossible to assess whether the PPM and Operating Agreement statements cited by the SEC are false and misleading.

In addition, Broadstreet's data room disclosures, which are referenced in the Complaint (Compl. ¶ 50),[11] disclose that investor funds could be invested in areas unrelated to a particular Series, and that investor distributions could be paid from any of Broadstreet's business lines (*i.e.*, Series). These disclosures state as follows in pertinent part:

THE FUND OPERATES IN MANY LINES OF BUSINESS AND INDUSTRIES. IN THE EVENT THAT AN INTEREST PAYMENT, RETURN OF CAPITAL OR ANY OTHER FORM OF PAYMENT OR DISTRIBUTION IS BEING MADE TO AN INVESTOR, <u>THE FUND MAY USE ITS REVENUES OR EARNINGS FROM OTHER BUSINESS LINES IN ORDER TO MAKE PAYMENTS TO INVESTORS</u>. FOR EXAMPLE, IN REAL ESTATE DEALS, INVESTORS ARE GENERALLY PROVIDED AN EXPECTED RETURN, HOWEVER, DEPENDING ON THE REAL ESTATE PROJECT AND THE TIMING OF WHEN SUCH A PROJECT BEGINS TO GENERATE REVENUES FROM OPERATIONS, <u>THE FUND MAY MAKE PAYMENTS TO INVESTORS FROM MONIES GENERATED FROM OTHER INVESTMENTS WHICH THE FUND HAS MADE SO THAT POSITIVE INVESTOR RETURNS CAN BE ACHIEVED</u>. WITHOUT SUCH PAYMENTS BEING MADE FROM THE FUND BY ITS OTHER BUSINESS LINES, RETURNS MAY NOT HAVE BEEN ABLE TO HAVE BEEN MADE TO INVESTORS. HENCE, <u>INVESTORS COULD RECEIVE PAYMENTS BY THE FUND FROM INDUSTRIES OTHER THAN THAT WHICH THE INVESTOR INITIALLY INTENDED TO INVEST</u>.

FOR CERTAIN INVESTMENTS IN EITHER FIXED INCOME OR REAL ESTATE PROJECTS, THE INVESTOR MAY PAY MONIES TO PARTICIPATE IN A TRANSACTION AND <u>THE FUND MAY USE SOME OR ALL OF THE INVESTOR FUNDS TO GENERATE RETURNS THROUGH INVESTMENTS UNRELATED TO THE INVESTED INDUSTRY IDENTIFIED BY THE INVESTOR</u>. FOR EXAMPLE, INVESTORS IN REAL ESTATE PROJECTS MAY HAVE SOME OR ALL OF THE FUNDS WHICH THEY HAVE PLACED WITH THE FUND ACTUALLY PLACED IN NON REAL ESTATE INVESTMENTS SUCH AS SECURITIES, DERIVATIVE CONTRACTS, DEBT PORTFOLIOS, MERCHANT CASH ADVANCE OR FIXED INCOME PRODUCTS IN ORDER TO GENERATE RETURNS TO PAY INVESTORS WHILE THE REAL ESTATE PROJECTS ARE BEING DEVELOPED AND NOT YET OPERATIONAL. <u>THE FUND MANAGER</u>

---

[11] Because the data room disclosures are central to the SEC's claims, they may be considered herein without converting the instant motion into a motion for summary judgment. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

4904-3586-3603.11

IS SPECIFICALLY GIVEN THE AUTHORITY TO USE SUCH FUNDS IN SUCH MANNER AS IT DEEMS APPROPRIATE IN ORDER TO GENERATE RETURNS FOR THE BENEFIT OF INVESTORS.

*See* highlighted text in Exhibit G attached to Declaration of Thomas J. Krysa filed concurrently herewith ("Krysa Decl.") (emphasis supplied). These same disclosures appear in Broadstreet's investor updates that are provided to investors. Krysa Decl. ¶ 3; *see also* Dkt. # 54, pp. 22-23. These disclosures undercut the SEC's allegations of purported misstatements related to cross liability in that it was disclosed to investors that there would be some manager discretion as to how Series funds would be deployed and how Series' distributions would be paid.  And importantly, these additional disclosures amplify the need for the SEC to plead facts establishing the essential requirements to maintain Delaware multi-series LLC status to in order to establish the falsity of the alleged misstatements. For the foregoing reasons, the Court should dismiss the SEC's antifraud claims under the Securities Act, Exchange Act and Advisers Act that are based on these alleged misstatements.

