UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-20436-DPG

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL MANAGEMENT, LLC,

and

BROAD STREET INC.,

    Defendants, and

JOSEPHBENJAMIN, INC., and
JUST A NICE DAY, INC.,

    Relief Defendants.
_____/

## MONITOR'S LIMITED RESPONSE TO EXPEDITED MOTION FOR CLARIFICATION OF REQUIREMENTS OF PARAGRAPH 25 OF MONITORSHIP ORDER

Jeffrey C. Schneider, not individually, but solely in his capacity as the Court-appointed monitor (the "Monitor") for the Monitorship Entities,[1] hereby submits this limited response to clarify the record regarding certain misstatements made in Defendants' and Relief Defendants' Expedited Motion for Clarification of Requirements of Paragraph 25 of Monitorship Order [ECF No. 142] and supporting Declarations.

The Monitor submits this response—not to weigh in on the definition of "accounting," a

---

[1] The "Monitorship Entities" are identified in paragraph 2 of the Monitorship Order.

1

term of art in the SEC world, a term that the Monitorship Entities advised the Monitor that they understood, and a term to which the Monitorship Entities agreed—but (i) to advise the Court exactly what the Monitor communicated to the Monitorship Entities was expected of them, and when, and (ii) to respond to the accusation that the Monitor is somehow "acting as part of the SEC litigation team" when he complies with the Monitorship Order and responds to reasonable inquiries made upon him by the SEC.

    **I.**    **It Has Always Been the Monitor's Position—Shared with the Monitorship Entities—that Paragraph 25 Required the Auditing Firm to Conduct the Accounting, not Simply Review Defendants' Work**

As the Court is well aware, prior to the appointment of the Monitor, the SEC and the Defendants negotiated and agreed to the Order Granting Stipulated Motion to Appoint a Monitor and Other Additional Relief (the "Monitorship Order") [ECF No. 95]. In that order, the Defendants agreed that (i) they would "promptly retain an independent and suitable auditing firm;" (ii) they would "***cause such firm*** to promptly conduct an accounting of assets, liabilities, profits or losses, expenses, and revenues of each Monitorship Entity, and each series;" and (iii) they would have such firm "provide that accounting to the SEC." *See* Monitorship Order ¶ 25 (emphasis added).

Since his appointment, the Monitor has reported on the Monitorship Entities' efforts to comply with Paragraph 25. As noted in the Third Status Report, filed July 30, 2025, only five days prior: "[o]n July 25, 2025, the Court granted a joint motion to continue various deadlines, including extending the deadline to provide the accounting until August 31, 2025. [ECF No. 134]." *See* Third Status Report ¶ 13, ECF No. 135. Lest there be any doubt about what the Defendants were obligated to do, the Monitor also reported that: "The Monitorship Order requires the Monitorship Entities to promptly engage an independent and suitable auditing firm to conduct an accounting of the Monitorship Entities' assets, liabilities, profits or losses, expenses, and revenues." *Id.*

Just two weeks prior, on July 14, 2025, the Monitorship Entities had provided the Monitor with an engagement letter for an auditing firm[2] they wished to retain to comply with Paragraph 25. *See* Third Status Report ¶ 15; Weltz Decl. ¶ 16, ECF No. 142-1. Up until that time, the Monitorship Entities had advised the Monitor that they, for a variety of reasons, had been unable to retain a suitable auditing firm that could conduct the accounting. *See* Third Status Report ¶¶ 13–15.

According to the Engagement Letter provided, the Monitorship Entities proposed to retain Premier Accounting to conduct a "review engagement." The Monitor had no role in negotiating Paragraph 25, but the Defendants specifically advised the Monitor—when advising him that a full-blown audit was not necessary—that "accounting" is a term of art with which they are familiar, which is why they agreed to it. Indeed, one of the attorneys representing the Monitorship Entities is a former high-ranking SEC attorney; he specifically advised the Monitor that he understood what the term "accounting" meant and what Defendants were required to do.

