IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-CV-20436-DPG

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

  v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL
MANAGEMENT, LLC, and
BROAD STREET, INC.,

        Defendants,

JOSEPHBENJAMIN, INC., and
JUST A NICE DAY, INC.,

        Relief Defendants.

**DEFENDANTS' AND RELIEF DEFENDANTS' EXPEDITED MOTION TO
DISCHARGE MONITOR FOR CAUSE AND REQUEST FOR HEARING PURSUANT
<u>TO LOCAL RULE 7.1</u>**

Defendants do not take lightly the magnitude of this Motion but the misconduct of Jeffrey C. Schneider ("Schneider") is so severe that he must be discharged as Monitor for cause immediately. To be clear, this Motion does not arise from mere disagreements with Schneider or "sour grapes." It arises from Schneider's outrageous, repeated and intentional bad faith conduct. Below is just a sampling.

### BAD FAITH NO. 1

Earlier today, Schneider made a filing (ECF 172) in clear bad faith and in violation of the Monitor Order. The Monitor Order provides after the "Cure Period [to address the Monitor's recommendations], the Monitor shall notify Defendants and the SEC whether Defendants have implemented the Monitor's recommendations." (ECF 95, ¶ 18). As he frequently does, Schneider disregarded the Monitor Order by filing ECF 172 without notification to Defendants, this time in order to "race to the courthouse" after Defendants made clear to him that they are going to sue him for his outrageous conduct.

Schneider already submitted his comments on the "accounting" a month ago. (*See* ECF 151). Worse, Schneider has had the "accounting" for months (provided to him in ***August 2025***). ECF 172 and ECF 151 both cover the "accounting." What is critical is how they differ:

(1) ECF 172 contains numerous false and malicious statements about Defendants that ECF 151 does not. For example, Schneider falsely states that Samson MCA LLC is "owned in part by Defendant David Feingold[]." In fact, Steven M. Markowitz, Jr. the **actual** owner of Samson MCA LLC testified to the SEC on September 14, 2023 that he "is the manager and the sole owner 100 percent [of Samson MCA]. All the entities are [his]."

(2) In ECF 151, Schneider did "not weigh in on the definition of 'accounting'." (*Id.* at 1). In ECF 172, however, Schneider now in clear coordination with the SEC confidently proclaims what an "accounting" means.

The reason for these differences is obvious to Defendants and now needs to be made clear to this Court. On November 13, 2025, despite not having the power to approve or disapprove Broadstreet's business decisions, Schneider made clear to Defendants' counsel that he would not approve Broadstreet's redemption transaction and, in turn, would take steps to harm Broadstreet's business, unless Broadstreet agreed to offer far more than what its governing documents require.

Later that same day, counsel for Defendants (three separate law firms) wrote Schneider and made clear to him that Defendants would comply with his demand *but* that they were doing so "under duress and involuntarily after [Defendants' counsel] conveyed [Schneider's] intended course if they did not do exactly as [he] demanded." As alluded to above, Schneider made it clear during his call with defense counsel, that if Defendants give into his demands that he would sully the court file to significantly harm them and their business. As a result, the Defendants through counsel, stated in no uncertain terms to Schneider that "***No rights are being waived by complying with [his] demands.***" (emphasis added). This sentence is emphasized because it apparently stuck with Schneider. The next day, Schneider wrote:

> I have no way of knowing what you mean by the repeated reservation of rights. If you are reserving the right to reduce capital accounts by distributions before payment is made to the investors, then you must say that now because it will result in my disapproving the transactions in its current form.

Schneider, a longtime lawyer, knew that, among other things, Defendants were expressly reserving their right to sue him for his clear bad faith. In response and consistent with his reputation, Schneider is now doing what he does when he finds himself in an unfavorable position. He is attempting to go on offense for no other reason than to hurt Defendants.

Schneider's bad faith is clear because Broadstreet is redeeming all of its investors. Worse, the SEC has represented that it has no objection to discharging Schneider once there are no investors. Despite this, Schneider is continuing to make document requests and issue decrees regarding business decisions, with an obvious aim to create conflict, prolong his lucrative involvement with Broadstreet and harm Defendants. This is clear bad faith. Schneider's purpose as monitor is to protect investors and they are all being redeemed by Broadstreet. His recent conduct is thus motivated by Defendants' reserving their rights, which cannot possibly be construed as "good faith compliance" with the Monitor Order.

