# EXHIBIT 4

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

# OF

# BROAD STREET GLOBAL FUND LLC

*A Delaware Series Limited Liability Company*

**Dated as of September 2023**

# TABLE OF CONTENTS


Page

ARTICLE I INTERPRETATION ........ 1
Section 1.01 Definitions ........ 1
Section 1.02 Interpretation and Construction ........ 7
Section 1.03 Discretion; Good Faith ........ 8

ARTICLE II GENERAL PROVISIONS ........ 8
Section 2.01 Formation of the Company ........ 8
Section 2.02 Company Name and Address ........ 8
Section 2.03 Registered Agent and Registered Office ........ 8
Section 2.04 Fiscal Year ........ 8
Section 2.05 Purposes of the Company and Each Series ........ 8

ARTICLE III THE MEMBERS ........ 9
Section 3.01 Manager; Admission of New Members ........ 9
Section 3.02 Liability of the Members; Limited Liability of Each Series ........ 9
Section 3.03 Classes of Members ........ 10
Section 3.04 Meetings of Members; Voting Rights ........ 10

ARTICLE IV MANAGEMENT OF THE COMPANY AND EACH SERIES ........ 11
Section 4.01 General ........ 11
Section 4.02 No Participation in Management by Members ........ 13
Section 4.03 Reliance by Third Parties ........ 13
Section 4.04 Other Activities of the Manager ........ 13
Section 4.05 Exculpation ........ 13
Section 4.06 Indemnification ........ 14
Section 4.07 Management Fee ........ 15
Section 4.08 Expenses ........ 16
Section 4.09 Certain Affiliate Transactions ........ 17

ARTICLE V CAPITAL ACCOUNTS OF MEMBERS AND OPERATION THEREOF ........ 17
Section 5.01 Series ........ 17
Section 5.02 Capital Contributions ........ 19
Section 5.03 Capital Accounts ........ 20
Section 5.04 Company Percentages; Series Percentages ........ 20
Section 5.05 Allocation of Net Capital Appreciation or Net Capital Depreciation ........ 20
Section 5.06 Special Allocations ........ 21
Section 5.07 Amendment of Incentive Allocation. ........ 22
Section 5.08 Valuation of the Series' Assets ........ 22
Section 5.09 Liabilities ........ 22

Section 5.10 Goodwill ....23
Section 5.11 Allocation for Tax Purposes ....23
Section 5.12 Determination by Manager of Certain Matters ....23
Section 5.13 Adjustments to Take Account of Certain Events ....23

ARTICLE VI WITHDRAWALS AND DISTRIBUTIONS OF CAPITAL .... 24
Section 6.01 Withdrawals and Distributions in General ....24
Section 6.02 Withdrawals ....24
Section 6.03 Required Withdrawals ....25
Section 6.04 Death, Disability, etc. of Members ....25
Section 6.05 Distributions ....25
Section 6.06 Effective Date of Withdrawal ....27
Section 6.07 Additional Limitations on Withdrawal of Capital Account ....27
Section 6.08 Reserves; Adjustments for Certain Future Events ....28

ARTICLE VII TRANSFERS OF INTEREST .... 29
Section 7.01 Assignability of Interest ....29
Section 7.02 Substitute Member ....29

ARTICLE VIII DURATION AND DISSOLUTION OF THE COMPANY AND ITS SERIES 30
Section 8.01 Term ....30
Section 8.02 Dissolution ....30
Section 8.03 Winding Up ....31
Section 8.04 Time for Liquidation, etc ....32

ARTICLE IX TAX RETURNS; REPORTS TO MEMBERS; BOOKS AND RECORDS .... 32
Section 9.01 Filing of Tax Returns ....32
Section 9.02 Partnership Representative ....32
Section 9.03 Financial Statements ....32
Section 9.04 Reports to Members ....33
Section 9.05 Member Information ....33
Section 9.06 Books and Records ....33
Section 9.07 Withholding Tax ....33

ARTICLE X CONFIDENTIAL INFORMATION .... 33
Section 10.01 Confidentiality ....33
Section 10.02 Equitable and Injunctive Relief ....34

ARTICLE XI MISCELLANEOUS .... 34
Section 11.01 Entire Agreement ....34
Section 11.02 Execution of Other Documents ....34
Section 11.03 Power of Attorney ....34
Section 11.04 Amendments to Company Agreement ....35
Section 11.05 Use of "Broad Street Global" Name ....35
Section 11.06 Electronic Communications ....36
Section 11.07 Choice of Law ....36
Section 11.08 Severability ....36

Section 11.09 Forum ....................................................................................................36
Section 11.10 Counterparts ............................................................................................36
Section 11.11 Successors and Assigns ............................................................................36
Section 11.12 No Waiver ................................................................................................36
Section 11.13 Notices.....................................................................................................37
Section 11.14 Tax Elections............................................................................................37
Section 11.15 No Third-Party Rights ..............................................................................37
Section 11.16 Headings..................................................................................................37
Section 11.17 Counsel to the Company ..........................................................................37
Section 11.18 Waiver of Partition...................................................................................38

AMENDED AND RESTATED

LIMITED LIABILITY COMPANY AGREEMENT

OF

BROAD STREET GLOBAL FUND LLC

WHEREAS, the Company was formed on September 14, 2020 as a limited liability company pursuant to Delaware law upon filing of a certificate of formation with the office of the Secretary of State of the State of Delaware;

WHEREAS, the Company was previously governed by that certain Limited Liability Company Agreement dated as of September 14, 2020 (the "Original Agreement");

WHEREAS, pursuant to Section 11.04(iv) of the Original Agreement, the Manager desires to amend and restate the Original Agreement in its entirety to further clarify the creation of Series and use of Series Schedules;

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound hereby amend and restate the Original Agreement in its entirety as follows:

ARTICLE I

Interpretation

Section 1.01 Definitions. Unless otherwise expressly provided in this Agreement, the following terms used in this Agreement shall have the following meanings:

"Account Communications" shall have the meaning set forth in Section 11.06.

"Accounting Period" means the following periods: each Accounting Period shall commence immediately after the close of the immediately preceding Accounting Period. Each Accounting Period hereunder shall close at the close of business on the first to occur of (i) the last day of each month, (ii) the date immediately prior to the effective date of the admission of a new Member pursuant to Section 3.01, (iii) the date immediately prior to the effective date of an additional Capital Contribution from a Member pursuant to Section 5.02, (iv) the effective date of a Member's withdrawal of all or a portion of a Capital Account, (v) the date when the Company shall dissolve or a Series shall terminate, and (vi) any other date the Manager determines, in its sole discretion.

| | |
|---|---|
| "Act" | means the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101, *et seq*., as amended from time to time. |
| "Administrator" | means such Person or Persons appointed as administrator to the Company or any Series from time to time. |
| "Affiliate" | means, with respect to any specified Person:<br>(a) any Person that directly or indirectly controls, is directly or indirectly controlled by or is directly or indirectly under common control with such specified Person;<br>(b) any Person that serves as a director or officer (or in any similar capacity) of such specified Person; and<br>(c) any Person with respect to which such specified Person serves as a general partner, managing member or trustee (or in any similar capacity).<br>For purposes of this definition, "control" (including "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise. |
| "Agreement" | means this Amended and Restated Limited Liability Company Agreement, as it may be amended from time to time, including any and all current and future Series Schedules hereto. For the avoidance of doubt, any references herein to this "Agreement" shall be construed as references to this Agreement as amended and/or supplemented by the Series Schedules and shall include such Series Schedules. |
| "Authorized Representative" | means, with respect to any Person, the directors, employees, legal advisers, accountants, fund administrators or custodians responsible for matters relating to the Company or any Series or any other Person approved in writing by the Manager. |
| "Beginning Value" | means, with respect to any Series and Accounting Period, the Net Asset Value of such Series at the beginning of such Accounting Period after taking into account Capital Contributions made as of such date with respect to such Series). |

| | |
|---|---|
| "Business Day" | means any day other than (a) Saturday and Sunday, and (b) any other day on which banks located in New York City are required or authorized by law to be closed. |
| "Capital Account" | means the capital account established for each Member on the books of a Series in accordance with the provisions of Section 5.03. |
| "Capital Contribution" | of a Member means a contribution by such Member with respect to a particular Series in cash, pursuant to the terms of this Agreement and the relevant Series Schedule. |
| "Class" | means any class of Interests in a Series as may from time to time be established by the Company. |
| "Company" | means Broad Street Global Fund LLC, a Delaware series limited liability company consisting of one or more Series formed, constituted and governed under and pursuant to the Act and this Agreement. |
| "Company Counsel" | means any firm or firms as the Manager may, in its sole discretion, select, at the expense of the Company, for the purpose of providing legal services to the Company. |
| "Company Percentage" | shall have the meaning set forth in Section 5.04(a). |
| "Confidential Information" | means all information concerning the business and affairs of the Company, a Series or the Affiliates of the Company that the Manager in its sole discretion reasonably believes to be in the nature of trade secrets or other information, the disclosure of which the Manager in its sole discretion believes is not in the best interests of the Company, any Series or the Affiliates of the Company, or could damage the Company, its Affiliates or their respective businesses or any Series, or which the Company, any Series or the Affiliates of the Company are required by law or agreement with a third party to keep confidential, including any information relating to the Company's or a Series' financial and investment strategy (*e.g.*, portfolio positions, trades and contemplated trades); all notices, letters and other communications whether written or oral between the Company or its Affiliates and any Member; the names and addresses of each of the Members and their initial and subsequent Capital Contributions. |
| "Ending Value" | means, with respect to any Series and Accounting Period, the Net Asset Value of such Series at the end of such Accounting |

| | |
|---|---|
| | Period (before giving effect to withdrawals occurring as of the Withdrawal Date with respect to such Series and any reduction for Investor Related Taxes related to such Series). |
| "Fiscal Year" | shall have the meaning set forth in Section 2.04. |
| "GAAP" | means U.S. generally accepted accounting principles, in effect from time to time. |
| "Incentive Allocation" | means an allocation to the Manager or its Affiliate of a portion of the profits or gains of a Series as set forth in the applicable Series Schedule. |
| "Indemnified Losses" | shall have the meaning set forth in Section 4.05(a). |
| "Indemnified Party" | means the Manager and its Affiliates, members, partners, directors, shareholders, officers, employees, agents and legal representatives (*e.g.*, executors, guardians and trustees) of any of them, including Persons formerly serving in such capacities. |
| "Initial Capital Contribution" | shall have the meaning set forth in Section 5.02(a). |
| "Interests" | means the entire ownership interest of a Member with respect to any Series in the Company, subject to the rights and obligations of such Member pursuant to this Agreement, the relevant Series Schedule and the Act. |
| "Internal Revenue Code" | means the Internal Revenue Code of 1986, as amended. |
| "Investment" | means any note, stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, financial futures contract, commodity futures contract, put or call option, voting-trust certificate, certificate of deposit for a security, or, in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. |
| "Investor Related Taxes" | means taxes imposed under Sections 1471-1474 of the Internal Revenue Code, or other similar laws, resulting from the status, action or inaction of a Member. |

