**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-20436-GAYLES/SHAW-WILDER**

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff,*

v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL MANAGEMENT
LLC, and BROAD STREET INC.,

*Defendants, and*

JOSEPHBENJAMIN, INC.,
JUST A NICE DAY, INC.,

*Relief Defendants.*
_______________________________________/

**PLAINTIFF SEC'S EXPEDITED RENEWED MOTION**
**AND MEMORANDUM OF LAW FOR APPOINTMENT OF A RECEIVER**

**UNREDACTED VERSION FILED UNDER SEAL**

## Table of Contents


I. Preliminary statement ..... 1

II. Recent investor harm and failures to comply with the Monitor Order ..... 4

A. Investors are suffering ongoing harm despite the Monitor Order ..... 4

1. Defendants proposed a redemption transaction. ..... 5

2. Defendants will not honor the cash redemption option. ..... 7

3. Defendants are reducing investors' accounts. ..... 12

4. Defendants have stopped dividend payments and not redeemed investors. ..... 15

5. Defendants are seeking to enrich themselves to the detriment of investors. ..... 16

B. Defendants have shown that the existing Monitor Order is not enough to protect investors. ..... 16

III. Facts supporting the underlying fraud alleged ..... 19

A. The SEC previously established a factual basis for the underlying alleged fraud. ..... 19

B. Defendants offered and paid inflated returns that could not have come from profits. ..... 20

1. More time has revealed more evidence that MCA profits could not have been the source of returns. ..... 20

2. The Fund's MCA portfolios were not sufficiently profitable on a cash basis or an accrual basis. ..... 22

IV. A receiver is appropriate and necessary ..... 28

A. Legal Standard ..... 28

B. A receiver is appropriate under *First Financial*. ..... 29

C. A receiver is appropriate under *Netsphere* or *Starbucks* factors. ..... 31

1. The *Netsphere* factors favor a receivership. ..... 31

2. The *Starbucks* factors favor a receivership. ..... 33

D. The Court should appoint a receiver over BSG Management and BSG Fund. ..... 36

V. Conclusion ..... 37

**Index of Exhibits**

| Exhibit Number | Description | Temporarily Sealed |
|---|---|---|
| 1 | Redemption Notice | Yes |
| 2 | AAYU Emails to Monitor | Yes |
| 3 | Redemption Notice (Revised) | Yes |
| 4 | Email from Kathy Pierce to Monitor and SEC re Broad Street Investment | No |
| 5 | Email from Greg Gartner to Monitor and SEC re Broadstreet Global Fund - Redemption Objection | No |
| 6 | Email from Kerry Clem to Monitor and SEC Re - Clem, Kerry - Broadstreet Global – Redemption Request | No |
| 7 | Soulpower Acquisition Corp. Form 8K and attached press release dated November 24, 2025 | No |
| 8 | Declaration of Bharvin Patel with exhibits | No |
| 9 | Declaration of Bill Knoblauch with exhibits | No |
| 10 | Declaration of Mayank Patel with exhibits | No |
| 11 | Declaration of Narendra Shah with exhibits | No |
| 12 | Declaration of Tatyana Levy with exhibits | No |
| 13 | Declaration of Michael Patel with exhibits | No |
| 14 | Supplemental Declaration of Melissa Davis dated August 5, 2026 | Yes |
| 15 | Private Placement Memorandum Supplement Number - Tennessee Supplement | Yes |
| 16 | BSG Investor Update Letter – July 27, 2026 | No |
| 17 | Broadstreet Quarterly Report - Q1 2025 | Yes |
| 18 | Email regarding Monitorship dated August 6, 2025 | Yes |
| 19 | Email from Danielle Medina to David Feingold re: End of year write offs | No |
| 20 | Excerpts of the Investigative Testimony of Danielle Medina | No |
| 21 | BSI - Preparation of Financial Statements - Q2 2025 | Yes |
| 22 | BSG 2024 Reviewed Financial Statements | Yes |
| 23 | Soulpower Acquisition Corp. Form 8-K and attached press release dated July 30, 2026 | No |

## I. PRELIMINARY STATEMENT

Appointing the Monitor to serve as receiver over Broad Street Global Fund, LLC ("BSG Fund" or "Fund") and Defendant Broad Street Global Management LLC ("BSG Management"), which manages the Fund, is necessary to prevent imminent and irreparable harm to Defendants' victims.