> c.      **The Complaint lacks particularity to establish the falsity of alleged statements regarding the use of investor funds.**

The SEC also has not made sufficiently particularized allegations demonstrating the falsity of the alleged misrepresentations regarding Broadstreet's use of investor funds. The SEC alleged that six different statements regarding the use of investor funds were materially false and misleading. Compl. ¶¶ 188-89. The SEC contends that these statements were false and misleading because, from January 2021 until September 2023, investor funds were sent to "BSG Management's bank accounts or deposited into other bank accounts owned by the Baldassarras' through which Broadstreet's investments were made." *Id*. ¶ 192. The SEC's allegations in this regard rely on a sleight of hand. The SEC alleges that investor funds would be "used to make investments that BSG Fund owned and controlled." *Id*. ¶ 187. However, none of the cited

4904-3586-3603.11

statements say exactly that. To the contrary, there is no allegation that investors were specifically told that the BSG Fund would directly own any assets. In fact, there are no allegations establishing that investor funds were used any differently than what Broadstreet disclosed to investors. Accordingly, the Complaint lacks particularized allegations demonstrating that these statements regarding the use of investor funds were in fact false.

For example, the misstatements at issue focus on how "[c]ertain Series of the Fund seek to provide positive returns by investing in a wide variety of portfolios in the merchant cash advance industry;" "[c]ertain Series of the Fund seek to invest in specific real estate projects;" "Broad Street Global Fund is invested in . . . infrastructure deals as a pool;" "Broad Street Global Fund has the rights to 70% of the Bluff at Gap Creek;" and "[t]he [MCA] sub-fund seeks to provide positive returns by investing in a wide variety of incoming generating investments in the merchant cash advance industry." *Id*. ¶ 188. These statements do not promise investors that investments would be held solely in the BSG Fund's name, as the SEC contends, and reasonable investors would have understood the statements to describe how their investments were going to be invested by Broadstreet. Indeed, there is no allegation in the Complaint that investors were promised security for their investments or that the investments would be secured by any underlying assets. To the contrary, for most of the Series investments at issue, investors were merely offered a fixed, unsecured return.

Moreover, investors were on notice that BSG Management would control their investments. BSG Fund investors were informed that the Fund had "no managing board and thus cannot act for itself," and the Fund's Operating Agreement vested "all authority to act . . . in its management BSG Management (or its agents)." *Id*. ¶ 19. Additionally, the Complaint allegations omit numerous references to the Fund's Operating Agreement that provide additional discretion

- 14 -

to BSG Management, including the discretion to hold assets for the Fund's benefit. For example, Section 4.01 of the Operating Agreement outlines in sixteen (16) subparts the broad powers and discretion provided to BSG Management to manage, own and control Fund assets. Section 4.01 states in pertinent part: The management of the Company and each Series shall be vested exclusively in the Manager. *See* highlighted text in Exhibit B to Krysa Decl. filed concurrently. The Manager shall have the authority, on behalf of and in the name of the Company or each Series, to take any action or make any decisions on behalf of the Company and each Series …". *Id.* The Operating Agreement goes on to further describe BSG Management's discretion and control including to "acquire, hold, sell, transfer, exchange and dispose of Investments, and exercise all rights, power, privileges and other incidents of ownership and possession with respect to such Investments, including without limitation, the voting of Investments, the approval of restructuring of entities in connection with Investments …" *Id.* at Section 4.01(c). Moreover, Section 4.09 states in relevant part, "[t]he Manager and its Affiliates may purchase an investment that would otherwise be appropriate for the Fund or a Series to own." *Id.* Because the Fund Operating Agreement is central to the SEC's claims, it may be considered herein. *Brooks*, 116 F.3d at 1369.

All investors received BSG Fund's Operating Agreement prior to making an investment. *Id*. ¶¶ 43-44. As such, a reasonable investor would understand that BSG Management had absolute discretion to deploy Fund capital and to own and control Fund assets. Accordingly, the SEC has not alleged particularized facts sufficient to plead misrepresentations related to the use of investor funds, and these alleged statements cannot serve as a basis for the SEC's antifraud claims under the Securities, Exchange and Advisers Acts.