Regardless of whether the term entails an audit or something less, one thing is clear: ***the auditing firm must perform the work***—as opposed to merely reviewing Defendants' work. *See* Monitorship Order ¶ 25 ("Defendants shall cause *such firm* to promptly conduct an accounting … and to provide such accounting to the SEC."). To that end, the Monitor confirmed with the Monitorship Entities—*twice*, *in writing*—that the auditing firm would be performing the accounting, not just reviewing Defendants' work. The Monitorship Entities confirmed that understanding.

On July 28, 2025, the Monitor emailed the following to Defendants' counsel (and to Defendant David J. Feingold):

Regarding paragraph 25, the SEC agrees that an audit does not have to be

---

[2] The Third Status Report referred to the most recent accounting firm as the third, but it was actually the fourth.

> performed, but they wanted me to remind you that the auditing firm—in this case, Premier Accounting—must perform the accounting. In other words, Premier Accounting is not reviewing Broadstreet's work; Premier Accounting is itself performing the accounting required by paragraph 25 of the Monitorship Order.

*See* July 28–31, 2025 Emails between J. Schneider and I. Weltz, attached as **Exhibit A**.

On July 31, 2025, the Monitorship Entities' counsel and designated representative provided a non-committal response:

> Section 25 of the Monitorship Order requires "an accounting of assets, liabilities, profits or losses, expenses, and revenues of each Monitorship Entity, and each series, and to provide that accounting to the SEC." Broadstreet believes that the work being done by its new accounting firm is consistent with the Monitorship Order and expects to begin to provide the accounting to the Monitor and SEC shortly. To the extent the Monitor or SEC raises issues with the accounting we will address when raised.

*See id.* The Monitor was displeased with the unclear response, so he followed up and confirmed again:

> I don't want any issues down the road, and Paragraph 25 also says that "Defendants shall cause *such firm* to promptly conduct an accounting …" Please just confirm that the auditing firm—in this case, Premier Accounting—is performing the accounting as opposed to reviewing Broadstreet's work.

*See id.* (emphasis in original). This time, the Monitorship Entities' counsel and designated representative confirmed: "That is my understanding." *See id.*

## II.  The Monitorship Entities Produce a "Draft" Accounting, Which They Advised the Monitor They Were Correcting

On August 6, 2025—six days after the foregoing email exchange, and 25 days before the accounting was due—counsel for the Monitorship Entities forwarded to the Monitor an email that had been sent to the SEC enclosing a *draft* accounting. *See* August 6, 2025 email from T. Krysa to J. Schneider, attached as **Exhibit B**. The subject line of the email said: "Draft accounting materials." *Id.* The body of the email to the SEC said: "Following this email, we will be transmitting via Titan File the **draft accounting** for 2024 which includes the independent CPA's

4

financial statements[3] and backup accounting materials. Please provide any feedback when convenient and let us know if you want to set up a call to discuss." *Id.* (emphasis added). The email to the Monitor likewise said: "We will be transmitting the 2024 **draft accounting** referenced below via Titan File to you shortly in a separate email." *Id.* (emphasis added).

On or about August 27, 2025, the Monitor's counsel had a Zoom meeting with counsel and designated representatives for the Monitorship Entities. Among other matters, the Monitorship Entities advised that they had a conversation with the SEC during which the SEC advised that it was not satisfied with the accounting provided, advised that Paragraph 25 required something more, and was unwilling to mediate without the completed accounting. The Monitorship Entities advised that they were working with the SEC to resolve the issue, which apparently resulted in the Monitorship Entities "agree[ing] to perform the audit." *See* Weltz Dec. ¶ 31. As of that time, the Monitor was thus under the impression that the *draft* accounting provided on August 7, 2025 was just that—a *draft*—and that a corrected accounting that complied with Paragraph 25 was being prepared.

Given that Paragraph 25 is an obligation on the Defendants (not the Monitor), that Paragraph 25 required the auditing firm to provide the accounting to the SEC (not the Monitor), and that the Monitor was told that the Monitorship Entities were conversing with the SEC about correcting the accounting as a precondition to mediation, the Monitor was fine with the Monitorship Entities and the SEC handling the issue among themselves. The Monitor never received an updated accounting from the Monitorship Entities.