### BAD FAITH NO. 2

Schneider has consistently taken obvious false positions regarding MCA profitability knowing such positions are contrary to even the SEC's own expert report. Worse yet, he has publicly accused Defendants of misleading him regarding Broadstreet's MCA portfolios in court filings, when in fact, Defendants have been truthful and clear with Schneider on this issue at all times.

### BAD FAITH NO. 3

Schneider has stated to no less than **_six witnesses_** that he was chastised by the SEC for not writing critical reports regarding Defendants. For context, Schneider had been one of the SEC's three choices to become receiver. Defendants therefore had serious concerns about selecting Schneider as the Monitor. To allay Defendants' concerns, Schneider represented to Defendants that he would be impartial and fair. This was not true. Despite making such representations, Schneider has not been fair or impartial at all since the SEC started criticizing him and he has even conceded through his "counsel" (*his law firm*) that he is being used by the SEC as a "conduit." Defendants have also recently learned that Schneider has a close relationship with the SEC's sole expert, Melissa Davis. Schneider, of course, did not disclose that pre-monitorship. It appears clear to Defendants that the SEC is influencing Schneider to act against Defendants on nearly every issue. As a result, Schneider is not acting impartially and in bad faith. This is particularly egregious in light of the fact that Broadstreet is redeeming all investors.

### BAD FAITH NO. 4

Schneider demanded that Defendants place **_$25 million_** in his attorney escrow account **_without a written escrow agreement_**.

### BAD FAITH NO. 5

Schneider has made clear to Defendants that any push back on his "recommendations" (which he wrongly treats as decrees) will ultimately lead to the conversion of his monitorship to *his* receivership and the liquidation of Broadstreet's business. What is particularly striking about this threat is that Schneider has separately stated to Defendants (while in a non-threatening mood) that there are no legitimate grounds to convert his monitorship into a receivership *and* admitted that investors would receive a much worse deal under a receivership than the redemption deal that Broadstreet is delivering.

### BAD FAITH NO. 6

Schneider forced Defendants to offer to redeem Broadstreet's investors (1) in cash (which is not required by Broadstreet's governing documents) and (2) in excess of what Broadstreet's governing documents require. In doing so, Schneider falsely accused Defendants of misleading him regarding the meaning of "Capital Account" for the BSG Fund, when in fact, its definition is set forth in Fund governing documents and was the subject of numerous communications for months between him and Defendants. Schneider then forced Defendants to change the redemption

transaction by threatening to damage Defendants through Court filings if necessary. In essence, Schneider manufactured a higher bar for the redemption transaction in bad faith that he thought Defendants could not clear to harm them, create conflict and prolong his monitorship.

### BAD FAITH NO. 7

Schneider is requiring Defendants to obtain SEC approval before taking corporate action. This is in clear bad faith as the Monitor Order does not empower Schneider to do so and Schneider knows that. Such requirement also violates basic constitutional law.

### BAD FAITH NO. 8

Just this afternoon, Schneider's counsel (his law firm) asked for a meet and confer tomorrow on *__a motion to compel__*. This is yet more bad faith retaliation for Defendants' reserving their rights. Schneider – as monitor – does not even attempt to point to his authority to file a motion to compel, as there is none, particularly for documents not in Defendants' possession. It is also pointless to the Monitorship as investors are being redeemed and the parties to the case agree a monitor is no longer necessary upon redemption.

### BAD FAITH NO. 9

Schneider has knowingly filed public reports/notices containing false and damaging statements about Broadstreet that are directly contrary to written evidence provided to him in order to create controversy and satisfy the SEC (his most recent one being today). Schneider is acutely aware that his court filings that portray Defendants in a negative light cause significant damage to Defendants' business and business relationships. Defendants have repeatedly told him of this self-evident fact, which Schneider either disregards or uses as a threat depending on the moment.

### BAD FAITH NO. 10

Schneider "approved" a prior version of the redemption notice to investors and then requested it be sent to the SEC. Broadstreet complied. Only after that and with no change in circumstances, *Schneider* – not the SEC – wrote Defendants making biblical and unfounded threats and accusations of deception and demanding further changes to something he already approved.