| | |
|---|---|
| "Judicially Determined" | means found by a court of competent jurisdiction upon entry of a final judgment rendered and unappealable or not timely appealed. |
| "Lock-Up Period" | means, with respect to a Series, the lock-up period, if any, set forth in the applicable Series Schedule. |
| "Majority-in-Interest" | of the Members means, as of any date of determination, Members that are entitled to vote on a matter and have in excess of 50% of the Company Percentages or Series Percentages (as applicable) of the Members that are entitled to vote on such matter. |
| "Management Fee" | shall have the meaning set forth in Section 4.07(a). |
| "Manager" | means Broad Street Global Management LLC, a limited liability company formed under the laws of the State of South Carolina, in its capacity as the manager of the Company and each Series, and any additional or successor manager, each in its capacity as a manager of the Company and each Series. |
| "Member" | means any Person admitted to a Series as a Member of such Series pursuant to the provisions of this Agreement and the relevant Series Schedule that is named as a member of the Series in the books and records of the Series, including any Persons hereafter admitted as Members, so long as each such Person remains a Member in accordance with the terms of this Agreement, the relevant Series Schedule and the Act and excluding any Persons who cease to be Members in accordance with this Agreement and the relevant Series Schedule. |
| "Memorandum Account" | shall have the meaning set forth in Section 5.05(c). |
| "Net Asset Value" | means the excess of the value of the Company's or a Series' assets over the value of its liabilities as determined in accordance with this Agreement. |
| "Net Capital Appreciation" | means, with respect to any Accounting Period, the excess, if any, of the Ending Value over the Beginning Value of a particular Series. |
| "Net Capital Depreciation" | means, with respect to any Accounting Period, the excess, if any, of the Beginning Value over the Ending Value of a particular Series. |

| | |
|---|---|
| "<u>New Issue</u>" | means a "new issue" as defined in FINRA Rule 5130. |
| "<u>Notice Period</u>" | shall have the meaning set forth in Section 6.08(c). |
| "<u>Original Agreement</u>" | shall have the meaning set forth in the recitals hereto. |
| "<u>Other Accounts</u>" | means other accounts to which the Manager or any of its Affiliates provides investment services. |
| "<u>Person</u>" | means a natural person, partnership, limited liability company, corporation, unincorporated association, joint venture, trust, state or any other entity or any governmental agency or political subdivision thereof. |
| "<u>Proceedings</u>" | means claims, demands, actions, suits or proceedings (civil, criminal, administrative or investigative, which includes formal and informal inquiries and "sweep" examinations in connection with a Series' investment activity), actual or threatened. |
| "<u>Purchase Price</u>" | shall have the meaning set forth in Section 5.05(c). |
| "<u>Series</u>" | shall have the meaning set forth in Section 5.01(a). |
| "<u>Series Percentage</u>" | shall have the meaning set forth in Section 5.04(b). |
| "<u>Series Schedule</u>" | means each schedule to this Agreement that covers terms specific to a particular Series or Class within a Series, each of which shall be a part of this Agreement. A Series Schedule may amend, supplement and/or supersede any provision of this Agreement (including provisions relating to contributions, withdrawals, Management Fees, the Incentive Allocation and distributions). To the extent that any term of a Series Schedule conflicts with this Agreement, the Series Schedule shall govern, solely with respect to the applicable Series or Class. In lieu of a standalone Series Schedule, the provisions that would otherwise be included on a Series Schedule may instead be included within materials posted on a website or electronic data room of the Company and each Member will be bound by the terms included in all posted materials for the relevant Series or Class as if set forth on a standalone Series Schedule. |
| "<u>Subscription Date</u>" | means, with respect to a Series, the day or days on which Members may make Initial Capital Contributions and additional Capital Contributions to such Series, as set forth in the Series Schedule relating to such Series. |

"Substitute Member" means a Transferee of an Interest who is admitted to all of the rights of a Member with respect to the Interest transferred or assigned to it pursuant to Section 7.01.

"Transfer" means any transaction by which a Member may directly, indirectly or synthetically transfer, pledge, assign, hypothecate, sell, convey, exchange, reference under a derivatives contract or any other arrangement or otherwise dispose of all or any portion of its Interest to any other beneficial owner or other Persons.

"Transferee" means any Person to which an Interest is transferred in accordance with Section 7.01.

"Transferor" means any Person that makes a Transfer of its Interest in accordance with Section 7.01.

"Unrestricted Member" shall have the meaning set forth in Section 5.05(b).

"Valuation Date" shall have the meaning set forth in Section 5.08(a).

"Valuation Policy" shall have the meaning set forth in Section 5.08(a).

"Withdrawal Date" shall have the meaning set forth in Section 6.02.

Section 1.02 Interpretation and Construction.

(a) In this Agreement, unless a clear contrary intention appears:

(i) common nouns and pronouns and any variation thereof shall be deemed to refer to masculine, feminine, or neuter, singular or plural, as the identity of the Person, Persons or other reference in the context requires;

(ii) where specific language is used to clarify by example a general statement contained in this Agreement, such specific language shall not be deemed to modify, limit or restrict in any manner the construction of the general statement to which it relates;

(iii) "any" shall mean "one or more";

(iv) "including" (and with correlative meaning "include") means including without limiting the generality of any description preceding such term; and

(v) all references to "funds", "dollars" or "payments" shall mean United States dollars.

(b) The language used in this Agreement has been chosen by the parties to express their mutual intent, and no rule of construction or interpretation requiring this Agreement to be construed or interpreted against any party shall apply.

(c) Unless otherwise specified in this Agreement, all accounting terms used in this Agreement shall be interpreted and all accounting determinations hereunder shall be made in accordance with GAAP.

Section 1.03 Discretion; Good Faith. Whenever in this Agreement the Manager is permitted or required to make a decision (i) in its "discretion", "sole discretion" or under a grant of similar authority or latitude, the Manager shall be entitled to consider such interests and factors as it desires, including its own interests, or (ii) in its "good faith" or under another express standard, the Manager shall act under such express standard, shall not be subject to any other or different standard generally imposed by applicable law to the extent waiveable and may exercise its discretion differently with respect to different Members, *provided* that, in making any such decision described in clauses (i) and (ii) above, the Manager shall act consistent with its fiduciary duties to the Members.

ARTICLE II

General Provisions

Section 2.01 Formation of the Company. The Company was formed as a series limited liability company in compliance with Section 18-215 of the Act, by the filing of the Certificate of Formation of the Company with the Office of the Secretary of State of the State of Delaware on September 14, 2020. Such action is hereby ratified and confirmed in all respects. The Company shall have one or more Series of Interests, and each Series shall be established as provided in Section 5.01.

Section 2.02 Company Name and Address. The name of the Company is "Broad Street Global Fund LLC". The principal office of the Company is located at such location as the Manager may designate from time to time. The Manager shall promptly notify the Members of any change in the Company's address.

Section 2.03 Registered Agent and Registered Office. The registered agent for the Company and the address of the registered office of the Company in the State of Delaware is as provided in the Certificate of Formation of the Company.

Section 2.04 Fiscal Year. The fiscal year of the Company and each Series (the "Fiscal Year") shall end on December 31 of each year unless another date is required under the Internal Revenue Code for federal income tax purposes.

Section 2.05 Purposes of the Company and Each Series. The Company and each Series are organized for the following purposes and objectives:

(a) to achieve investment returns by investing and reinvesting each Series' assets in such Investments as described in the applicable Series Schedule; and

(b) to the extent necessary or, in the sole discretion of the Manager, desirable or prudent to achieve the objective set forth in Section 2.05(a) above, by acquiring, holding, selling, exchanging, and otherwise investing in and disposing of directly or indirectly, Investments; engaging in any other lawful transaction in Investments as the Manager may determine from time to time, including borrowing funds in connection with acquiring or holding Investments, pledging or hypothecating Investments, and lending Investments; and exercising all rights, powers, privileges, and other incidents of ownership of such Investments, including, without limitation, voting rights attaching thereto. To this end, the Company and any Series may engage in any activity or transaction that may, in the Manager's discretion, be necessary, suitable or proper to accomplish or further such objective, and do any and all other acts incidental to, arising from or connected with such purposes. In addition, the Company and each Series may engage in any other activity permitted to limited liability companies organized under the Act.

## ARTICLE III

## The Members

Section 3.01 Manager; Admission of New Members.

(a) The current manager of the Company is Broad Street Global Management LLC, a South Carolina limited liability company. Upon written notice to Members, the Manager may appoint a new or additional manager of the Company or any Series or directly or indirectly transfer, assign, sell, or otherwise convey its interest as manager of the Company or any Series to any other party (whether or not such party is an Affiliate of the Manager). The Manager may withdraw as manager of the Company upon written notice to the Members so long as there is at least one remaining manager of the Company and each Series. The Members acknowledge that no Member shall have the right to vote or consent to such change in manager.

(b) Subject to the condition that each new Member shall execute this Agreement or other appropriate instrument pursuant to which it agrees to be bound by the terms and provisions of this Agreement and the relevant Series Schedule, the Manager may admit one or more new Members to a Series as of any Subscription Date specified in the applicable Series Schedule, subject to the sole discretion of the Manager to admit such Members at any time.

(c) The Members of each Series shall be set forth in the books and records of such Series.

(d) Admission of a new Member shall not be a cause for dissolution of the Company or the termination of a Series. A Series shall only be terminated as set forth herein and in accordance with the Act.

Section 3.02 Liability of the Members; Limited Liability of Each Series.

(a) Except as otherwise expressly provided in the Act, the debts, obligations and liabilities of the Company or a Series, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company or such Series, as applicable, and not any other Series, and none of the Members shall be obligated personally for any such debt, obligation or liability of the Company or a Series solely by reason of being a Member of the Company or such Series; *provided*, *however*, that a Member shall be required to contribute to the Company and the Series in which it participates any amounts required under the Act or pursuant to Section 6.05(d)(ii) and pursuant to the applicable Series Schedule.

(b) Neither the Manager nor any of its Affiliates (other than the Company or the relevant Series) shall be liable for the return of the Capital Contributions of any Member, and each Member hereby waives any and all claims that it may have against the Manager or any Affiliate thereof (other than the Company, any other Member and any Series in which it holds or held an Interest) in this regard.

(c) Pursuant to Section 18-215 of the Act, the debts, liabilities, obligations, and expenses of each Series shall be enforceable against the assets of such Series only, and not against the Company generally or against any other Series of the Company, whether currently existing or established subsequent to the date of this Agreement. Except as otherwise provided in Section 4.08 of this Agreement and under the Act, none of the debts, liabilities, obligations, or expenses incurred, contracted for, or otherwise existing with respect to the Company generally shall be enforceable against the assets of any particular Series.

Section 3.03 Classes of Members. The Company, in the Manager's sole discretion, may establish Classes within each Series, each of which having different terms, including, for example, different Management Fees, Incentive Allocation and withdrawal rights. New Classes may be established by the Manager without providing any notice to, or receiving consent from, existing Members. The terms of such Classes will be determined by the Manager in its sole discretion.