While the SEC has had increasing concerns about Defendants' lack of compliance with the Monitor Order and the resulting risk of harm to investors, their recent conduct has made clear that Defendants are causing investors irreparable harm and the Monitor Order (ECF 95) does not provide sufficient tools to stop it. Defendants have recently rejected two of the Monitor's critical recommendations that would have protected investors' investments in connection with Defendants' proposal to exit their failed and fraudulent operation of the BSG Fund.

First, Defendants have denied investors' request to be redeemed in cash rather than stock through the planned exit transaction. Denying these requests rejects a recommendation of the Monitor and repudiates Defendants' previous offer in connection with the exit transaction. Nearly 700 investors – representing at least $148 million of the total investor principal invested in the Fund – accepted that offer. But Defendants have now stated that they will not return any investors' cash and will purport to redeem all investors with illiquid stock in new public company that cannot be sold for up to 42 months. This stock is not just illiquid, it also faces a vastly different risk profile because the new company plans to generate revenue in things like purported mining operations in foreign countries. In other words, Defendants previously accepted the Monitor's recommendation and agreed to redeem investors in cash if they elected that option, and hundreds of investors want their money back. But Defendants are now rejecting the Monitor's recommendation, keeping investors' money, and forcing them to take illiquid stock in a company exposed to risks these investors never knew about.

Second, and most recently, Defendants have rejected the Monitor's recommendation that, when calculating redemption amounts for the exit transaction, Defendants should not reduce those amounts by dividend distributions previously paid to investors. In other words, Defendants previously touted investor returns as profits to solicit even more investments. But Defendants now indicate they will retroactively characterize those profit payments as returns of capital—effectively transforming investors' investments into interest-free loans. Since Defendants made statements, in a June 19, 2026 Investor Update, about potential reductions, the Monitor has tried to get a straight answer from Defendants about them. *See* ECF 312 ¶¶ 9-36. [redacted]

While Defendants' rejections of the Monitor's recommendations are recent and will result in irreparable harm, Defendants have long been uncooperative with the Monitor and out of compliance with the Monitor Order. Almost from the start, Defendants were not completely truthful or forthcoming with the Monitor and have disregarded provisions of the Monitor Order

without obtaining Court approval. Then, in the fall of last year, Defendants threatened to sue the Monitor for over $500 million for alleged bad faith. On March 2, 2026, the Monitor reported that [redacted] ECF 239 ¶ 6. These baseless attacks on the Monitor are a symptom of Defendants' tactic to respond to any allegation of misconduct: deny everything, attack everyone, and insist that they, not their investors, are the real victims.

The harm to investors that Defendants will cause by refusing to redeem investors with cash and retroactively treating investments like interest-free loans is a continuation of Defendants' fraud because these acts are designed to coverup the natural and foreseeable consequences of the fraud alleged in the Complaint. Defendants' operation of the Fund was never sustainable because Defendants fraudulently promised and paid returns in amounts that, unbeknownst to investors, far exceeded profits earned by the Fund. Defendants also misled investors by presenting investment options in different "Series" that Defendants told investors would be kept separate.

Because the Fund lacked sufficient profits to pay returns, Defendants needed a continuous stream of new investor funds to continue operating this way. But the Court's January 31, 2025 Order (and later Orders) prevented them from raising new investor funds. ECF 18 at 2, ECF 88 at 1-2, ECF 95 at 9. Without new investor funds to pay promised investor returns, Defendants quickly sought a variety of exit transactions with constantly evolving terms. In this latest iteration of the exit transaction, Defendants have stopped paying returns, plan to keep investors' money, retroactively reduce their accounts, and purport to redeem them with stock in a new company that may be unable to be sold for more than three years.