- 15 -

4904-3586-3603.11

**d.      The Complaint lacks particularity to establish the falsity of alleged statements regarding the Qualified Small Business Stock Series.**

The SEC also has not made sufficiently particularized allegations showing the falsity of the alleged misrepresentations regarding Broadstreet's QSBS Series. According to the SEC, Broadstreet misrepresented that the QSBS Series would be making an investment in Broad Street Development Corp. ("BSDC"), BSDC would be "operated in such a manner as to obtain favorable tax treatment," and that BSDC was "pursuing" a real estate development project located on Saluda Dam Road in Easley, South Carolina. Compl. ¶ 212. The SEC does not demonstrate with sufficient particularity why these statements were false, and the SEC's corresponding antifraud claims must be dismissed.

First, the SEC contends that "funds raised for the QSBS Series were not provided to BSDC or any other entity that would invest the funds consistent with the pitch deck," and "BSDC has not made investments that would qualify for tax-free treatment." Compl. ¶ 217. But these are bare conclusions of falsity. Without explaining *how* the QSBS funds were allegedly used or *what* BSDC actually invested in, these are exactly the type of conclusory pleading that courts reject. Next, the SEC alleges that BSG Fund's unaudited financial statements did "not even mention BSDC." *Id*. ¶ 217. But there is no allegation that such unaudited financial statements were required to do so. Last, the SEC alleges that "BSDC's bank account reflects virtually no activity, BSDC does not own the Saluda Dam Road project, and BSDC is not registered to do business in South Carolina[.]" *Id*. ¶ 217. But even taking the Complaint as true, "virtually no activity" is not "no activity" and does not show how BSDC is failing to comport with what Broadstreet represented. Further, Broadstreet stated that BSDC was merely *pursuing* a residential development project located on Saluda Dam Road. Even if BSDC does not own the project or is currently not registered to do business in South Carolina, it does not follow that BSDC unequivocally did not *pursue* the project

- 16 -

or any of the other nine real estate development projects. Accordingly, the SEC's allegations fall short of pleading falsity with the particularity demanded by Rule 9(b).

> **e.      The Complaint lacks particularity to establish the alleged falsity of statements regarding BSG Fund recordkeeping and financial statement practices.**

The SEC alleges that BSG Management and the Baldassarras made alleged false statements regarding the Fund's recordkeeping and financial statement practices.  Compl. ¶¶ 221-223.  Again, the SEC alleges that the PPM and Operating Agreement disclosures stated that the Fund would maintain separate and distinct books and records for each Fund Series. Additionally, the SEC alleges the Fund Operating Agreement stated the Fund would use "commercially reasonable efforts" to obtain audited financial statements. The SEC alleges these and other similar statements were false and misleading.

However, the SEC fails to allege particularized facts supporting the falsity of these statements. As with the cross-liability allegations, the SEC fails to make any allegations as to what is required under Delaware law to maintain multi-series LLC status. Thus, the falsity of the alleged misstatements related to maintaining "separate and distinct" books and records cannot be properly assessed. If not required under Delaware law, the complained of statements would be benign and not problematic.

Additionally, the SEC's allegations fail to establish why a statement that the Fund would use "commercially reasonable efforts" to obtain financial statements could be false and misleading. Simply put, the SEC fails to allege any facts demonstrating that BSG Management *did not* pursue commercially reasonable efforts to obtain audited financials. This is particularly glaring when the SEC knows full well that the existence of the SEC's investigation has prevented the Fund from obtaining audited financials since 2022.

4904-3586-3603.11

For these reasons, the alleged misstatements related to Fund recordkeeping and financial statement practices should be dismissed from the antifraud claims under the Securities, Exchange and Adviser Acts.

### 2. The Complaint Lacks Particularized Allegations Demonstrating Materiality of Several Alleged Misstatements

Several of the SEC's alleged misstatements lack particularized allegations supporting the materiality of the statements at issue. To be material, the Supreme Court explained, there must be a substantial likelihood that misrepresented or omitted information "would have been viewed by [a] reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In other words, there must be "a substantial likelihood that a reasonable shareholder would consider [the misleading or undisclosed information] important" in making his or her investment decision. *Id.* at 446; *see also SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982) (the test "is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action.").

Because of the objective nature of materiality and assessment of a reasonable investor, materiality is a mixed question of law and fact. *Westhead*, 733 F. Supp. 3d at 1299. Accordingly, alleged misstatements or omissions that "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance" merit dismissal. *SEC v. Complete Business Solutions Group*, 538 F. Supp. 3d 1309, 1330 (S.D. Fla. 2021) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).