---

[3] To be clear, despite claiming that the work comprised "the independent CPA's financial statements," what was produced appears to be a version of the Monitorship Entities' existing unaudited financials, not new financials prepared by the auditing firm, as was required. Those existing unaudited financials are what the Monitor recommended be removed from the institutional data room in the Third Status Report.

5

### III. The Monitor Is Not "Acting as Part of the SEC Litigation Team" When He Complies with the Court's Monitorship Order and "Promptly Answer[s]" "Reasonable Inquiries" from the SEC

The Monitorship Order specifically allows the SEC to "ask reasonable questions, make reasonable inquiries to the Monitor, and provide information or documents to the Monitor." *See* Monitorship Order ¶ 12. The Monitor, in turn, is then obligated to "promptly answer or otherwise respond to such reasonable questions or inquiries." *Id.*

On October 10, 2025, the Monitor had a call with the SEC at the SEC's request. During the call, the SEC advised that they were considering a motion to compel compliance with Paragraph 25 and inquired as to the Monitor's position on whether the Monitorship Entities had complied with Paragraph 25. At that time, the Monitor had only received the draft accounting in early August and was told by the Monitorship Entities that they were correcting the accounting, but the Monitor had not received an updated accounting. If the Monitorship Entities had only delivered the corrected accounting to the SEC, that would have been fine because Paragraph 25 only requires that the accounting be provided "to the SEC." The Monitor considered the SEC's question to be a "reasonable inquiry," thereby triggering the Monitor's obligation to "promptly answer or otherwise respond." *See* Monitorship Order ¶ 12.

The Monitor thus emailed the Monitorship Entities on the same day and asked the following: "Can you please send me the accounting that was sent to the SEC pursuant to paragraph 25?" When the Monitorship Entities responded that they had already sent the accounting in early August, the Monitor was surprised to learn that the *draft* accounting sent on August 7, 2025 that was supposedly being corrected was what the Monitorship Entities now considered to be *the* accounting required by Paragraph 25.

6

On October 15, 2025, counsel for the Monitorship Entities resent the same documents previously identified as the *draft* accounting. Upon review of those materials, the Monitor was indeed baffled. Despite the Monitor previously confirming in writing that "Premier Accounting[] is performing the accounting as opposed to reviewing Broadstreet's work," and despite the designated representative for the Monitorship Entities confirming "[t]hat is my understanding," the *draft* accounting—now being passed off as a final that complied with Paragraph 25—was nothing more than a "review" of the Monitorship Entities' existing unaudited financials. The document is literally called a "Review Report." The cover page confirms that the auditing firm merely "reviewed" existing financial statements prepared for "Broad Street, Inc. and Related Entities." The cover page memorializes that "Management is responsible for the preparation and fair presentation of these consolidated financial statements" and the auditing firm's sole responsibility was to "conduct the review engagement."

As a result, the Monitor made the formal recommendation for the Monitorship Entities to comply with Paragraph 25—that is, to "cause such firm to conduct an accounting of assets, liabilities, profits or losses, expenses, and revenues of each Monitorship Entity, and each series, and to provide that accounting to the SEC." *See* Monitorship Order ¶ 25.

To the extent the Court seeks further input from the Monitor, the Monitor will be available for any hearing set on this issue.

Dated: October 21, 2025                          Respectfully submitted,

                                                  LEVINE KELLOGG LEHMAN
                                                  SCHNEIDER + GROSSMAN LLP

By: /s/ *Jeffrey C. Schneider*
    Jeffrey C. Schneider, P.A.
    Florida Bar No. 933244
    Miami Tower
    100 SE 2nd Street, 36th Floor
    Miami, FL  33131
    Telephone: (305) 403-8788
    Primary email: jcs@lklsg.com
    Secondary e-mail: ph@lklsg.com

    *Court-Appointed Monitor*

By: /s/ *Stephanie L. Hauser*
    Stephanie L. Hauser, Esq.
    Florida Bar No. 92765
    Miami Tower
    100 SE 2nd Street, 36th Floor
    Miami, FL  33131
    Telephone: (305) 403-8788
    Primary email: slh@lklsg.com
    Secondary e-mail: ame@lklsg.com

    *Counsel for* C*ourt-Appointed Monitor*