### BAD FAITH NO. 11

Despite the fact that the Monitor Order confines Schneider to making recommendations about "ongoing operations," he has sought to do far more than that, veering into hotly contested issues of the past between the SEC and Broadstreet and publishing false, incomplete and/or wrong

5

analyses concerning same. This has been done intentionally in bad faith and in violation of the Monitor Order which expressly leaves such findings to the trier of fact.

### BAD FAITH NO. 12

Schneider has stated that Broadstreet cannot send a quarterly report to its investors without his approval, even though Broadstreet's operating agreement expressly requires quarterly reports be sent and the Monitor Order does not require Schneider's approval. In addition to the obvious contractual issues created, Schneider's requirement violates First Amendment rights to freely speak to investors.

This is just a sampling of serious bad faith misconduct that should not be permitted to continue. For all the reasons stated herein, Schneider should be immediately discharged as monitor for cause.[1]

## BACKGROUND

### I. The Monitor Order

The Monitor Order limits Schneider's powers to those set forth therein. (ECF 95, ¶ 1). The first section of the Monitor Order sets forth the "General Powers and Duties of the Monitor." (*Id.* at ¶ 6-14). The Monitor Order does not empower Schneider to be able to approve or disapprove Defendants' corporate actions. It instead requires Defendants to "make the Monitor aware of all material business decisions prior to those decisions being implemented." (*Id.* at ¶ 10). Schneider, in turn, is only permitted to "make recommendations and issue reports regarding his or her assessment of the ***ongoing operations*** of the [Defendants] and the SEC's Allegations." (*Id.* at ¶ 11) (emphasis added).

Defendants are not required to obtain Schneider's ***approval*** in order to take corporate action. The word "approval" is emphasized in the preceding sentence because when Schneider's approval is actually required, the Monitor Order says so. (*Id.* at ¶ 27 ("if the Monitor recommends ***and approves***, [Defendants] may move this Court to vacate or modify [certain portions of the Monitor Order])). The Monitor Order does not require "approval" from Schneider, the SEC or the Court for Broadstreet to take corporate action.

With regards to any recommendation made by Schneider, the Monitor Order spells out the procedure for same:

---

[1] Defendants will be filing a lawsuit against Schneider as he has acted in bad faith and thus waived any immunity provided in this Court's monitorship order.

6

17. After receipt of notice of any determination and recommendations for action by the Monitor, Defendants shall have 30 days to provide the Monitor and the SEC with evidence that the Monitor's recommendations have been implemented, or that the Monitor's recommendations have been otherwise sufficiently addressed ("Cure Period").

18. After expiration of the Cure Period, the Monitor shall notify Defendants and the SEC whether Defendants have implemented the Monitor's recommendations, or that the Monitor's recommendations have been otherwise sufficiently addressed.

(*Id.*). If there is a dispute as to whether Schneider's recommendations have been sufficiently addressed, the Monitor Order only provides "[n]othing in this Order impacts the ability of ***[the SEC and Defendants]***, and ***[the SEC and Defendants each]*** reserves the right, to move for any relief from the Court . . . ). (*Id.* at ¶ 18) (emphasis added).

Section IV of the Monitor Order shields Schneider and his agents for only "good faith compliance with any order, rule, law, judgment, or decree." (Id. at ¶ 20).

## II. Schneider

The SEC had initially selected Schneider as one of three finalists for the job of receiver in connection with its ill-fated, withdrawn TRO. After abandoning the TRO, the SEC pressed for his appointment as Monitor. As such, Schneider's pre-Monitorship representations that he could be fair and impartial were critical to Defendants' agreement to use him at the SEC's request. Pressure and criticism from the SEC, however, has significantly impacted his impartiality in this case.

While, as noted above, Schneider and his "counsel" (his law firm) have been erratic from the outset, the relationship between Schneider and Defendants was at least workable. While there are a number of negative statements in Schneider's first two status reports that are plainly incorrect, collectively those status reports are largely favorable on the issues that count – Broadstreet's massive business and its disclosures to investors.