Section 3.04 Meetings of Members; Voting Rights.

(a) The Manager may call meetings of the Members from time to time in its sole discretion. Meetings of Members may be called solely by the Manager for any purpose. Meetings of Members may be held at such time and place, within or without the State of Delaware, as shall be stated in the notice of the meeting.

(b) Except as otherwise provided herein, Members entitled to vote in accordance with the terms hereof shall be entitled to vote in accordance with their Company or Series Percentages, as applicable. All matters put to a vote of the Members shall be decided by a Majority-in-Interest, except as otherwise provided herein. The Members shall have no right to vote on any matter except as expressly set forth in this Agreement and/or any applicable Series Schedule.

(c) The presence, in person or by proxy, of a Majority-in-Interest, shall constitute a quorum at all meetings of the Members. In case a quorum shall not be present at any meeting, Members holding Interests representing a majority of Company or Series Percentages, as applicable, present, in person or by proxy, shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until Members holding the requisite percentage shall be present.

(d) Written notice, stating the place, date and time of the meeting, and the general nature of the business to be considered, shall be given to each Member at its address as it appears on the records of the Fund, not less than five (5) days before the date of the meeting. No business other than that stated in the notice shall be transacted at any meeting without the unanimous consent of all the Members entitled to vote thereat.

(e) Any action required to be taken at any meeting of Members, or any action which may be taken at any meeting, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by Members holding Interests representing the requisite number of Company or Series Percentages, as applicable, necessary to authorize or take such action at a meeting at which all Investors holding all Company or Series Percentages, as applicable, were present and voted. Prompt notice of the taking of the action without a meeting by less than unanimous written consent shall be given to those Members who have not consented in writing.

## ARTICLE IV

## Management of the Company and Each Series

Section 4.01 General. The management of the Company and each Series shall be vested exclusively in the Manager. The Manager shall have the authority, on behalf of and in the name of the Company or each Series, to take any action or make any decisions on behalf of the Company and each Series hereunder, to carry out any and all of the purposes of the Company and each Series set forth in Section 2.05, and to perform all acts and enter into and perform all contracts and other undertakings that it may deem necessary or advisable or incidental thereto, including to:

(a) take any and all action that is permitted under the Act and that is customary or reasonably related to the business of the Company or any Series;

(b) invest within or outside the United States in Investments and any publicly traded, private or restricted common and preferred stock, other evidences of equity ownership, debt investments of any credit quality or seniority including, without limitation, defaulted debt investments, secured and unsecured debt investments, or any options or investments convertible into or exercisable for any of the foregoing, and fixed-income investments (including obligations of the United States, any other government or international agency or instrumentalities and agencies of any of them);

(c) acquire, hold, sell, transfer, exchange and dispose of Investments, and exercise all rights, powers, privileges and other incidents of ownership and possession

with respect to such Investments, including, without limitation, the voting of Investments, the approval of restructuring of entities in connection with Investments, participation in arrangements with creditors of entities in connection with Investments, the institution and settlement or compromise of suits and administrative proceedings and other similar matters;

(d) write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(e) purchase, hold, sell and otherwise deal in commodities, commodity contracts, commodity futures, commodity interests, financial futures and options in respect thereof;

(f) purchase, hold, sell and otherwise deal in currencies, forwards, swaps, partnership interests, interests in investment companies and any other financial instruments that exist now or are hereafter created;

(g) open, maintain and close bank accounts and draw checks or other orders for the payment of money and open, maintain and close brokerage, mutual fund and similar accounts, including futures accounts;

(h) conduct margin accounts with brokers;

(i) cause a Series to borrow monies from time to time (and to pledge, mortgage, hypothecate or encumber its assets, and issue notes or other evidences of indebtedness, in connection herewith), on such terms and subject to such conditions as the Manager may determine;

(j) repay borrowings under any credit agreement or similar arrangement entered into by a Series which are otherwise authorized by this Agreement;

(k) engage and terminate consultants, attorneys, accountants and such other agents and employees for itself and for the Company or any Series as it may deem necessary or advisable, and authorize any such agent or employee to act for and on behalf of the Company or such Series;

(l) enter into, make and perform any contracts, agreements or other undertakings it may deem advisable in conducting the business of the Company or any Series, including but not limited to contracts, agreements or other undertakings with Persons with whom the Manager or any other Member is affiliated;

(m) retain one or more Persons or entities, including Affiliates of the Manager, as investment adviser, investment manager or sub-manager to supervise the investment of assets of a Series and to enter into an agreement with such investment adviser, investment manager or sub-manager providing for the payment of fees to such person;

(n) appoint such agents of the Company or any Series as it deems necessary to hold such offices, exercise such powers and perform such duties as it shall determine from time to time;

(o) incur and pay, subject to reimbursement by the Company or applicable Series unless otherwise agreed by the Manager, and consistent with the terms, provisions and limitations relating to such fees and expenses in this Agreement, either on a current basis or subject to amortization over such period as the Manager may reasonably determine to be appropriate, any charges, taxes, liabilities and expenses which are necessary or incidental to, or in support of, the carrying out of any of the purposes of this Agreement; and

(p) act for the Company and each Series in all other matters.

The Manager may delegate any or all of its authority to another party provided that the Manager remains responsible for its obligations under this Agreement.

Section 4.02 No Participation in Management by Members. Except as authorized by the Manager, the Members, in their capacities as such, shall not take part in the management or control of the Company or any Series, transact any business in the Company's name or on behalf of a Series or have the power to sign documents for or otherwise bind the Company or any Series.

Section 4.03 Reliance by Third Parties. Persons dealing with the Company or any Series are entitled to rely conclusively upon the certificate of the Manager, to the effect that it is then acting as the Manager, and upon the authority of the Manager as set forth in this Agreement.

Section 4.04 Other Activities of the Manager. The Manager and its Affiliates shall devote so much of their time to the affairs of the Company or any Series as in the judgment of the Manager the conduct of its business shall reasonably require, and neither the Manager nor its Affiliates shall be obligated to do or perform any act or thing in connection with the business of the Company or any Series not expressly set forth in this Agreement. Nothing contained in this Section 4.04 shall be deemed to preclude the Manager or its Affiliates from exercising investment responsibility, from engaging directly or indirectly in any other business or from directly or indirectly purchasing, selling, holding or otherwise dealing with any assets for the account of any such other business, for their own accounts, for any of their family members or for Other Accounts. No Member shall, by reason of being a Member of the Company, have any right to participate in any manner in any profits or income earned, derived by or accruing to the Manager or any Affiliate from the conduct of any business other than the business of the Company (to the extent provided in this Agreement) or from any transaction effected by the Manager or such Affiliate for any account other than that of the Company or its Series, except as may otherwise be agreed in writing.

Section 4.05 Exculpation.

(a) No Indemnified Party shall be liable to any Member, the Company or any Series for any costs, losses, claims, damages, liabilities, expenses (including reasonable legal and other professional fees and disbursements), judgments, fines or settlements (collectively, "Indemnified Losses") arising out of, related to or in connection

with any act or omission of such Indemnified Party taken, or omitted to be taken, in connection with the Company, any Series or this Agreement, except for any Indemnified Losses that are Judicially Determined to be solely attributable to the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party. In addition, no Indemnified Party shall be liable to any Member, any Series or the Company for any Indemnified Losses arising out of, related to or in connection with any act or omission taken, or omitted to be taken, by any broker or agent of a Series or the Company if such broker or agent was selected by such Indemnified Party directly or on behalf of such Series or Company in accordance with the standard of care set forth above. Any Indemnified Party may consult with counsel, accountants, investment bankers, financial advisers, appraisers and other specialized, reputable, professional consultants in respect of affairs of the Series or the Company and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such Persons; *provided* that such Persons shall have been selected in accordance with the standard of care set forth above.

(b) Notwithstanding any of the foregoing to the contrary, the provisions of this Section 4.05 shall not be construed so as to provide for the exculpation of any Indemnified Party for any liability (including liability under federal securities laws which, under certain circumstances, impose liability even on Persons that act in good faith), to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Section 4.05 to the fullest extent permitted by law.

Section 4.06 Indemnification.

(a) To the fullest extent permitted by law, the Company or a Series (as applicable) shall indemnify and hold harmless each Indemnified Party from and against any and all Indemnified Losses suffered or sustained by such Indemnified Party by reason of any act, omission or alleged act or omission arising out of, related to or in connection with the Company, such Series or this Agreement, or any and all Proceedings in which an Indemnified Party may be involved, as a party or otherwise, arising out of, related to or in connection with such Indemnified Party's service to or on behalf of, or management of the affairs or assets of, the Company or such Series, or which relate to the Company or such Series, except for any Indemnified Losses that are Judicially Determined to be solely attributable to the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party. The Company or a Series (as applicable) shall also indemnify and hold harmless each Indemnified Party from and against any and all Indemnified Losses suffered or sustained by such Indemnified Party by reason of any acts, omissions or alleged acts or omissions of any broker or agent of the Company or such Series; *provided* that such broker or agent was selected, engaged or retained by such Indemnified Party directly or on behalf of the Company or such Series in accordance with the standard of care set forth above. The termination of a Proceeding by settlement or upon a plea of *nolo contendere*, or its equivalent, shall not, of itself, create a presumption that such Indemnified Party's acts, omissions or alleged acts or omissions were solely attributable to the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party. Expenses (including legal and other professional fees and disbursements) incurred in any Proceeding may, with

the consent of the Manager, be paid by the Company or a Series (as applicable) in advance of the final disposition of such Proceeding upon receipt of an undertaking by or on behalf of such Indemnified Party to repay such amount if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified by the Company or such Series as authorized hereunder.

(b) Notwithstanding any of the foregoing to the contrary, the provisions of this Section 4.06 shall not be construed so as to provide for the indemnification of any Indemnified Party for any liability (including liability under the federal securities laws which, under certain circumstances, impose liability even on Persons that act in good faith), to the extent (but only to the extent) that such indemnification would be in violation of applicable law, but shall be construed so as to effectuate the provisions of this Section 4.06 to the fullest extent permitted by law.

(c) Each Indemnified Loss shall be the liability solely of the Series to which such Indemnified Loss is attributable, and shall not be the liability of any other Series. Liability for Indemnified Losses that are attributable to the Company generally, and not specifically attributable to one or more Series, shall be apportioned among the Series in a manner that the Manager, in its sole discretion, determines is fair and equitable.

Section 4.07 Management Fee.

(a) As set forth in the applicable Series Schedule, each Series may pay to the Manager a fee for management and administrative services (the "Management Fee") for such periods and in such amounts as is set forth in the Series Schedule for such Series and if applicable, for each Class within such Series. The Management Fee shall be calculated and accrued as described in the applicable Series Schedule. Except as otherwise provided in the applicable Series Schedule, the Management Fee shall be calculated and paid in arrears.