All of this is the natural result of a Fund that promised and paid returns it could not afford to pay. But the Fund does have some remaining assets according to the Monitor and Defendants. Because Defendants have proven that they cannot wind down the Fund without increasing victim harm, the Court should convert the Monitor to a receiver to liquidate the Fund's assets and distribute them to investors. Given the Monitor's work on this case, appointing the Monitor to serve as the receiver would be efficient and conserve resources.

This brief first shows in Section II evidence that investors are being harmed and details Defendants' efforts to mislead the Monitor and the Court and failures to abide by the Monitor Order. Section III recites the evidence supporting the underlying fraud. Section IV provides legal standards courts have applied to requests for receivers, shows that the evidence here satisfies those standards, and sets forth the SEC's specific request for a receiver over BSG Management and BSG Fund.

**Expedited Treatment Requested**

The SEC requests an expedited ruling on this Motion under Local Rule 7.1(d)(2). In conferring with Defendants on the relief sought in this Motion pursuant to Local Rule 7.1(a)(3), the parties agreed upon the following schedule with respect to this Motion. Defendants' Opposition due by August 27, 2026, the SEC's reply due by September 10, 2026, and an evidentiary hearing at the Court's earliest availability thereafter. An expedited hearing and ruling is necessary to protect investors from the imminent and irreparable harm as discussed herein.

## II. RECENT INVESTOR HARM AND FAILURES TO COMPLY WITH THE MONITOR ORDER

### A. Investors are suffering ongoing harm despite the Monitor Order.

The SEC brought this case and filed motions for preliminary relief, including a motion for appointment of a receiver, to protect BSG Fund's investors and to protect the investing public

from future harm. ECF 13, "Receiver Motion;" ECF 9, "TRO Motion." As a compromise, the parties agreed to the Order Granting Stipulated Motion to Appoint a Monitor and Other Additional Relief. ECF 95 ("Monitor Order"). As Defendants have acknowledged, "the Monitorship was primarily set up for the purpose of the protection of investors." ECF 175 at 10.

The Monitor is empowered to review books and records, make requests, and issue reports regarding his assessment of the ongoing operations of the Monitorship Entities and the SEC's allegations. ECF 95 ¶¶ 6-13. The Monitor likewise makes recommendations to the Monitorship Entities, who are then obligated, within 30 days, "to provide the Monitor and the SEC with evidence that the Monitor's recommendations have been implemented, or that the Monitor's recommendations have been otherwise sufficiently addressed…." *Id.* ¶ 17. The Monitor Order prohibited Defendants from soliciting new investments and protected existing investors by requiring Defendants to stop transferring investor assets to themselves and preventing them from transferring assets outside the Court's jurisdiction. *Id.* ¶ 26. The Order also required Defendants to "transfer all assets purchased with BSG Fund investor monies to an entity or entities owned by the appropriate series of the BSG Fund." *Id.* ¶ 24.

In the fall of 2025, Defendants presented a new iteration of an exit transaction to the Monitor, the "Redemption Transaction," through which Defendants intended to redeem all investors. ECF 165 ¶¶ 48-56. As explained in this section, the Monitor made recommendations that would protect investors, but Defendants recently overhauled the terms of the Redemption Transaction in ways that reject the Monitor's recommendations. This about-face will cause investors irreparable harm.

**1. Defendants proposed a redemption transaction.**

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## V. CONCLUSION

For all these reasons, the Court should grant the Motion and appoint Jeffrey Schneider as the receiver over BSG Management and the BSG Fund.

**Certificate of Conferral**

Pursuant to Local Rule 7.1(a)(3), counsel for the SEC has conferred with Defendants about the relief sought in this Motion; Defendants oppose the relief sought herein.

Respectfully submitted,

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION**

By: */s Terry R. Miller*

Terry R. Miller
S.D. Fla. Bar No. A5503312

(303) 844-1041
millerte@sec.gov

Jacqueline M. Moessner
S.D. Fla. Bar No. A5503301
(303) 844-1031
moessnerj@sec.gov

Zachary T. Carlyle
S.D. Fla. Bar No. A5502167
(303) 844-1084
Carlylez@sec.gov

Attorneys for Plaintiff United
States Securities and
Exchange Commission
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000