4904-3586-3603.11

> a.   **The Complaint lacks particularized allegations supporting the materiality of the alleged misstatements related to the use of investor funds.**

According to the SEC, BSG Management and the Baldassarras made false and misleading statements that "BSG Fund investor funds were being used to make investments that BSG Fund owned and controlled." Compl. ¶¶ 187-188.  Again, the phrase "that the BSG Fund owned and controlled" does not appear in any statements in this case – it is an SEC paraphrase that reflects a sleight of hand. The SEC claims that statements on this topic were material because it was "important to a reasonable investor that his or her investment be held by BSG Fund so that the assets and profits, if any, are available to repay the investor and so that the investment is not subject to liability of third-party entities." *Id*. ¶ 197.

However, the SEC also acknowledges that "BSG Fund's operating agreement vests" BSG Management with "all authority to act for BSG Fund." *Id*. ¶ 19. The Fund's Operating Agreement clearly discloses that BSG Management had absolute discretion over Fund investments including holding assets on the Fund's behalf. *See infra* at Section III.B.1.c. Importantly, investors were provided access to BSG Fund's operating agreement prior to investing. *Id*. ¶¶ 43-44. In addition, there is no allegation that investors were promised security for their investments or that their investments would be secured by underlying assets.  Accordingly, it is unclear as alleged why any reasonable investor would expect assets to remain *solely* within the BSG Fund or why any reasonable investor would find this important in making an investment decision given Broadstreet's disclosure of BSG Management's absolute discretion and control over the BSG Fund.

Moreover, the statements the SEC alleges were materially false and misleading focused on *how* Broadstreet intended to use investor funds, not *who owned* the investments. There is no dispute that Broadstreet actually used investor funds to invest in the various Fund Series. Given

4904-3586-3603.11

that investor funds were invested as intended, the SEC has not properly pled materiality and these statements cannot serve as a basis for liability herein.

### b. The Complaint lacks particularized allegations supporting the materiality of alleged misstatements regarding cross liability.

The Complaint also lacks allegations establishing the materiality of the alleged misstatements regarding cross liability issues. As indicated above, the SEC alleges that BSG Management failed to adequately keep books and records for the various BSG Fund Series supposedly creating cross liability between the Series. The SEC conclusively states that the cross liability issues were material to the Fund's investors. For similar reasons described above, the SEC's allegations miss the mark. The Complaint wholly lacks any allegations regarding what steps an LLC entity is required to take in order to maintain Delaware multi-series LLC status under Delaware law. Because of this, it is not possible to determine whether the alleged misstatements are material to the Fund's investors. Additionally, data room and investor update disclosures undercut the SEC's allegations on this topic. *See infra* at Section III.B.1.b. Accordingly, the alleged misstatements related to cross liability should be dismissed from the antifraud claims under the Securities, Exchange and Advisers Acts.

### c. The Complaint lacks particularized allegations supporting the materiality of alleged misstatements regarding BSG Fund recordkeeping and financial statement practices.

As indicated above, the SEC alleges that BSG Management and the Baldassarras made alleged false statements regarding the Fund's recordkeeping and financial statement practices. Compl. ¶¶ 221-223. As stated, the SEC alleges that the PPM and Operating Agreement disclosures stated that the Fund would maintain separate and distinct books and records for each Fund Series and that the Fund Operating Agreement provided the Fund would use "commercially reasonable efforts" to obtain audited financial statements.

- 20 -

4904-3586-3603.11

The SEC's Complaint wholly fails to allege particularized facts supporting the materiality of these alleged false statements. Because the SEC fails to allege the Delaware multi-series LLC recordkeeping requirements, it is impossible to evaluate the materiality of the alleged recordkeeping misstatements. Similarly, the SEC allegations fail to establish the materiality of the Fund's failure to obtain audited financials when they were not promised to investors but rather only "commercially reasonable efforts" were required. For these reasons, the SEC's allegations related to the Fund's recordkeeping and financial statement practices cannot serve as a basis for the SEC's antifraud claims under the Securities, Exchange and Adviser Acts.

### 3. The Complaint Does Not Satisfy Rule 9(b)'s Pleading Requirements for Scienter

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *SEC v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004) (internal quotations and citation omitted). Scienter can be established through a showing of severe recklessness or knowing misconduct. *Monterosso*, 756 F.3d at 1335. Severe recklessness encompasses conduct that "was an extreme departure of the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir.1982)).