During the course of the Monitorship, Schneider has made requests for massive amounts of documents and information, typically without regard to ongoing operations or historical matters. Nevertheless, Defendants largely complied to avoid conflict. Likewise, Schneider often exceeded his powers by demanding approval and control of the Monitorship Entities' corporate actions and activity. Nevertheless, Defendants worked towards an amicable resolution to such overreaches by the Monitor to avoid conflict.

Things changed, however, after Schneider issued another positive Third Status Report on July 30, 2025. Soon after that, Schneider indicated to Defendants that the SEC was fed up with his positive status reports and demanded that he get in line with the SEC's program. Schneider's "counsel" (his law firm) further conceded to being used as a "conduit" for the SEC. Schneider then began seeking to dictate Broadstreet's corporate decisions *and* also has made multiple material, public and damaging misrepresentations about Broadstreet that he refuses to correct.

### III. The Impending Redemption Transaction

Beginning in August 2025, Broadstreet notified Schneider of a potential redemption transaction that would thereafter move forward. On October 1, 2025, Defendants notified Schneider and the SEC of the impending transaction, as well as other significant transactions. On October 16, 2025, Defendants provided two documents to Schneider – a draft Quarterly Report (which mentions the impending sale transaction) and a draft redemption form. Schneider made the following statements in response:

 a) "Until I am comfortable a full cash redemption is possible, you can't tell investors that that's what you're offering."

 b) "You need to add qualifying language to make it clear that these are still negotiation and under review by the Monitor, the SEC and The Court."

 c) "The SEC should review and sign off on the redemption notice <u>and</u> the language in this quarterly report about a possible transaction and redemption before this quarterly report is posted."

 d) "[I]t is Broadstreet's obligation to make sure that the SEC and the Court are on board with a transaction of this magnitude and the way in which it is being disclosed, and sold, to investors whose rights are being affected."

To be clear, Schneider has taken the position that Broadstreet cannot issue a Quarterly Report or a Redemption Notice to its investors without <u>*approval*</u> from the Monitor, the SEC and the Court. Schneider has also taken the position that Broadstreet cannot redeem its investors "in kind," which directly contradicts Broadstreet's operating agreement which was signed and then re-acknowledged by each and every investor. Moreover, Schneider has improperly coerced Broadstreet to offer investors a cash redemption (that is not required by Broadstreet's governing

8

documents) and ***in excess*** of what Broadstreet's governing documents require, all while making false accusations and threats against them.

The motivation behind what Schneider is doing is obvious: create conflict, prolong his involvement with Broadstreet (and the billing that comes with it), and carry water for the SEC in hopes of future, similar engagements.

### IV.     MCA Profitability

Not long after Schneider issued his Third Status Report, the Monitor issued a Supplement (ECF 140). In that Supplement, Schneider claimed he was misled by Defendants on the profitability of certain merchant cash advance (MCA) portfolios, and that based on ***his own*** money in/money out calculation the portfolios have not yet turned a profit. As explained herein, Schneider's Supplement is misleading, false, violates the Monitor Order and damaging to Broadstreet's business.

### V.     Accounting

Paragraph 25 of the Monitor Order requires Defendants to retain an audit firm to "conduct an accounting." Defendants did so and communicated extensively with Schneider throughout this process. Despite this, Schneider publicly filed a document in which he falsely accused Defendants only having conducted a "review" instead of an "accounting." (ECF 151). Amazingly, Schneider made this accusation in the same document in which he admitted to not being able to define an accounting. (*Id.*).

Today, Schneider submitted a new filing in which he, among other things, again misstates that only "review" was conducted and, based on that alone (which again is false), the auditing firm that **Schneider already approved** "has demonstrated an arguable lack of independence [whatever that means] and shall be replaced with a new auditing firm that Schneider approves." (ECF 172, p. 4, n.4). Nothing in the Monitor Order gives Schneider the authority to require this.

### ARGUMENT

The Monitor Order provides that the "Monitor shall continue to serve as Monitor until otherwise ordered by the Court." (ECF 95, ¶ 1). It also states, "[n]othing in this Order impacts the ability of any party, and each party reserves the right, to move for any relief from the Court …" (*Id.* at ¶ 19). Federal courts have broad discretion to appoint monitors as an equitable remedy and to tailor the appointment order to address the specific needs of the case. *American Council of the*

*Blind of New York, Inc. v. City of New York*, 579 F.Supp.3d 539, 592-93 (2021). By implication, this Court has broad discretion to discharge the Monitor.