(b) Except as otherwise provided in the applicable Series Schedule, (i) the Management Fee shall be prorated for any Capital Contribution by a Member that is effective other than as of the first day of a calculation period and (ii) in the event of a withdrawal by a Member other than as of the last day of a calculation period, the Manager shall pay to the applicable Series an amount equal to the *pro rata* portion of the Management Fee, based on the actual number of days remaining in such calculation period, and such Series shall distribute such amount to the withdrawing Member. In the sole discretion of the Manager, Management Fees may be waived, reduced, rebated or calculated differently with respect to certain Members and with respect to different Series or Classes owned by the same Member.

(c) In consideration for the Management Fee, the Manager will provide office space and utilities; certain administrative services; and secretarial, clerical and other personnel to the Company. The Manager shall bear the costs of providing such goods and services, and all of its own overhead costs and expenses, except to the extent such goods, services, costs and expenses are provided for through soft dollars generated by the Company or a Series as permitted hereunder.

Section 4.08 Expenses.

(a) The Company shall bear all of the costs of operating and administering its affairs, including, without limitation: legal and other expenses incurred in the formation of the Company and each Series and the offering of the Interests; brokerage commissions; custodial fees; fees and reimbursable expenses of the Administrator; expenses incurred by the Manager that are directly related to the Company's investment activities, communication and printing expenses of the Manager and its Affiliates in connection with Company activities (including marketing materials); transfer and other taxes; the costs of insurance premiums; legal and bookkeeping costs; auditing; accounting and tax preparation fees and expenses; interest on margin and other borrowings, including on credit facilities obtained to provide funding for withdrawals; borrowing charges on investments sold short; filing fees; costs of Member reporting; costs of Company governance activities (such as obtaining Member consents if and when necessary or appropriate); fees of any additional investment manager or investment adviser appointed for one or more Series; and all other costs and expenses related to the management and operation of the Company and/or the purchase, sale or transmittal of Company assets and distribution of the Interests (such as costs associated with services that may be used to access certain distribution platforms and the costs associated with such platforms), as well as a Series' *pro rata* share of costs and expenses of the Investment(s) in which such Series invests, all as the Manager determines in its sole discretion. In general, each Series will be responsible for a *pro rata* portion of the Company's expenses as set forth above. Notwithstanding the foregoing, to the extent any Company expenses do not relate to all Series, such expenses will be shared *pro rata* among the Series to which such expenses relate as determined in the discretion of the Manager. A Series Schedule may provide additional expenses that will be borne by the Fund.

(b) The Manager shall allocate among each Series, and each Series shall bear, such proportion of the expenses of the Company as the Manager, in its sole discretion, determines to be fair and equitable. For the avoidance of doubt, no Series shall be liable for expenses incurred by, or properly attributable to, another Series, as determined by the Manager in its sole discretion. The expenses attributable or allocated to a Series shall (other than Investor Related Taxes) generally be borne by the Members participating in such Series *pro rata* in accordance with each Member's relevant Series Percentage; *provided* that the Manager may, in its sole discretion, determine the allocation of any expenses among the Members participating in a Series in any other manner that the Manager determines is fair and equitable to all Members of such Series. To the extent that expenses to be borne by the Company and/or any Series, as applicable, are paid by the Manager and/or to the extent the Manager incurs expenses of the nature described above in the performance of its duties to the Company and/or any Series, the Company and/or the applicable Series shall reimburse the Manager for such expenses.

(c) If any of the expenses listed in Section 4.08(a) are incurred for the account of the Company or a Series (as applicable) as well as any Other Accounts, such expenses shall be allocated among the Company or the Series (as applicable) and such

Other Accounts in proportion to the size of the investment made by each to which such expense relates, or in such other manner as the Manager considers fair and equitable.

Section 4.09 Certain Affiliate Transactions. The Manager and its Affiliates may purchase an investment that would otherwise be appropriate for the Fund or a Series to own. The Manager and its affiliates may then sell such an investment to the Fund at a value determined by an independent third party. The Members acknowledge and agree that the Manager and its Affiliates may undertake such transactions without the consent of any Member to the particular transaction.

ARTICLE V

Capital Accounts of Members
and Operation Thereof

Section 5.01 Series.

(a) In accordance with Section 18-215 of the Act, the Manager, without the consent of or notice to any other Member, may create one or more series of Interests (each, a "Series"), the Interests in each of which shall be separate and distinct from the Interests in any other Series, by adopting a Series Schedule for each such Series (which shall include the Manager posting a Series Schedule on a website or electronic dataroom), which Series Schedule shall be treated as a part of this Agreement. Unless otherwise determined by the Manager in its sole discretion, each Series Schedule shall be maintained by the Manager on a confidential basis and shall be provided only to those Members who are Members of the applicable Series or Class and such other persons approved by the Manager in its sole discretion. Such Series Schedule may provide for Series with additional and/or different rights (including, without limitation, with respect to portfolios, use of leverage, minimum and additional subscription amounts, notice requirements, withdrawal rights, Management Fees, Incentive Allocation, information rights, transfers, notices and transparency and other rights) than other Series. In general, each Series shall have a differentiated investment strategy from each other Series. In general, the Company will not be required to notify any or all of the other Members in a Series of any such Series Schedule or any of the rights and/or terms or provisions thereof, nor will the Company be required to offer such additional and/or different rights and/or terms to any or all of the other Series.

(b) The establishment and designation of any Series shall be effective upon the effective date of the Series Schedule (which shall be the date such Series Schedule is posted to a website or electronic dataroom with respect to such Series Schedules). Separate Classes may be established within each Series, and each such Class shall be established for the purpose of varying the fees payable by different Members in a Series, the purpose of targeting different investments or for such other purposes as may be determined by the Manager in its discretion. In connection with the establishment of a Series hereunder, the Manager may, in its sole discretion and without the consent of or notice to any other Members, issue Interests in any Series thereof without limitation for such amount and type of consideration, at such time or times and on such terms as the

Manager may deem appropriate. The terms of any Series established by the Manager shall be as set forth in the Series Schedule relating thereto, and to the extent not inconsistent therewith, as otherwise set forth herein.

(c) In connection with the creation of each Series and except as otherwise expressly provided in the Act, the Company shall establish and maintain separate and distinct records for such Series, and shall cause the assets, debts, liabilities, obligations, expenses, profits and losses associated with any such Series to be accounted for separately from the other assets, debts, liabilities, obligations, expenses, profits and losses of the Company, if any, and each other Series.

(d) All provisions herein relating to the Company shall apply equally to each Series of the Company, except as the context otherwise requires.

(e) The following provisions shall be applicable to existing Series and each further Series that may from time to time be established and designated by the Manager:

(i) All consideration received by the Company for the issue or sale of Interests in a particular Series, and all other property in which such consideration is invested or reinvested, all income, earnings, profits, and proceeds thereof, including any proceeds derived from the sale, exchange or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds in whatever form the same may be, shall irrevocably belong to that Series for all purposes, subject only to the rights of creditors of such Series and except as may otherwise be required by applicable law, and shall be so recorded upon the books and records of the Company.

(ii) The property belonging to each particular Series shall be charged with the liabilities of the Company with respect to a Series and all losses, debts, obligations, liabilities, expenses, whether arising in contract, tort or otherwise existing, and reserves attributable to such Series. In the event that there is such property, losses, debts, obligations, liabilities, expenses, or any income, earnings, profits, and proceeds thereof, funds, or payments which are not readily identifiable as belonging to any particular Series, the Manager shall allocate them among any one or more of the Series established and designated, from time to time, in such manner and on such basis as the Manager, in its sole discretion, deems fair and equitable. Each such allocation by the Manager shall be conclusive and binding upon the Members for all purposes.

(f) Without limitation of the foregoing provisions of this Section 5.01, except as may be otherwise expressly provided in the Act, and subject to the right of the Manager in its sole discretion to allocate general liabilities, expenses, costs, charges or reserves as herein provided, the losses, debts, liabilities, obligations and expenses, including any obligations under Section 4.06, whether arising in contract, tort or otherwise existing, with respect to a particular Series shall be enforceable against such Series only, and not against any other Series or the Company generally; and none of the losses, debts,

liabilities, obligations and expenses, whether arising in contract, tort or otherwise existing, with respect to the Company generally or any other Series, shall be enforceable against such Series. Notice of this limitation on liabilities of each Series shall be set forth in the Certificate of Formation of the Company (whether originally or by amendment) as filed or to be filed in the Office of the Secretary of State of the State of Delaware pursuant to the Act, and upon the giving of such notice in the Certificate of Formation, the statutory provisions of Section 18-215(b) of the Act relating to limitations on the liabilities of each Series (and the statutory effect under Section 18-215(b) of the Act setting forth such notice in the Certificate of Formation) shall become applicable to the Company and each Series. The Manager shall seek to cause every note, bond, contract or other undertaking issued by or on behalf of a particular Series to include a recitation limiting the obligation represented thereby to that Series, *provided*, that the failure to include such a recitation in any note, bond, contract or other undertaking shall not affect the limitation on liabilities of any Series.

(g) Notwithstanding any other provision of this Agreement, no distribution (including, without limitation, any distribution made upon the dissolution, liquidation or termination of the Company or the termination of any Series) with respect to, nor any redemption or repurchase of, the Interests of any Series shall be effected by the Company other than from the assets held with respect to such Series, nor shall any Member of any particular Series otherwise have any right or claim against the assets held with respect to any other Series (except to the extent that such Member has such a right or claim hereunder as a consequence of holding Interests of such other Series). A holder of Interests in a particular Series shall not be entitled to participate in a derivative or class action lawsuit brought on behalf of any other Series or the holders of Interests in any other Series.

(h) The Manager may at any time, terminate any Series, and the establishment and designation thereof, pursuant to Article VIII and, upon such a termination, the Series Schedule relating to such Series shall be deleted as a schedule to this Agreement.

Section 5.02 Capital Contributions.

(a) Each Member has paid or conveyed by way of contribution to a Series cash having an aggregate value as set forth in the relevant books and records of such Series (the "Initial Capital Contribution"). Additional Capital Contributions with respect to a particular Series may be made by Members only in accordance with the provisions of this Section 5.02.

(b) With the prior approval of the Manager, a Member may make additional Capital Contributions to any Series in cash at such time as the Manager may permit.

(c) The Capital Contribution of the Manager, if any, shall be set forth on the books and records of the Company with respect to each Series in which the Manager acquires an Interest. The Manager shall have the right to make a Capital Contribution (in such amount as determined by the Manager in its sole discretion) to, and acquire an Interest

in, each Series, but the Manager shall be under no obligation to make a Capital Contribution to a Series.