The SEC may allege scienter generally, but it must still "allege plausible facts or suggest reasonable inferences" that, when taken as true, would support a finding of scienter. *Complete Business Solutions Group*, 538 F. Supp. 3d at 1330 (citation omitted). The sufficiency of the SEC's allegations supporting scienter is evaluated in its entirety, rather than looking at allegations in isolation. *Id.*

The SEC's scienter allegations against the Individual Defendants are no more than a recitation of elements and boiler-plate statements regarding Defendants' positions (evidenced by

- 21 -

the same typographical errors appearing in each repetition of the allegations). The SEC's scienter allegations against Defendants are based primarily on their roles and respective "management positions." For example, with regard to its claims that Defendants commingled funds, the SEC alleges:

> . . . the Baldassarras knew or were severely reckless in not knowing, and should have known, that the statements were false and misleading. As the managing members of BSG Management and in light their [*sic*] control over that entity and BSG Fund, at all relevant times the Baldassarras knew that the funds in each Series were being handled in a way that was inconsistent with the disclosures in the October 2022 PPM and the Operating Agreements.
>
> The scienter and negligent conduct of Joseph Baldassarra and Steven Baldassarra is imputed to BSG Management.

*Id.* ¶¶ 181-182 (emphasis supplied). As another example, with regard to its claims that investor funds were not being held by BSG Fund, the SEC alleges:

> . . . the Baldassarras knew or were severely reckless in not knowing, and should have known, that the statements were false and misleading. As the managing members of BSG Management and in light their [*sic*] control over that entity and BSG Fund, at all relevant times the Baldassarras knew that the funds and assets of BSG Fund were not being held by BSG Fund as represented in the Offering Documents and on BSI's web site.
>
> The scienter and negligent conduct of Joseph Baldassarra and Steven Baldassarra is imputed to BSG Management.

*Id.* ¶¶ 195-196 (emphasis supplied). Similarly, with regard to its claims that the Baldassarras knew BSDC was not investing the QSBS funds appropriately, the SEC alleges:

> . . . the Baldassarras knew or were severely reckless in not knowing, and should have known, that the statement was false and misleading. As the managing members of BSG Management and in light their [*sic*] control over that entity and BSG Fund, at all relevant times the Baldassarras knew or were severely reckless in not knowing, and should have known, how investor funds were being invested, including the QSBS Series.

*Id.* ¶ 218 (emphasis supplied); see also *id.* ¶¶ 208, 209, 225, 232.

- 22 -

The Complaint allegations that the Individual Defendants knew the falsity of the statements based primarily on the Baldassarras' and Feingold's respective roles and positions, are insufficient to establish scienter absent other particularized facts. Additionally, the SEC's conclusory allegations that the Individual Defendants "should have known" or "were severely reckless in not knowing" are similarly lacking any factual allegations probative of scienter and also fail. *See Maldonado v. Dominguez*, 137 F.3d 1, 10 (1st Cir. 1998) (affirming dismissal where, "[u]nfortunately for the plaintiffs, [inferences that Defendants "must have known" the falsity of statements] are precisely the types of inferences … determined to be inadequate to withstand Rule 9(b) scrutiny"); *In re BP P.L.C., Sec. Litig.*, 843 F. Supp. 2d 712, 781 (S.D. Tex. 2012) (dismissing claims against defendant because "conclusory allegations that a defendant 'should have known' about internal corporate problems based solely on his position within the company are insufficient to establish scienter … under the heightened pleading requirements of Rule 9(b)" among others) (internal quotations and citations omitted).

Based on the foregoing, the SEC's antifraud claims against the Individual Defendants requiring scienter should be dismissed. And because the SEC has failed to properly plead scienter for the Individual Defendants, its claims against the Entity Defendants should be dismissed as well.

### 4.      The Complaint does not properly allege Scheme Liability

The SEC's claims for Scheme Liability necessarily rely on the same allegations and bases above, and thus also fail.  But they also fail for a different reason:  a claim for Scheme Liability is not simply duplicative of other claims regarding false or misleading statements—it requires something more, and something distinct for *each* defendant.  The SEC has not properly alleged additional actions by any—and certainly not all—of the Individual Defendants which might implicate Scheme Liability, and thus this claim fails as well.

"Scheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). "Misleading statements and omissions only create scheme liability in conjunction with 'conduct beyond those misrepresentations or omissions.'" *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016) (*quoting WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011)). Conduct is "deceptive" when it has "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *SEC v. Brennan*, 2013 WL 12091655, at *2 (S.D. Fla. Dec. 10, 2013). Even when alleging that defendants collectively violated the scheme liability provisions, the SEC must show "each defendant committed a manipulative or deceptive act in furtherance of the scheme." *Siegmund* , 2018 WL 1611197, at *7 (quoting *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997)).