The Monitorship has been in place for nearly six months. Defendants have reasonably and substantially complied with the terms of the Monitor Order. During the course of the Monitorship, Defendants have responded to numerous information requests by Schneider. They have made themselves and other witnesses available for Monitor interviews. They have produced a detailed accounting with backup documentation as required. And they have met all investor obligations since the filing of the now withdrawn TRO motion on January 29, 2025.

Indeed, the past six months under the Monitorship have demonstrated that Broadstreet's business is financially strong and viable, and it should not require continued oversight. Moreover, as indicated above, Broadstreet has made arrangements for the complete redemption/buy out of all investors in compliance with Fund's operating documents as executed by all investors. Since the Monitorship was primarily set up for the purpose of the protection of investors, and the Fund will no longer have any investors, there is no reason for the Monitorship to continue.

But it is not just that. Schneider has repeatedly violated the Monitor Order and engaged in the other bad faith misconduct described herein. These wrongful acts by Schneider are intentional, with an obvious aim to create controversy and prolong his involvement with Broadstreet.

**I.  Despite the fact that the Monitor Order does not require approval from Schneider, the SEC or the Court for Defendants to take corporate action, Schneider is demanding it**.

Defendants are not required to obtain Schneider's ***approval*** in order to take corporate action. When Schneider's approval is actually required, the Monitor Order says so. (*Id.* at ¶ 27 ("if the Monitor recommends ***and approves***, [Defendants] may move this Court to vacate or modify [certain portions of the Monitor Order])). Likewise, the Monitor Order does not require "approval" from Schneider, the SEC or the Court for Broadstreet to take corporate action. Schneider knows this. Defendants have even stated this to him in court filings. (*See, e.g.*, ECF 150, p. 6). Despite this, Schneider continues to improperly demand that corporate actions not be taken without "approval." Just last week, Schneider even sent an email to Broadstreet's counsel threatening that disagreement with Schneider "will result in [Schneider's] ***disapproving*** the [redemption] transaction in its current form." (emphasis added).

**II.     Broadstreet's governing documents allow for the corporate actions sought.**

Section 9.03 of the Fund's operating agreement states "[t]he Company will also use commercially reasonable efforts to make available periodic unaudited performance information no less frequently than **_quarterly_** . . . ." (*Id.*). Despite this, Schneider has stated that Broadstreet cannot send its latest report to its investors. There is no legal authority that supports such statement.

In addition, Section 6.03, of the Fund's operating agreement states "[t]he Manager may, **_in its sole discretion_**, terminate all or any part of the Capital Account of any Member at any time for any reason or no reason." (*Id.*) (emphasis added). The Fund's operating agreement further states "[t]he Manager may, in its sole discretion, make distributions in cash or **_in kind_**, or in a combination thereof, in connection with a withdrawal of funds from a Capital Account by a Member or pursuant to Section 6.03." (*Id.*) (emphasis added). Despite this, Schneider has taken the position that Broadstreet (a) cannot redeem its investors in kind or as calculated in the Operating Agreement, and (b) cannot redeem its investors without the "approval" of Schneider, the SEC and the Court. There is no legal support for these positions either.

Worse, Schneider knows this. Defendants have even stated this in prior court filings. (*See, e.g.*, ECF 150, p. 7). Despite this, Schneider continues to act as if the plain language of Broadstreet's governing documents does not exist and instead falsely accuses Defendants of deceiving or misleading him.

**III.     *Loper* and *Private Fund Managers* call for the relief sought herein.**

Through the Monitorship, Schneider is attempting to require Monitor and SEC approval of the corporate actions of Broadstreet – a private fund. Even if the Monitor Order allowed for this (it does not), constitutional law does not. The Fifth Circuit Court of Appeals decision in *Nat'l Association of Private Fund Managers v. S.E.C.*, 103 F.4th 1097, 1101 (5th Cir. 2024) is clear:

> The provision of Investment Advisers Act authorizing the SEC to "facilitate the provision of simple and clear disclosures to investors regarding the terms of their relationships with…investment advisers" and to "promulgate rules prohibiting or restricting certain sales practices, conflicts of interest, and compensation schemes for…investment advisers that the Commission deems contrary to the public interest and the protection of investors" only applied to "investors" who were retail customers, and thus, did not authorize SEC to regulate investment advisers of private funds. *Private Fund Managers*, 103 F.4th at 1111 (5th Cir. 2024).