Section 5.03 Capital Accounts. A separate Capital Account shall be established on the books of the Company and the applicable Series for each Member with respect to each Series to which such Member has made a Capital Contribution. Each Member's Capital Account shall be maintained and adjusted in accordance with Sections 1.704-1(b)(2)(iv) and 1.704-2 of the Treasury Regulations and the provisions of this Agreement related to the maintenance of Capital Accounts shall be interpreted and applied in a manner consistent therewith (except to the extent this Agreement specifically provides otherwise). The initial balance of the Capital Account of each Member shall be in an amount equal to such Member's Initial Capital Contribution. Thereafter, the Capital Account of each Member shall be (i) increased by the sum of (A) the amount of any additional Capital Contributions made by such Member to such Series, (B) the portion of any Net Capital Appreciation (and items thereof) allocated to such Member's Capital Account, and (C) any other income items or other amounts specially allocated or credited to such Member's Capital Account pursuant to this Agreement and (ii) decreased by the sum of (A) any amounts withdrawn by or distributed to the Member from such Series, (B) the portion of any Net Capital Depreciation (and items thereof) allocated to such Member's Capital Account, (C) any Management Fees, withholding taxes or other expense items specially allocated or charged to such Member's Capital Account pursuant to this Agreement. Each Member's Capital Account shall be further adjusted in the manner specified in this Agreement to reflect the Incentive Allocation.

Section 5.04 Company Percentages; Series Percentages

(a) A "Company Percentage" shall be determined for each Member for each Accounting Period by dividing the sum of the balance of each Capital Account of such Member by the aggregate of all Capital Account balances of all Members as of the beginning of such Accounting Period after taking into account any Capital Contributions made as of the beginning of such Accounting Period. The sum of the Company Percentages shall equal 100 percent.

(b) A "Series Percentage" shall be determined for each Member with respect to each Series for each Accounting Period by dividing the balance of such Member's Capital Account with respect to such Series by the aggregate balance of all Members' Capital Accounts with respect to such Series as of the beginning of such Accounting Period after taking into account any Capital Contributions made as of the beginning of such Accounting Period. The sum of the Series Percentages shall equal 100 percent.

Section 5.05 Allocation of Net Capital Appreciation or Net Capital Depreciation.

(a) Subject to the reallocation of any Incentive Allocation (as may be provided in an applicable Series Schedule) and except as otherwise provided in this Agreement, at the end of each Accounting Period, any Net Capital Appreciation or Net Capital Depreciation attributable to a Series with respect to such Accounting Period shall be allocated to the Capital Accounts of the Members with respect to such Series in accordance with their Series Percentages; provided, however, that there shall be specially

allocated to the Capital Account of a Member any Management Fees or other items of income or expense that are borne by that Member other than in accordance with such Member's respective Series Percentage. In the sole discretion of the Manager, any Incentive Allocation may be waived, reduced or calculated differently with respect to certain Members and with respect to different Classes within a Series.

(b) In the event the Manager determines that, based upon tax or regulatory considerations, or for any other reasons as to which the Manager and any Member agree, such Member should not participate (or should be limited in its participation) in the Net Capital Appreciation and Net Capital Depreciation, if any, attributable to any investment, type of investment or any other transaction with respect to a Series (including, without limitation, any New Issue held by such Series), the Manager may allocate such Net Capital Appreciation or Net Capital Depreciation only to the Capital Accounts attributable to such Series of Members to which such considerations or reasons do not apply (or may allocate to the Capital Account attributable to such Series of the Member to which such considerations or reasons apply, the portion of such Net Capital Appreciation or Net Capital Depreciation attributable to such Member's limited participation in such investment, type of investment or other transaction). If any of the considerations or reasons described above apply, then a separate memorandum account may be established in which only the Members having an interest in such investment, type of investment or transaction shall have an interest (any such Member having such an interest shall be referred to as an "Unrestricted Member") and the Net Capital Appreciation and Net Capital Depreciation for each such memorandum account shall be separately calculated.

(c) At the end of each Accounting Period during which a memorandum account created pursuant to Section 5.05(b) (each, a "Memorandum Account") was in existence (or during which an interest in particular investments was otherwise allocated away from one or more Members in a Series), the Capital Account of each Unrestricted Member attributable to a Series may be debited *pro rata* in accordance with the Capital Accounts of all Unrestricted Members attributable to such Series at the opening of such Accounting Period in an amount equal to the interest that would have accrued on the amount used to purchase the investments attributable to the Memorandum Account (the "Purchase Price") had the Purchase Price earned interest at the rate per annum being paid by the Series from time to time during the applicable Accounting Period for borrowed funds, or, if funds have not been borrowed by the Series during such Accounting Period, at the interest rate per annum that the Manager determines would have been paid if funds had been borrowed by the Series during such Accounting Period. The amount so debited shall then be credited to all of the Capital Accounts attributable to such Series *pro rata* in accordance with their Capital Accounts as of the opening of the Accounting Period.

Section 5.06 Special Allocations.

(a) Section 704(b) Allocation Limitations. Notwithstanding Section 5.05, special allocations of Net Capital Appreciation, Net Capital Depreciation, or specific items of income, gain, loss or deduction as shall be required for any Fiscal Year (or other Accounting Period) shall be made as follows:

(i) Minimum Gain Chargeback. Each Series shall allocate items of income and gain among the Members of such Series at such times and in such amounts as necessary to satisfy the minimum gain chargeback requirements of Treasury Regulations Sections 1.704-2(f) and 1.704-2(i)(4).

(ii) Qualified Income Offset. Each Series shall specially allocate items of income and gain when and to the extent required to satisfy the "qualified income offset" requirements within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

(iii) Other Regulatory Adjustments. The Capital Account attributable to a particular Series also shall be adjusted appropriately to reflect other adjustments required to be made pursuant to the principles of Section 704(b) of the Internal Revenue Code and Treasury Regulations Section 1.704-1 or 1.704-2.

(b) Adjustment of Allocations. In the event that the Manager reasonably determines that the allocations otherwise required pursuant to Section 5.05 or this Section 5.06 would not properly reflect the economic arrangement of the Members or would otherwise cause any inequitable or onerous result for any Member, then, notwithstanding any provision in this Agreement to the contrary, the Manager may adjust such allocations within a Series in such manner as the Manager reasonably determines to be required to prevent such result.

Section 5.07 Amendment of Incentive Allocation. The Manager shall have the right to amend, without the consent of the other Members, Section 5.05 and any applicable Series Schedule so that the Incentive Allocation therein provided conforms to any applicable requirements of the Securities and Exchange Commission and other regulatory authorities; *provided*, *however*, that no such amendment shall increase the Incentive Allocation that otherwise would be made with respect to a Member.

Section 5.08 Valuation of the Series' Assets.

(a) For purposes of determining the value of Investments and other assets of a Series as of a particular date (a "Valuation Date"), assets held by such Series shall be valued in accordance with the valuation policy of the Fund (the "Valuation Policy"), a summary of which shall appear in the Fund's Confidential Private Placement Memorandum, as amended from time to time.

(b) All values assigned to the assets of a Series by the Manager pursuant to the Valuation Policy shall be final and conclusive as to all of the Members.

Section 5.09 Liabilities. Liabilities shall be determined using GAAP, applied on a consistent basis; *provided*, *however*, that the Manager in its sole discretion may provide reserves and holdbacks for estimated accrued expenses, liabilities or contingencies, including general reserves and holdbacks for unspecified contingencies (even if such reserves or holdbacks are not required by GAAP).

Section 5.10 Goodwill. No value shall be placed on the name or goodwill, if any, of the Company or a Series, which shall belong exclusively to the Manager.

Section 5.11 Allocation for Tax Purposes.

(a) For each tax year, items of income, deduction, gain, loss or credit with respect to a Series shall be allocated for income tax purposes among the Members in a Series in such manner as to reflect equitably amounts credited or debited to each Member's Capital Account(s) in such Series for the current and prior Fiscal Years (or relevant portions thereof). Allocations under this Section 5.11 shall be made pursuant to the principles of Sections 704(b) and 704(c) of the Internal Revenue Code, and Regulations Sections 1.704-1(b)(2)(iv)(f) and (g), 1.704-1(b)(4)(i) and 1.704-3(e) promulgated thereunder, as applicable, or the successor provisions to such Sections and Regulations. In the Manager's sole discretion, a Series may aggregate realized gains and losses for this purpose in any manner permitted by Treasury Regulations Section 1.704-3. Items described in this Section 5.11 shall neither be credited nor charged to the Members' Capital Accounts.

(b) Notwithstanding anything to the contrary in Section 5.11(a), if a Member withdraws all or a portion of its Capital Account (including by reason of death) during any taxable year, the Manager may, in its sole discretion, specially allocate items of income and gain, or deduction and loss, as applicable, with respect to the relevant Series to such Member for tax purposes to reduce the amount, if any, by which the amount distributable to the Member upon the withdrawal differs from that Member's tax basis for its withdrawn interest, or otherwise reduce any discrepancy between amounts previously allocated to the Member's Capital Account with respect to the relevant Series and amounts previously allocated to that Member for U.S. federal income tax purposes with respect to such Series.

Section 5.12 Determination by Manager of Certain Matters. All matters concerning the valuation of assets and liabilities of a Series, the allocation of income, deductions, gains and losses among the Members, including taxes thereon, and accounting procedures not expressly provided for by the terms of this Agreement shall be determined by the Manager, whose determination shall be final and conclusive as to all of the Members.

Section 5.13 Adjustments to Take Account of Certain Events. If the Internal Revenue Code or regulations promulgated thereunder require a withholding or other adjustment to a Capital Account of a Member attributable to a particular Series, or some other event occurs necessitating in the Manager's judgment an equitable adjustment, the Manager shall make such adjustments in the determination and allocation among the Capital Accounts attributable to such Series of Income, Net Capital Appreciation, Net Capital Depreciation, Capital Accounts, Company Percentages, Series Percentages, items of income, deduction, gain, loss, credit or withholding for tax purposes, accounting procedures or such other financial or tax items as shall equitably take into account such event and applicable provisions of law, and the determination thereof in the sole discretion of the Manager shall be final and conclusive as to all of the Members.

ARTICLE VI

Withdrawals and Distributions of Capital

Section 6.01 Withdrawals and Distributions in General.

(a) No Member shall be entitled to (i) receive distributions from the Company or a Series, except as provided in Section 6.05 and Section 8.03 or (ii) withdraw any amount from such Member's Capital Account(s), except as provided in Section 6.02 or upon the consent of, and upon such terms as may be determined by, the Manager in its sole discretion.

(b) A Member shall cease to be a Member of the Company or with respect to a Series, as applicable, (i) as of the effective date of the full withdrawal of such Member's Capital Account(s), (ii) as of the effective date of the Transfer of all of such Member's Interests in accordance with Section 7.01, or (iii) in the event of the dissolution of the Company or the termination of a Series, as of the final distribution of the assets of the Company or such Series. As of the effective date of a withdrawal from a particular Series, solely with respect to the withdrawal proceeds, a withdrawing Member shall be considered a creditor of such Series and shall have no rights or liability for future obligations with respect to such Series except that such Member shall (i) have the right to receive, as a creditor, withdrawal proceeds and (ii) continue to be bound by the Sections of this Agreement governing the payment of withdrawal proceeds, including the right of suspension of such payment pursuant to Section 6.07(b).