In other words, the SEC cannot simply copy and paste its misrepresentation allegations—whether figuratively or literally, as it has done here. It must allege more—a specific deceptive act or specific deceptive conduct by each of the Defendants. However, the Complaint is devoid of any such allegations on the part of any of the Individual Defendants. For example, the SEC makes allegations related to the Tri-Party Agreement as a potential deceptive act (Compl. ¶¶ 236-39). But this agreement again points to cross liability issues. As explained above, the SEC has not sufficiently pled the requirements under Delaware law and these allegations fail. The SEC next alleges the Individual Defendants committed deceptive acts because the Fund did not own investor assets. *Id*. ¶ 240. However, this is an SEC construct. The SEC makes no allegations stating that Fund ownership of investor assets was ever promised and the Complaint allegations actually establish BSG Management's absolute discretion to deploy investor funds. The SEC next alleges

- 24 -

4904-3586-3603.11

the Baldassarra's disseminated false account statements.  *Id*. ¶ 241. However, it also concedes that this was actually done by outside vendors and not them.  *Id*. ¶ 242. Finally, the SEC alleges kitchen sink allegations against the Baldassarra's all based on cross liability issues again.  *Id*. ¶ 246. These allegations fail for the same reasons stated previously herein. For these reasons, the Complaint is lacking allegations regarding any separate deceptive conduct, apart from alleged misstatements, on the part of any of the Defendants individually, and certainly not collectively.  Without any such allegations, there can be no Scheme Liability claims here.

## IV.     CONCLUSION

Based on the foregoing, the Defendants and Relief Defendants respectfully move this Honorable Court to dismiss the SEC's claims in whole or in part for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the SEC has failed to allege materially false statements, scienter or scheme liability with sufficient particularity under Rule 9(b), each of the SEC's claims should be dismissed as to the Defendants and Relief Defendants.

Dated: May 21, 2025
Miami, Florida

Respectfully submitted,

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**

By: ***Thomas Scot Wolinetz***
Thomas Scot Wolinetz
Florida Bar No. 1001160
Irwin Weltz (PHV)
1 Old Country Road, Suite 275
Carle Place, New York 11514
Telephone: (212) 202-3176
Facsimile: (516) 855-8776
twolinetz@weltz.law
irwin@weltz.law

4904-3586-3603.11

**GALLIVAN WHITE & BOYD P.A.**

Ioannis (Ian) G. Conits (PHV)
55 Beattie Pl., Suite 1200
Greenville, South Carolina 29601
Telephone: 864-271-5432
iconits@gwblawfirm.com

*Attorneys for Broadstreet Inc. and
David Feingold*

**FOLEY & LARDNER LLP**

By: ***Thomas J. Krysa***
Thomas J. Krysa (PHV)
tkrysa@foley.com
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: 720.437.2000

Andrew A. Howell (PHV)
ahowell@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000

Crystal B. Carswell (FBN 108882)
Primary email: ccarswell@foley.com
Secondary email: andre.melo@foley.com
100 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813.229.2300

**BERKELEY LAW P.A.**

By: ***Lorne E. Berkeley***
Lorne E. Berkeley, Esq.
Florida Bar No. 146099
10600 Griffin Road, Suite 104
Cooper City, Florida 33328
Telephone: (954) 719-3484
Lorne@BerkeleyLawFL.com

*Attorneys for Broadstreet Global
Management LLC, Joseph B. Baldassarra,
and Steven B. Baldassarra*

4904-3586-3603.11

- 27 -

**MARCUS NEIMAN
RASHBAUM & PINEIRO LLP**

By: ***Bryan A. Almeida***
Daniel L. Rashbaum, Esq.
Florida Bar No. 75084
drashbaum@mnrlawfirm.com
Michael A. Pineiro, Esq.
Florida Bar No. 41897
mpineiro@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com

One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131

Jeffrey A. Neiman, Esq.
Florida Bar No. 544469
jneiman@mnrlawfirm.com

One Financial Plaza
100 S.E. 3rd Ave., Ste. 805
Fort Lauderdale, Florida 33394

*Attorneys for Relief Defendants,
JosephBenjamin, Inc. and Just a Nice Day,
Inc.*

4904-3586-3603.11