> "Unlike retail-oriented funds, private funds are free to negotiate fund agreements concerning access to periodic financial reports, *cf.* 15 U.S.C. § 80a-29(e), investor input on advisory fees chargeable to the fund, *cf. id.* § 80a-15(a)(1), and terms—

11

> including redemption terms—available to particular investors, *cf. id.* §§ 80a-22, 80a-18. By congressional design, private funds are exempt from federal regulation of their internal 'governance structure.'" *Id.* (citation omitted).
>
> Investment Advisers Act provision authorizing SEC to "define, and prescribe means reasonably designed to prevent…fraudulent, deceptive, or manipulative" acts and practices as to "any investment adviser" does not authorize the SEC to promulgate rule imposing disclosure and reporting requirements on investment advisers of private funds; other provisions of Advisers Act showed that where Congress wants to provide for reporting and disclosure of certain information, it does so. *Id.* at 1113.

Schneider is operating as if *Private Fund Managers* does not exist. The reality, however, is that SEC lost the *Private Fund Managers* case and elected not to further appeal it. What Schneider is now doing exceeds the limits on authority as explained in *Private Fund Managers* in that he is trying to put requirements on the Fund that investors were promised do not exist. To this exact point, the Fund's Private Placement Memorandum indicates that Broadstreet does not require Monitor or SEC approval to take corporate action. Schneider is now attempting to change what the Fund's investors signed.

In addition to being unlawful, neither Schneider nor the SEC's counsel have any experience owning, operating and managing a multi-billion-dollar business. Yet, they are trying to sideline and silence the actual architects of a $3.7 billion deal for Broadstreet's investors. Schneider should not be permitted to harm investors, impede on business transactions and most importantly should not be allowed to violate the Monitor Order, which is in line with the unambiguous ruling of the *Private Fund Managers* case.

Moreover, even if *Private Fund Managers* was not clear (it is) and there was some ambiguity concerning Schneider's tactics at issue (there is not), Schneider is proceeding as if *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) does not apply. Although the SEC may wish it could still enjoy *Chevron* deference, it does not. In deciding whether the SEC is acting within its authority, courts may not defer to SEC's interpretation of the law simply because of an ambiguity. *Loper*, 144 S. Ct. 2244, 2273, 219 L. Ed. 2d 832 (2024). In other words, the SEC no longer has unfettered discretion to act on what it interprets the law to be and Schneider should not be permitted to continue to require that here.

### IV. Schneider has made material and public misrepresentations concerning Broadstreet's business.

    a. MCA

In his supplemental report, Schneider claims he was misled on the profitability of certain merchant cash advance (MCA) portfolios, and that based on ***his own*** money in/money out calculation, the portfolios have not yet turned a profit. Schneider's Supplement is misleading, false and violates the Monitor Order.

First, the Defendants did not mislead Schneider. They provided documents and information informing Broadstreet's (and the SEC's view) on profitability. They did not provide a money in/money out analysis for earlier years setting forth the reasons for not doing so (that issue is historical and the subject of ongoing litigation).

Second, Schneider's conclusion on profitability is inconsistent with ***the parties' analysis*** and basic accounting principles. Both Defendants and the SEC via its expert, Melissa Davis, agree the MCA portfolios were overall profitable, but disagree on just how profitable. Critically, both Defendants and the SEC include accounts receivable in their profitability analysis. Yet Schneider, oddly, chose not to, ignoring the basic requirements of determining profitability. Schneider's analysis is as flawed as reviewing a brokerage account statement, ignoring the value of the positions in the account and then claiming losses for more money in than out.