Section 6.02 Withdrawals. Subject to Section 6.05(d) and Section 6.07 and except as may be provided in an applicable Series Schedule, each Member shall have a right to withdraw all or a portion of the balance in its Capital Account maintained in respect of any Series at such times (each, a "Withdrawal Date"), upon such prior written notice to the Manager, as is set forth in the applicable Series Schedule. If a Member has made Capital Contributions to fund more than one Series or Class, different withdrawal provisions may be imposed with respect to each such Series or Class, which provisions may include, without limitation, the introduction of a Series- or Member-level gate or a Lock-Up Period. A Member's notice of withdrawal shall be irrevocable unless waived by the Manager in its sole discretion. The Manager may elect to treat any partial withdrawal from a Series as a request for a complete withdrawal from such Series if the applicable Capital Account balance of such withdrawing Member immediately following such withdrawal would be less than the applicable minimum as set forth in the Series Schedule. The Manager shall endeavor to make payments of any amounts withdrawn within 60 days after the applicable Withdrawal Date; *provided*, *however*, that if a Member elects to withdraw all of its Capital Account(s) in respect of a Series, such Series shall endeavor to pay the Member an amount equal to at least 90% of its estimated withdrawal proceeds (computed on the basis of unaudited data as of the Withdrawal Date) generally within 60 days after the Withdrawal Date. If a Member elects to withdraw all of its Capital Account in respect of a Series in the aggregate during a Fiscal Year by means of more than one withdrawal, the "hold-back" amount described above will be adjusted to reflect the aggregate withdrawal amounts made during such Fiscal Year. The balance, without interest, shall be paid (subject to audit adjustments) as soon as practicable after completion

of the audit of the Series' books for the year in which such withdrawal occurs, subject to the Manager's right to establish reasonable reserves in the event the Company is subject to any contingent liability at the time of the Member's withdrawal, which could reduce the amount payable in respect of any such withdrawal. The Interest of a Member that gives notice of withdrawal pursuant to this Section 6.02 shall not be included in calculating the Company Percentages or Series Percentages of the Members required to take any action under this Agreement to the extent of the amount requested to be withdrawn.

Section 6.03 Required Withdrawals. The Manager may, in its sole discretion, terminate all or any part of the Capital Account of any Member at any time for any reason or no reason. Unless prohibited under law or regulation, the Manager shall use commercially reasonable efforts to provide each Member prior written notice of a termination of all or any portion of such Member's Capital Account. With respect to any Series that permits withdrawals in the ordinary course, the Member receiving such notice shall be treated for all purposes and in all respects as a Member who has given notice of withdrawal of all or part of its Capital Account(s), as the case may be, under Section 6.02. With respect to any Series that does not permit withdrawals, the Member receiving such notice shall receive the fair value of its Capital Account in connection with its withdrawal.

Section 6.04 Death, Disability, etc. of Members.

(a) The death, disability, incapacity, adjudication of incompetency, termination, bankruptcy, insolvency or dissolution of a Member shall not, in and of itself, dissolve the Company or cause the termination of any Series. The legal representatives of a Member shall succeed as assignee to the Member's Capital Account upon the death, disability, incapacity, adjudication of incompetency, termination, bankruptcy, insolvency or dissolution of such Member, but shall not be admitted as a substituted Member without the consent of the Manager, in its sole discretion.

(b) In the event of the death, disability, incapacity, adjudication of incompetency, termination, bankruptcy, insolvency or dissolution of a Member, the legal representatives of such Member must notify the Manager not more than 30 days after such event occurs, and, if such legal representatives wish to make a complete withdrawal from the Company or any Series, they shall be permitted to withdraw as of the next Withdrawal Date, following notice of the death, disability, incapacity, adjudication of incompetency, termination, bankruptcy, insolvency or dissolution of a Member upon 60 days' prior written notice to the Manager. Until such withdrawal occurs, the Capital Account(s) of such Member shall continue to be at the risk of the Company's or Series' business until the effective date of the withdrawal or the earlier termination of the Company or such Series. Payment to the legal representatives shall be made on the same terms, and shall be subject to the same conditions, as set forth in Section 6.02 in respect of a withdrawal by a Member of all of its Capital Account.

Section 6.05 Distributions.

(a) The Manager may, in its sole discretion, make distributions in cash or in kind, or in a combination thereof, in connection with a withdrawal of funds from a

Capital Account by a Member or pursuant to Section 6.03. In each case, the assets to be distributed in kind to any withdrawing Member may be allocated to such withdrawing Member in such amounts as determined by the Manager in its sole discretion. A distribution in kind made with respect to withdrawals made from one or more Series need not, in the Manager's sole discretion, also be made in kind with respect to withdrawals in relation to other Series. Any distributions in kind generally shall be made to all of the Capital Accounts attributable to such Series on a *pro rata* basis in accordance with such Capital Accounts' Series Percentages. Any amounts distributed by a Series to a Member shall be deducted from such Member's Capital Account(s) attributable to such Series.

(b) The Manager may choose, in its sole discretion, which assets of the applicable Series to distribute in kind. If a distribution is made in kind, immediately prior to such distribution, the Manager, in conjunction with the Administrator (if any), shall determine, in accordance with the Valuation Policy, the fair value of the assets distributed and adjust the Capital Accounts of all Members with an interest in such asset upwards or downwards to reflect the difference between the book value and the fair value thereof, as if such gain or loss had been recognized upon an actual sale of such assets and allocated pursuant to Section 5.05. Each such distribution shall reduce the relevant Capital Account of the distributee Member by the fair value thereof. In kind distributions may be comprised of, among other things, interests in special purpose vehicles holding the actual investment or participations in the actual investment or participation notes (or similar derivative instruments), which provide a return with respect to certain Investments of a Series. Such special purpose vehicle shall bear its expenses, including fees payable to the Manager, as the Manager may determine in its discretion.

(c) The provisions of this Section 6.05 shall apply to distributions made in connection with any withdrawal under Article VI and in connection with dissolution pursuant to Article VIII.

(d) (i) The Manager may withhold and pay over to the Internal Revenue Service (or any other relevant taxing authority) such amounts as the Company or a Series is required to withhold or pay over, pursuant to the Internal Revenue Code or any other applicable law, on account of a Member's distributive share of a Series' items of gross income, income, gain or gross sale or disposition proceeds.

(ii) For purposes of this Agreement, any taxes so withheld or paid over from or by the Company or a Series with respect to a Member's distributive share of a Series' gross income, income, gain or gross sale or disposition proceeds shall be deemed to be a distribution or payment to such Member, reducing the amount otherwise distributable to such Member pursuant to this Agreement and reducing the relevant Capital Account of such Member. If the amount of such taxes is greater than any such distributable amounts, then such Member and any successor to such Member's Interest shall pay the amount of such excess to the Series, as a contribution to the capital of the Series.

(iii) The Manager shall not be obligated to apply for or obtain a reduction of or exemption from withholding tax on behalf of any Member that may

be eligible for such reduction or exemption. To the extent that a Member claims to be entitled to a reduced rate of, or exemption from, a withholding tax pursuant to an applicable income tax treaty, or otherwise, the Member shall furnish the Manager with such information and forms as such Member may be required to complete where necessary to comply with any and all laws and regulations governing the obligations of withholding tax agents. Each Member represents and warrants that any such information and forms furnished by such Member shall be true and accurate and agrees to indemnify the Company, any Series and each of the Members from any and all damages, costs and expenses resulting from the filing of inaccurate or incomplete information or forms relating to such withholding taxes.

(e) In the case of certain investments, the Series Schedule relating to the Series or Class established in respect of such investment may provide that upon the sale, disposition or redemption in respect of such Series or Class, the proceeds shall be promptly distributed to the Members participating in the investment.

(f) Notwithstanding anything to the contrary contained in this Agreement, the Company, its Series and the Manager on behalf of the Company and its Series, shall not be required to make a distribution to any Member on account of its Capital Account if such distribution would violate the Act or other applicable law.

Section 6.06 Effective Date of Withdrawal. Unless otherwise specified in this Agreement, the effective date of a Member's withdrawal shall mean the day immediately following: (i) the Withdrawal Date in the case of a withdrawal pursuant to Section 6.02; (ii) the date determined by the Manager pursuant to Section 6.07(c) if a suspension of withdrawal rights has been lifted; or (iii) the date determined by the Manager if such Member shall be required to withdraw in respect of its Capital Account pursuant to Section 6.03.

Section 6.07 Additional Limitations on Withdrawal of Capital Account.

(a) The right of any Member or its legal representatives to withdraw, or to have distributed to it, any amount from its Capital Account attributable to a particular Series pursuant to this Article VI is subject to the provision by the Manager for all Company or Series liabilities in accordance with the Act and for reserves and holdbacks in accordance with Section 5.09. In addition, no withdrawal from a Capital Account shall be permitted that would result in such Capital Account having a negative balance. The unused portion of any reserve shall be distributed to the Members to which the reserve applied, with interest (if any), after the Manager shall have determined that the need therefor shall have ceased.

(b) The Manager may at any time suspend or restrict the right of any Member to withdraw capital or receive a distribution of the amount being withdrawn from the Company or any Series if, in the Manager's judgment, such suspension or restriction would be in the best interests of the Company or such Series. Situations in which such a suspension might occur include, but are not limited to: (i) when a withdrawal would cause the Fund, a Series or the Manager to violate securities or other laws; (ii) when disruptions in investment markets make pricing and/or liquidation of some or all Company or Series

assets difficult or would result in losses if the Company or a Series attempted such liquidations; (iii) when the Manager determines, in consultation with tax advisors, that the withdrawal could result in the Company or a Series being treated as a "publicly traded partnership" that is taxable as a corporation; or (iv) if other events make accurate determination of the value of a Company's or a Series' assets difficult. The Manager will give prompt notice to Members who have made withdrawal requests and are affected by any such suspension, and may (but is not required to) allow such Members to rescind their suspended withdrawal request to the extent of any portion of the withdrawal proceeds not yet remitted.

(c) The Manager shall provide written notice to each Member with an interest in a Series of a suspension of the calculation of the value of such Series or the Company, withdrawal rights and/or payment of withdrawal proceeds for such Series. Upon the determination by the Manager that the condition giving rise to a suspension has ceased to exist and no other condition under which suspension is authorized under Section 6.07(b) exists, such suspension shall be lifted and written notice shall be sent to the Members of such Series regarding the lifting of such suspension and the next date as of which Members will be permitted to withdraw all or a portion of its Capital Account attributable to such Series.

(d) Upon a suspension of withdrawal rights with respect to a particular Series, all pending withdrawal requests relating to such Series will generally become effective on the next Withdrawal Date after the suspension is lifted, on the basis of the Member's Capital Account balance at that time. No requests received subsequent to the declaration of a suspension of withdrawal rights shall be accepted until such time as the Manager permits Members of such Series to submit withdrawal requests in anticipation of lifting the suspension.

(e) The Manager may, by written notice to any Member, suspend the payment of withdrawal proceeds payable to such Member if the Manager reasonably deems it necessary to do so to comply with anti-money laundering laws and regulations applicable to the Company, the Manager or any of the Company's other service providers.