Third, Schneider's power under the Monitor Order is limited. His role is to focus on the ***ongoing operations*** of the Monitorship Entities and not the historical matters. (ECF 95, ¶ 11). Despite this, he has focused on historical matters and, even worse, published flawed, misleading and damaging analysis concerning a contested litigation issue regarding historical matters. (*See e.g.*, ECF 140). In truth, Schneider's bad faith conduct here was motivated by the SEC's prior rebukes for not frequently promoting the SEC's position in his status reports.

    b. Accounting

Paragraph 25 of the Monitor Order requires Defendants to retain a CPA firm to "conduct an accounting." Defendants provided the SEC (and Schneider) with a proper and timely accounting performed by a CPA firm that Schneider deemed to be independent and suitable. The key language of paragraph 25 was drafted by the SEC, and it failed to define what was required for the accounting with *any* degree of specificity whatsoever.

Schneider first acknowledged the lack of clarity more than three months ago. On July 28, 2025, Schneider stated: "I approve Premier Accounting to perform the accounting only. Let's discuss further if an audit is required." (ECF 142-13). That same day, Schneider also stated: "Regarding paragraph 25, the SEC agrees that an audit does not have to be performed." (ECF 142-14). On October 21, 2025, consistent with his prior correspondence, Schneider opted "not to weigh in on the definition of 'accounting.'" (ECF 151, p. 1). Yet, he publicly contends that the meaning is obvious. In other words, the meaning is obvious, but he will not say what it is. This is textbook bad faith.

In addressing the lack of clarity back in July 2025, Schneider asked Defendants if the auditing firm would do more than just review Broadstreet's work. Without agreeing in any way to expand the "accounting" requirement of the Monitor Order, Defendants advised that the auditing firm would do more than that, which is what happened. Schneider nonetheless submitted a public filing in this Court claiming that the auditing firm retained by Defendants only conducted a "review." (ECF 151, p. 7). Schneider's statement is easily proven false and should not have been made. The auditing firm did not just do a review but also performed additional procedures as explained in the email below from the auditing firm, which Defendants published on October 22, 2025 in response to the Monitor's filing:

> As discussed, during the performance of the review of the financial statements of Broad Street, Inc and Related Entities, I provided the following services in excess of a review:
>
> Preparation of Consolidating Balance Sheet
> Consolidating Statement of Operations
> Consolidated Statement of Operations
> Listing of Entities Consolidated Under Broad Street Global Fund LLC
>
> The preparation of these items are in excess of what would normally be required in a review of financial statements; however, we believe that they add value as they help to enhance the understanding of a reader of the financial statements.
>
> We also assessed the potential impact on the financial statements of any of the subsequent events noted in the review report.

(ECF 156).

Only after Defendants' counsel objected to Schneider about other potential misleading statements, Schneider reached out privately to Defendants' counsel to initiate what was a conciliatory phone call. On that call, Schneider stated, among other things, "I have faith in David

14

Feingold and he is a very impressive person." Schneider made suggestions "as a friend." He never amended ECF 151 to correct the court record, however.

In truth, Schneider was well aware that neither he nor the SEC could explain what is meant by "conduct an accounting," yet Schneider nevertheless made a materially false court filing to improperly bolster the SEC's position and fuel conflict harmful to Broadstreet. Earlier today, Schneider did it again. (ECF 172). Still, Schneider fails to say what specifically needs to be done for the auditor to conduct the accounting to satisfy Paragraph 25 and did not provide the notification required by the Monitor Order before filing. (ECF 95, ¶ 18).

Schneider previously found the audit firm used to conduct the accounting to be independent and suitable in approving such firm. (ECF 140, ¶ 15). Rodrick Walters CPA at Premier Accounting & Tax Services (https://premiercpafirm.com/our-founder/) has impressive credentials, previously with one of the most prominent big four accounting firms. Schneider, however, suddenly claims the auditing firm he already approved "has demonstrated an arguable lack of independence and shall be replaced with a new auditing firm that the Monitor approves."(ECF 172, p. 4, n.4). Not surprisingly, Schneider does not explain his sudden reversal, nor can he. This is yet additional proof of Schneider's bad faith. Walters has excellent credentials and work history and Schneider's disparagement of him and his firm is unsupported and nothing more than retribution for Walters' statement that he did more than a review, which exposed yet another Schneider falsehood.