Section 6.08 <u>Reserves; Adjustments for Certain Future Events.</u>

(a) Appropriate reserves may be created, accrued and charged proportionately against the Capital Accounts of the Members of the Company (or any Series) for contingent liabilities of the Company (or such Series), such reserves to be in the amounts (subject to increase or reduction) that the Manager deems necessary or appropriate in its sole discretion. The Manager may increase or reduce any such reserve from time to time by such amounts as the Manager in its discretion deems necessary or appropriate. At the sole discretion of the Manager, the amount of any such reserve, or any increase or decrease therein, may be charged or credited, as appropriate, to the Capital Accounts of those Persons who are Members of the Company (or such Series) at the time when such reserve is created, increased or decreased, as the case may be, or alternatively may be charged or credited to those Persons who were Members of the Company (or such Series)

at the time of the act or omission giving rise to the contingent liability for which the reserve was established.

(b) If the Manager determines in its sole discretion that it is equitable to treat an amount to be paid or received as being applicable to one or more prior periods, then such amount may be proportionately charged or credited, as appropriate, to those Persons who were Members of the Company (or applicable Series) during such prior period or periods.

(c) If any amount is to be charged or credited to a Person who is no longer a Member of the Company (or applicable Series), such amount shall be paid by or to such Person, as the case may be, in cash. In the case of a charge, the former Member shall be obligated to pay the amount of the charge to the Company upon thirty (30) days' prior written notice to such former Member (the "Notice Period"); provided that (i) in no event shall a former Member be obligated to make a payment to the Company (or any Series) exceeding the lesser of (x) the amount of its Capital Account(s) (or Capital Account(s) in respect of such Series) at the time to which the charge relates, and (y) the sum of the balance of such Member's Capital Account(s) (or Capital Account(s) in respect of such Series) at the time of the demand plus any distributions or withdrawals received by the Member from the Company (or from the applicable Series) subsequent to the date to which the charge relates and (ii) no such demand shall be made to the extent prohibited by applicable law. Failure to pay any such amounts within ten (10) days following the expiration of the Notice Period may, in the sole discretion of the Manager, result in interest being incurred on such outstanding amounts at the Treasury Bill Rate in effect at that time from the expiration of the ten (10) day period. To the extent the Company (or applicable Series) fails to collect, in full, any amount required to be charged to such former Member pursuant to paragraph (a) or (b) of this Section 6.08, whether due to the expiration of the applicable limitation period, if any, or for any other reason whatsoever, the deficiency may be charged proportionately to the Capital Accounts of the current Members of the Company (or applicable Series). Any amounts retained by the Company (or a Series) may be treated, for accounting purposes, as either a reserve or an accrued expense, in the sole discretion of the Manager.

## ARTICLE VII

## Transfers of Interest

Section 7.01 Assignability of Interest. Without the prior written consent of the Manager, which may be withheld in its sole discretion, a Member may not (i) make a Transfer, in whole or in part, to any Person except in accordance with Section 6.04 or by other operation of law, or (ii) substitute for itself as a Member any other Person. Any attempted Transfer or substitution not made in accordance with this Section 7.01, to the fullest extent permitted by law, shall be void.

Section 7.02 Substitute Member. No Transferee of an Interest shall become a Substitute Member unless all of the following conditions have been satisfied, within such reasonable time period as the Manager shall determine:

(a) the Transfer is permitted under Section 7.01;

(b) the Company receives a duplicate of all documents effecting the Transfer from the Transferor to the Transferee (which documents may be delivered via facsimile or electronic mail);

(c) the Manager consents to the admission of the Transferee as a Substitute Member, which consent may be granted or withheld in the Manager's sole discretion; and

(d) the Transferee has executed an instrument, in form and substance satisfactory to the Manager, accepting and agreeing to be bound by all terms and conditions of this Agreement and the relevant Series Schedule(s).

ARTICLE VIII

Duration and Dissolution of the Company and its Series

Section 8.01 Term. The term of the Company began on the date the Certificate of Formation of the Company was filed, and shall continue until cancellation of the Certificate of Formation of the Company in accordance with this Agreement. Each Series shall be formed on the effective date of the applicable Series Schedule and, unless otherwise specified in the applicable Series Schedule, shall continue in perpetuity unless the Series is terminated in accordance with this Article VIII.

Section 8.02 Dissolution.

(a) The Company or any Series of the Company shall be dissolved and terminated and their respective affairs wound up upon the first to occur of any of the following events:

(i) a determination by the Manager that the Company should be dissolved or a Series should be terminated;

(ii) at any time there are no Members in such Series (in the case of the dissolution of a Series) or in all Series of the Company (in the case of a dissolution of the Company), unless the business of the Series or the Company (as applicable) is continued in accordance with the Act;

(iii) any event that results in the Manager ceasing to be a manager of the Company under the Act; provided that the Company shall not be dissolved and required to be wound up in connection with any such event if (A) at the time of the occurrence of such event there is at least one remaining manager of the Company who is hereby authorized to and does carry on the business of the Company, or (B) within 90 days after the occurrence of such event, a Majority-in-Interest of the Members agree in writing or vote to continue the business of the

Company and to the appointment, effective as of the date of such event, if required, of one or more additional managers of the Company; or

(iv) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) Upon a determination to dissolve the Company or terminate a Series under Section 8.02 (a) (i), (ii), (iii) or (iv), withdrawal requests and distributions in respect of pending withdrawals may not be made.

Section 8.03 Winding Up.

(a) Upon dissolution of the Company or the termination of any Series, the Manager shall, out of assets of the Company or such Series, first pay the expenses of winding up, liquidation and dissolution of the Company or terminating such Series and thereafter all of the remaining assets of the Company or such Series shall be distributed. The Manager shall, within no more than 60 days after completion of the Company's or any Series' financial statements (or, if applicable, completion of audited financial statements), make such distributions, in the following manner and order:

(i) to creditors of the Company or such Series, including Members who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company or such Series (as applicable) (whether by payment or by establishment of reserves); and

(ii) to all the Members of the Company (in the event of the dissolution of the Company) or to the Members of such Series (in the event of the termination of such Series) in accordance with such Members' Company or Series Percentages, as applicable.

(b) The Manager, in its sole discretion, or a Majority-in-Interest of Members if the Company no longer has a Manager, may at any time and from time to time, designate one or more liquidators, including one or more members of the Manager, who shall have full authority to wind up and liquidate the business of the Company or terminate a Series, as applicable, and to make final distributions as provided in this Section 8.03. The appointment of any liquidator may be revoked or a successor or additional liquidator or liquidators may be appointed at any time by an instrument in writing signed by the Manager or a Majority-in-Interest of Members, as the case may be. Any such liquidator may receive compensation as shall be fixed, from time to time, by the Manager or a Majority-in-Interest of Members, as the case may be.

(c) In the event that the Company is terminated on a date other than the last day of a Fiscal Year, the date of such termination shall be deemed to be the last day of a Fiscal Year for purposes of adjusting the Capital Accounts of the Members pursuant to Section 5.04(a) and Section 5.06. For purposes of distributing the assets of the Company upon dissolution, the Manager shall be entitled to a return, on a *pari passu* basis with the Members, of the amount standing to its credit in its Capital Account.

Section 8.04 Time for Liquidation, etc. A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company or the termination of a Series and the discharge of liabilities to creditors so as to enable the Company or such Series to seek to minimize potential losses upon such liquidation. The provisions of this Agreement and of the relevant Series Schedule, including the provisions relating to the payment of the Management Fee and the making of the Incentive Allocation, shall remain in full force and effect during the period of winding up and, in the case of the dissolution of the Company, until the filing of a certificate of cancellation of the Certificate of Formation of the Company with the Secretary of State of the State of Delaware, or, in the case of the termination of a Series, until the termination of such Series.

ARTICLE IX

Tax Returns; Reports to Members; Books and Records

Section 9.01 Filing of Tax Returns. The Manager or its designated agent shall prepare and file, or cause the accountants of the Company to prepare and file, a federal information tax return for each Series in compliance with Section 6031 of the Internal Revenue Code, and any required state and local income tax and information returns for each tax year of a Series.

Section 9.02 Partnership Representative. The Manager shall be designated on each Series' annual federal information tax return, and have full powers and responsibilities, as the Series' Partnership Representative within the meaning of Section 6223(a) of the Internal Revenue Code, and any other similar representative under any state, local or non-U.S. tax laws. In the event a Series or the Company shall be the subject of an income tax audit by any federal, state or local authority, to the extent such Series or the Company (as applicable) is treated as an entity for purposes of such audit, including administrative settlement and judicial review, the Partnership Representative shall be authorized to make such elections and otherwise act for, and its decision shall be final and binding upon, such Series or the Company (as applicable) and each Member thereof. All expenses incurred in connection with any such audit, investigation, settlement or review shall be borne by such Series or the Company (as applicable). Each Member (or former Member) agrees to indemnify the relevant Series for any taxes (and related interest, penalties or other charges or expenses) payable by the Series and attributable to such Member's (or former Member's) interest in the Series, as reasonably determined by the Manager. The foregoing obligation shall survive the withdrawal of any Member, the dissolution and liquidation of the Company or relevant Series, or both.

Section 9.03 Financial Statements. Except as may be provided in a Series Schedule, the Company shall use commercially reasonable efforts to prepare and make available to each Member financial statements of the Company. The Company will also use commercially reasonable efforts to make available periodic performance information, no less frequently than quarterly, to the Members after the end of each calendar quarter (other than the last calendar quarter of each Fiscal Year).

Section 9.04 Reports to Members. Within a reasonable time after the end of each tax year of a Series, each Series shall prepare and make available, or cause its accountants to prepare and make available, to each Member a report setting forth in sufficient detail such information as shall enable such Member to prepare its federal income tax return in accordance with the laws, rules and regulations then prevailing.

Section 9.05 Member Information. Each Member agrees to furnish to the Manager such information as may be required for the Company or any Series to comply with any tax accounting, withholding and reporting obligations, including any obligation to make mandatory basis adjustments to Series property pursuant to Section 754 of the Code.

Section 9.06 Books and Records.

(a) The Manager, together with the Administrator (if any), shall keep books and records pertaining to the Company's and each Series' affairs showing all of its assets and liabilities, receipts and disbursements, gains and losses, Members' Capital Accounts and all transactions entered into by the Company and its Series. Such books and records of the Company and its Series shall be kept at the Company's office (or at an Administrator's office as directed by the Manager from time to time).

(b) Except as otherwise expressly provided in this Agreement, each Member shall have the right to obtain any information contained in the books and records of the Company or its Series upon reasonable advance notice, including any information relating to the Company's or its Series' investment activity.

Section 9.07 Withholding Tax. Any taxes, fees or other charges the Company, a Series or the Manager is required to withhold under applicable law with respect to any Member shall be so withheld (and paid to the appropriate governmental authorities) and shall be deducted from the relevant Capital Account(s) of, or otherwise collected from, such Member and paid in accordance with applicable law.

## ARTICLE X

## Confidential Information

Section 10.01 Confidentiality.