Schneider also attaches a case to ECF 172 that actually undercuts his argument. That case required Defendants to provide a specific itemization for the accounting. In contrast, the "conduct an accounting" at issue here involves an audit firm to "conduct an accounting of assets, liabilities, profits or losses, expenses, and revenues of each Monitorship Entity, and each series, and to provide that accounting to the SEC."

To cover for the ambiguity in Paragraph 25 and recognizing the frailty in his and the SEC's position, Schneider now says the Court should just require what was done in the random case he attaches. That case does not involve an auditor "conducting an accounting" and is thus inapposite. In addition, Defendants did not ever agree to this language. Moreover, the Fund offering materials do not require GAAP accounting, yet Schneider continues to demand this. At bottom, Defendants never agreed to what Schneider is now suggesting at the behest of the SEC – many months after the accounting was provided to him in August 2025.

      c. <u>Samson</u>

In Schneider's latest filing (ECF 172), he falsely states that Samson MCA LLC is "owned in part by Defendant David Feingold[]." This statement is knowingly false. In fact, Steven M. Markowitz, Jr. the **actual** owner of Samson MCA LLC testified to the SEC on September 14, 2023 that he "is the manager and the sole owner 100 percent [of Samson MCA]. All the entities are [his]." Indeed, Danielle Medina, the manager of financial operations at Samson, confirmed during her September 12, 2023 SEC testimony that Steven Markowitz Jr. was the owner and Manager of Samson.  In addition, Feingold has stated he is not an owner of Samson on numerous occasions. Schneider know all this. This yet another misrepresentation by him with malicious intent. Additionally, Schneider falsely claims in his filing that Feingold controls the Monitorship Entities, when in fact, he knows the BSG Fund and BSG Management are managed by Joseph and Steven Baldassarra whom Schneider interviewed at length in person in Greenville, South Carolina.

## CONCLUSION

For all the reasons stated herein, Schneider should be discharged as monitor for cause. Defendants and Relief Defendants hereby respectfully request that the Court issue an Order discharging Schneider for cause. Defendants and Relief Defendants further request an evidentiary hearing and oral argument on this Motion.

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Counsel for the Defendants and Relief Defendants hereby certify that, they did not confer directly with Counsel for the Plaintiff based on the time sensitivity of this Motion.

Dated: November 18, 2025

Respectfully submitted,

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**

By: ***Thomas Scot Wolinetz***
Thomas Scot Wolinetz
Florida Bar No. 1001160
Irwin Weltz (PHV)
1 Old Country Road, Suite 275
Carle Place, New York 11514
Telephone: (212) 202-3176
Facsimile: (516) 855-8776
twolinetz@weltz.law
irwin@weltz.law

**GALLIVAN WHITE & BOYD P.A.**

Ioannis (Ian) G. Conits (PHV)
55 Beattie Pl., Suite 1200
Greenville, South Carolina 29601
Telephone: 864-271-5432
iconits@gwblawfirm.com

*Attorneys for Broadstreet Inc. and David Feingold*

**FOLEY & LARDNER LLP**

By: ***Thomas J. Krysa***
Thomas J. Krysa (PHV)
tkrysa@foley.com
1144 15th Street, Suite 2200
Denver, CO 80202
Telephone: 720.437.2000

Andrew A. Howell (PHV)
ahowell@foley.com
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000

Crystal B. Carswell (FBN 108882)
Primary email: ccarswell@foley.com

Secondary email: andre.melo@foley.com
100 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813.229.2300

**BERKELEY LAW P.A.**

By: ***Lorne E. Berkeley***
Lorne E. Berkeley, Esq.
Florida Bar No. 146099
10600 Griffin Road, Suite 104
Cooper City, Florida 33328
Telephone: (954) 719-3484
Lorne@BerkeleyLawFL.com

*Attorneys for Broadstreet Global Management LLC, Joseph B. Baldassarra, and Steven B. Baldassarra*

**NEIMAN MAYS FLOCH & ALMEIDA, PLLC**

By: ***Bryan A. Almeida***
Jeffrey A. Neiman, Esq.
Florida Bar No. 544469
jneiman@nmfalawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@nmfalawfirm.com

545 N.W. 26th St.
Miami, Florida 33127

*Attorneys for Relief Defendants, JosephBenjamin, Inc. and Just a Nice Day, Inc.*