(a) In connection with the organization of the Company, its Series and their ongoing business, the Members will receive or have access to Confidential Information. Each Member agrees to keep confidential, and not to make any use of (other than for purposes reasonably related to its Interest or for purposes of filing such Member's tax returns) or disclose to any Person, any Confidential Information except (i) to its Authorized Representatives on a need to know basis who are subject to customary confidentiality obligations; (ii) with the prior written consent of the Manager, to such Member's members, partners or shareholders, provided that such recipient is subject to a corresponding confidentiality obligation, a copy of which shall be provided to the Manager upon request, or (iii) as otherwise required by any regulatory authority, law or regulation,

or by legal process. Prior to making any disclosure required by any regulatory authority, law or regulation, or by legal process, each Member shall use its reasonable best efforts to notify the Manager of such disclosure so that the Manager shall have reasonable opportunity to contest or attempt to limit such disclosure. Prior to any disclosure to any Authorized Representative of a Member, such Member must advise such Authorized Representative of the obligations set forth in this Section 10.01.

(b) Each Member agrees that the Manager has the right to keep confidential from the Members, for such period of time as the Manager in its sole discretion deems reasonable, any Confidential Information. Each Member further agrees that the Manager may keep confidential from certain Members certain information to the extent that the Manager reasonably determines that: (x) the Manager is required by law, rule, regulation, interpretation, or order or by agreement with a third party to keep such information confidential or (y) disclosure of such information to such Members is not in the best interest of the Manager or a Series and there is a reasonable likelihood that such disclosure would have an adverse effect upon the Manager or any Series, its investors or any investment it has made.

Section 10.02 Equitable and Injunctive Relief. The Members acknowledge that (a) the provisions of Section 10.01 hereof are intended to preserve the unique relationship among the Members and with the Company and (b) the provisions of Section 10.01 are intended to preserve the value and goodwill of the business of the Company and each Series; and that, in the event of a breach or a threatened breach by any Member of its obligations under Section 10.01, the Company and the Manager shall not have an adequate remedy at law. Accordingly, in the event of any such breach or threatened breach by a Member, the Company and the Manager shall be entitled to such equitable and injunctive relief as may be available to restrain such Member and any Person participating in such breach or threatened breach from the violation of the provisions thereof. Nothing in this Agreement shall be construed as prohibiting the Company or the Manager from pursuing any other remedies available at law or in equity for such breach or threatened breach, including the recovery of damages.

## ARTICLE XI

## Miscellaneous

Section 11.01 Entire Agreement. This Agreement (including the Series Schedules) and each Subscription Agreement supersede any and all existing agreements, oral or written, between or among the Company (for itself or on behalf of any Series), the Manager and the Members, with respect to the Company.

Section 11.02 Execution of Other Documents. Each of the Members agrees to execute upon demand such certificates, counterparts, instruments and documents as may from time to time be required to be filed or recorded by law.

Section 11.03 Power of Attorney. Each of the Members hereby appoints the Manager as its true and lawful representative and attorney-in-fact, in its name, place and stead to make, execute, sign, acknowledge, swear to and file:

(a) a Certificate of Formation of the Company and any amendments thereto as may be required under the Act;

(b) any duly adopted amendment to this Agreement (including any Series Schedule);

(c) any and all instruments, certificates and other documents that may be deemed necessary or desirable to effect the dissolution and winding-up of the Company (including a certificate of cancellation of the Certificate of Formation) or a Series; and

(d) any business certificate, fictitious name certificate, amendment thereto or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Company or a Series, or required by any applicable federal, state or local law.

The power of attorney hereby granted by each of the Members is coupled with an interest, is irrevocable and shall survive, and shall not be affected by, the subsequent death, disability, incapacity, adjudication of incompetency, termination, bankruptcy, insolvency or dissolution of such Member; *provided*, *however*, that such power of attorney will terminate upon the substitution of another member for all of such Member's interest in the Company or upon the complete withdrawal of such Member from participation in the Company.

Section 11.04 Amendments to Company Agreement. This Agreement (including any Series Schedule) may be amended in any manner the Manager deems desirable. The Manager shall promptly give notice to Members of any amendment made to this Agreement. No such amendment shall, except as provided below, become effective as to any Member without the consent of such Member or the consent of a Majority-in-Interest of the Members of the Company or the applicable Series, as applicable. Notwithstanding the foregoing, any amendment made by the Manager may be immediately effective if the amendment is made (i) to cure any ambiguity, to correct or supplement any provision herein that may be inconsistent with any other provision herein, to comply with any applicable requirements of law, or to make any other provision with respect to matters or questions arising under this Agreement that will not be materially inconsistent with the provisions of this Agreement; (ii) to delete or add any provision of this Agreement required to be so deleted or added by any Federal agency or by a state "Securities" or "Corporation" commission, department or administrator, or similar such body, agency or official, which addition or deletion is deemed by such body, agency or official to be for the benefit or protection of the Members; (iii) to admit additional Members; or (iv) to make any change that does not adversely affect the Members in any material respect.

Section 11.05 Use of "Broad Street Global" Name. Subject to customary quality control and termination rights, the Manager hereby grants to the Company and each Series a non-exclusive, non-transferable, royalty free license to use the name "Broad Street Global" so long as the Manager or an Affiliate of the Manager is a Manager of the Company. The Company agrees to change its name to a name not including the words "Broad Street Global" in the event that the Manager or its Affiliate is no longer a Manager of the Company.

Section 11.06 Electronic Communications. The Company and the Manager may deliver and make reports, statements and other communications, including, without limitation, financial statements, the Form 1065, Schedules K-1 and other tax related information and documentation ("Account Communications"), available to the Members in electronic form, such as e-mail or by posting on a web site (including, without limitation, any electronic dataroom or similar platform made available to the Member). Each Member consents to the electronic delivery of Account Communications. An email or other notice will be sent to each affected Member when a new Account Communication is posted on any website or electronic dataroom. Each Member is responsible for reading each Account Communication posted to such data room and each Member will be bound by the terms of all materials posted in accordance with the terms of this Agreement.

Section 11.07 Choice of Law. Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all of the terms and provisions hereof shall be governed by and construed under the laws of the State of Delaware applicable to contracts made and to be entirely performed in such state and, without limitation thereof, that the Act as now adopted or as may be hereafter amended shall govern all company aspects of this Agreement.

Section 11.08 Severability. If any provision of this Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

Section 11.09 Forum. Any controversy between the Members involving the construction or application of any of the terms, covenants, or conditions of this Agreement will be submitted to arbitration in New York, New York, on the request of the Company or any Member, and the arbitration will comply with and be governed by the provisions of the commercial arbitration rules of the American Arbitration Association; *provided*, *however*, that nothing in this paragraph will constitute a waiver of any right any party to this Agreement may have to choose a judicial forum to the extent such a waiver would violate applicable law.

Section 11.10 Counterparts. Counterparts may be executed through the use of separate signature pages or in any number of counterparts with the same effect as if the parties executing such counterparts had all executed one counterpart. Each party understands and agrees that any portable document format (PDF) file, facsimile or other reproduction of its signature on any counterpart (including any electronic signature) shall be equal to and enforceable as its original signature and that any such reproduction shall be a counterpart hereof that is fully enforceable in any court or arbitral panel of competent jurisdiction.

Section 11.11 Successors and Assigns. This Agreement shall inure to the benefit of each Member and the executors, administrators, estates, heirs, legal successors and representatives of such Member.

Section 11.12 No Waiver. The failure of a party to insist upon strict adherence to any term or provision of this Agreement on any occasion shall not be considered a waiver thereof

or deprive that party of the right thereafter to insist upon strict adherence to that term or provision or any other term or provision of this Agreement.

Section 11.13 Notices. Each notice relating to this Agreement to the Manager or a Member shall be in writing and delivered in person, by registered or certified mail, by Federal Express or similar overnight courier service, by electronic mail, by facsimile or by posting such notice to a website, dataroom or similar electronic platform (provided a notice that a document has been posted is separately sent to the applicable party). All notices to the Company or a Series shall be addressed to its principal office and place of business. All notices addressed to a Member shall be addressed to such Member at the address set forth on the books and records of the Company or by posting to a website, dataroom or similar electronic platform. Any Member may designate a new address by notice to that effect given to the Company. Unless otherwise specifically provided in this Agreement, a notice shall be deemed to have been effectively given when delivered personally, if delivered on a Business Day; the next Business Day after personal delivery if delivered personally on a day that is not a Business Day; four Business Days after being deposited in the United States mail, postage prepaid, return receipt requested, if mailed; on the next Business Day after being deposited for next day delivery with Federal Express or similar overnight courier; when sent, if e-mailed on a Business Day; the next Business Day following the day on which the e-mail is sent if e-mailed on a day that is not a Business Day; when receipt is acknowledged, if facsimiled on a Business Day; the next Business Day following the day on which receipt is acknowledged if facsimiled on a day that is not a Business Day; when posted, if posted to a website, dataroom or similar electronic platform with separate notice of a posted document on a Business Day and the next Business Day if not posted on a Business Day.

Section 11.14 Tax Elections. The Manager may, in its sole discretion, cause the Company or any Series to make or revoke any tax election that the Manager deems appropriate, including an election pursuant to Section 754 of the Internal Revenue Code.

Section 11.15 No Third-Party Rights. Except for the provisions of Sections 4.05 and 4.06, the provisions of this Agreement, including the provisions of Sections 3.02 and 6.02, are not intended to be for the benefit of any creditor or other Person (other than the Members in their capacities as such) to which any debts, liabilities or obligations are owed by (or who otherwise have a claim against or dealings with) the Company, a Series or any Member, and, to the fullest extent permitted by law, no such creditor or other Person shall obtain any rights under any of such provisions (whether as a third-party beneficiary or otherwise) or shall by reason of any such provisions have a right to make any claim in respect to any debt, liability or obligation (or otherwise) including any debt, liability or obligation against the Company, such Series or any Member.

Section 11.16 Headings. The table of contents, titles of the Articles and the headings of the Sections of this Agreement are for convenience of reference only, and are not to be considered in construing the terms and provisions of this Agreement. References to "Article" or "Section" in this Agreement shall be deemed to refer to the indicated Article or Section of this Agreement, unless the context clearly indicates otherwise.

Section 11.17 Counsel to the Company. Company Counsel may also serve as counsel to the Manager. The Manager may execute on behalf of the Company or Series (as

applicable) any consent to the representation of the Company or such Series that Company Counsel may request pursuant to the applicable rules of professional conduct in any jurisdiction. Company Counsel is not representing any Members with respect to its becoming a Member, or with respect to any action taken by the Company or the Series, whether or not Company Counsel has represented such Members with respect to other matters.

Section 11.18 Waiver of Partition. Except as may otherwise be required by law in connection with the winding-up, liquidation and dissolution of the Company or the termination of a Series, each Member hereby irrevocably waives any and all rights that it may have to maintain an action for partition of any of the Company's or such Series' property.

**[Signature page follows]**

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the date first set forth above.

MANAGER:

Broad Street Global Management LLC

By:______________________________
Name: Steven Baldassarra
Title: Managing Member

MEMBERS:

By: Broad Street Global Management LLC, as attorney-in-fact

By:______________________________
Name: Steven Baldassarra
Title: Managing Member