IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20436-GAYLES/SHAW-WILDER

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL MANAGEMENT, LLC, and
BROAD STREET, INC.,

Defendants,

JOSEPHBENJAMIN, INC., and
JUST A NICE DAY, INC.,

Relief Defendants.

**SEC'S RESPONSE TO DEFENDANTS' AND RELIEF DEFENDANTS' STATEMENT OF MATERIAL FACTS (ECF 301) AND SEC STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Local Rule 56.1, the SEC submits this response to Defendants' and Relief Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment (ECF 301) and Further Statement of Material Facts in support of the SEC's opposition to that motion. Where the SEC notes that a fact is "undisputed," that fact is undisputed only for purposes of the pending motion.

1. Undisputed, except to the extent of Defendant's addition of the bracketed text "[as defined below]." The SEC's statement did not (and could not) have incorporated a definition later used by Defendants.

2. Undisputed only to the extent that the Court stated the quoted text in ruling on the motion to transfer venue.

3. Undisputed.

4. Undisputed that the Court stated at the hearing on the motion to transfer that "it doesn't appear that there's really any dispute that the defendants are at home, so-to-speak, in South Carolina."

5. Undisputed.

6. Undisputed that Defendants produced documents in the investigation, disputed to the extent that Defendants intend to imply that they cooperated and produced all responsive documents.

7. Undisputed.

8. Disputed. The SEC's TRO application was not flawed, it did not falsely claim that Broadstreet was a massive fraud, and it did not allege that nearly all money raised was missing. *See* ECF 9, 10, 12, 13.

9. Disputed. Broadstreet's response was not "forceful," and the parties agreed to entry of the Monitor Order to resolve the TRO application, which order includes much of the relief sought in the TRO. *See* ECF 95.

10. Disputed. Defendants mischaracterize this claim. $62,500 is the money that flowed directly from BSG Fund to an investment, but as the SEC specifically stated in the TRO briefing:

> Defendants inappropriately took from BSG Fund about $880 million and diverted those funds to BSG Management, Defendants, and Relief Defendants and to non-party entities affiliated with Defendants. *See* Davis Decl. ¶¶ 51, 58-60. As noted above, Defendants did so without keeping appropriate Series-level records in furtherance of their scheme to promise and pay inflated returns, and therefore, obscured and concealed the actual use of these funds. **While the SEC acknowledges much of this money was ultimately invested in the types of things BSG Fund advertised – MCAs, infrastructure projects, etc. –** the fact that Defendants took the money out of the Fund and used that money to make investments that they owned and controlled puts investor monies that should have been held by the Fund at risk.

ECF 9 at 50-51 (emphasis added).

11. Disputed. *See* Response to Paragraph 10. The statement was neither false nor outrageous and the SEC did not retreat from it and was consistent with the SEC's expert's testimony. BSG Fund and BSG Management maintained spreadsheets of which Series investors invested in and how much investors invested and the dividends paid to and accrued to those investors, but disputed that there were "extensive records" that kept track of what was done with the money after it was received into BSG Fund and turned over to BSG Management. *See* ECF 12, ¶¶ 132, 142-43, 174-76.

12. Undisputed in part and disputed in part. This paragraph inappropriately includes multiple statements of fact. Undisputed that through December 2024, BSG Fund had raised approximately $1.2 billion dollars. ECF 84 at 123: 17-19. Disputed as to the amount of management fees "permitted to be removed" and when. *See* ECF 135 ¶¶ 51-56 (Monitor reporting on BSG

Managements recordkeeping related to fees and confirming that "both the BSG Fund's internal records and the investor-facing records all reflect that all investors' capital accounts contain the amount invested without any reduction for the up to30% in up front management fees" (¶ 53) and that at some point "Steven Baldassarra calculated how much BSG Fund *could* collect in management fees") (emphasis in original).

13. Disputed. The second transaction has not yet closed and disputed as to the value of the deal in which Defendants cannot or will not redeem 687 investors who accepted Defendants' offer for a cash redemption. *See* ECF 312, ¶ 6; ECF 269 ¶¶ 15-22.

14. Disputed. Defendants are presently refusing to provide redemptions to investors who sought a cash redemption (ECF 269 ¶¶ 15-22) and thus those investors are not receiving a 3x return. The Fund does not even have the stock it needs to make these purported redemptions. ECF 312 ¶ 6. Even if the Fund had the shares today, those shares will be locked up for years and it is unclear what investors will be able to sell them for.

15. Disputed. Consistent with Defendants' acknowledgement that the primary locus of operative facts may be in the forum where the majority of investors are located, the SEC argued that the primary locus of operative facts was where Defendants told investors about the Fund. ECF 120 at 8-9; ECF 158 at 12-13 The SEC has not dismissed any claims in this case. *See* ECF 8, Complaint.

16. Disputed that Defendants have built a "viable multi-billion dollar real estate business with substantial assets and investments" given that they cannot redeem $148 million of investors who wish to be redeemed in cash. *See* ECF 264-1 at 4 (Investor Update announcing the "in-kind" redemption of those investors who had elected to be redeemed in cash as the "cash sales-process hit[] impasse.").

17. Disputed because BSG Fund is not the only entity that accepted money. BSG Management and BSG Series CM each received some investor funds in addition to the BSG Fund receiving investor funds. *See* ECF 10 ¶ 41,

18. Undisputed that BSG Fund is managed by BSG Management, which is controlled by Steven Baldassarra, Joseph Baldassarra and David Feingold. *See* ECF 12 ¶¶ 96-116.

19. Disputed. At least some investors do not appear to be "ultra-high net worth." *See* ECF 322-11, Declaration of Narendra Shah ¶¶ 8, 29. ECF 322- 4 at 1 (Ex. 4 to SEC Renewed Motion to Appoint a Receiver); ECF 322-6 at 1 (Ex. 6 to Renewed Motion to Appoint a Receiver).

20. Disputed. The citation to the PPM appears to refer to the section regarding "accredited investors," which is not the same as "ultra-high net worth" individuals and the PPM does not otherwise speak to any focus on "ultra-high net worth" individuals.

21. Disputed. The supporting citation does not define what is meant by "the Average Broadstreet Investor ('ABI') is a UHNW" nor are the calculations of an ABI clear.

22. Disputed. The citation to the PPM does not support the contention asserted.

23. Undisputed for purposes of the Motion only.

24. Undisputed for purposes of the Motion only.

25. Disputed. *See* ECF 67-3, Declaration of Jeffrey Funk ¶ 7 ("I signed various documents in connection with my investment. I was aware that the BSG Fund has a data room, but I found the data room to be too confusing and cumbersome to be useful, and I relied on quarterly updates that the BSG Fund sent to update me on what was happening with respect to projects in which I had invested.); ¶ 9 ("I received a Compliance Update from the BSG Fund in the summer of 2023, which I understood to be asking me to indemnify the BSG Fund. I did not sign it.").

26. Disputed. The citation does establish the asserted facts.

27. Disputed. The Monitor has stated that "various disclosures" "are, indeed, quite broad" but it not known exactly what documents the Monitor was referring to, and the Monitor has also stated that Defendants have at times sought to rely on "three words contained in a sea of disclosures." ECF 181 at 3.

28. Disputed. The citation does establish the asserts facts.

29. Disputed to the extent that the citations do not establish which of the "Critical Documents" were distributed to which investors and when, but undisputed that BSG Management generally distributed a Compliance Acknowledgement Update to investors that had invested as of July 2023 in July 2023.

30. Undisputed that investors have generally signed the Compliance Acknowledgement Update, but disputed as to the significance of the signature because of the circumstances under which such signatures were obtained. Investors were told that signing the document was "part of Broadstreet's compliance department's process," that they were being asked to "acknowledge certain information which they have already seen or certified to," and this "should be very quick for you to review and sign." ECF 12, Exhibit 103 at 1. BSI staff performing back-office compliance functions on behalf of BSG Fund, at least with respect to one investor, also informed investors that they must sign the update "to keep your account active" or to avoid "suspension" of their accounts. *See* Emails from info@broadstreetglobalfund.com to Perry Harris dated 7/15/2023 and 7/19/2023, **Exhibit 104** at 1, 3. The SEC also understands that at least one investor did not sign the compliance update. *See* ECF 067-3 ¶ 9

31. Disputed for the reasons in paragraph 30, undisputed that the language "By my signature, I certify that all information above is accurate" appears on the Compliance Acknowledgement Update – July 2023.

32. Disputed. The SEC's full allegations are set forth in the Complaint. *See* ECF 8.

33. Disputed. The SEC's full allegations are set forth in the Complaint. *See* ECF 8.

34. Disputed. The SEC's full allegations are set forth in the Complaint. *See* ECF 8.

35. Disputed. The first sentence is a legal conclusion based on Defendants' misconstruction of the SEC's complaint and the second sentence is not supported by the cited documents, including the cited document was created after representations about the use of funds. *See* Statement of Additional Facts ¶¶ 76-92.

36. Disputed. The cited document does not support this paragraph's characterization of that document.

37. Disputed. The cited document does not support this paragraph's characterization of that document.

38. Undisputed that the cited documents indicate that some infrastructure investors' funds may be invested elsewhere pending their investment into a real estate project, but disputed to the extent that Defendants intend to imply that the Ponzi-like payments were disclosed. The cited disclosures state for example that "The Fund may make payments to investors from monies generated from other investments which the Fund has made so that positive investor returns can be achieved." The SEC has shown however that there have not been sufficient monies generated from other investments to make those preferred returns. ECF 9 at 9-16.

39. Disputed. The SEC's full allegations are set forth in the Complaint *See* ECF 8.

40. Disputed. Defendants falsely presented the contract rates (*i.e.* the full amount the Fund would receive if all merchants paid 100% of what they owed) to investors as if they were actual returns. For example, an August 2022 pitch deck for the MCA Series contained a heading stating, "Performance Metrics for Merchant Cash Advance Company that Broadstreet Provides

Funding" and under that heading stated "The average factor rate so far in 2022 has been 1.36 *which is a 36% return*, assuming a 12-month duration on a deal. Our deals typically have a shorter duration and thereby higher annual percentage rate thus allowing us to pay above market returns to investors." (emphasis added). *See* Ex. 24 to ECF 12 at 8; Ex. 48 to ECF 12 at 17.

41. Disputed. The PPM does not require the Manager to value investors' investments at cost, and, in any event, reflecting returns on investors' investments that did not come from profit is not reflecting the investment at cost.

42. Disputed. *See supra,* Response to No. 41.

43. Disputed. The citation does not support the assertion.

44. Disputed. The citated paragraph of the SEC's Complaint does not support the assertion.

45. Disputed. As discussed below in the Statement of Additional Facts ¶¶ 87-89, investments were not made in the name of the Fund and the SEC's expert did not confirm that they did, *see* ECF 10 ¶¶ 48-55.

46. Disputed. The second transaction has not yet closed and Defendants are refusing to pay investors who want to be redeemed in cash and have not timely provided shares to any investors. ECF 312 ¶¶ 6; ECF 299 ¶ 5.

47. Disputed. The citation does not support the multiple facts alleged in the paragraph. *See also* Statement of Additional Facts 87-89; Response to ¶ 30 above.

48. Disputed that Section 4.01 of the Operating Agreement provides for BSG Management to own the Fund's assets.

49. Undisputed that the Operating Agreement discusses BSG Management's discretion and control over BSG Fund.

50. Disputed as to time period. In September 2023, the Baldassarras, acting through BSG Management, amended BSG Fund's PPM to disclose that "[t]he Manager or any affiliated individuals or entities of the same may be the ultimate owner of the underlying assets of a Series." ECF 12 ¶ 153(b).

51. Undisputed that the PPM contains disclosures regarding the manager's discretion and control over fund assets.

52. Disputed. The citation does not support the multiple facts alleged in the paragraph. *See also* Statement of Additional Facts 87-89; Response to ¶ 30 above.

53. Undisputed.

54. Undisputed.

55. Undisputed.

56. Undisputed.

57. Disputed. The citation does not support the assertion.

58. Disputed. The citation does not support the assertion.

59. Undisputed.

60. Undisputed that that is what Steven Baldassarra states in his declaration. The SEC is entitled to an opportunity to complete discovery on this issue.

61. Disputed. Defendants have been unwilling or unable to redeem these investors. ECF 312 ¶¶ 6; ECF 299 ¶ 5. The SEC is entitled to an opportunity to complete discovery on this issue.

62. Undisputed.

63. Disputed. The citation does not support the assertion. *See also* Statement of Additional Facts ¶ 103.

64. Disputed. *See* Statement of Additional Facts ¶ 104.

65. Disputed. The citation does not support the assertion. *See also* Statement of Additional Facts ¶ 103.

66. Undisputed.

67. Undisputed.

68. Undisputed.

69. Disputed. The citation does not support the assertion. The only documents cited—the "Fund Monthly Schedules"—do not reflect the assets and profits (or losses) of each Series, and Defendants have never produced records that do. Statement of Additional Fact ¶ 101. Further Defendants' counsel represented in writing to the SEC that no such records exist. *Id.* ¶ 102.

70. Undisputed that Mr. Robinson uses the Monthly Schedules to describe investors' investments in the Series.

71. Disputed. The citation does not establish the assertion.

72. Disputed. The citation does not establish the assertion.

73. Disputed. The citation does not establish the assertion.

**SEC Statement of Additional Material Facts**

74. There were significant changes in the federal workforce in 2025. *See* Government Accountability Office Report on Federal Agency Workforce Changes: Update for July 2025 to January 2026 (noting that across 24 agencies (not including the SEC) that "Executive Orders in 2025 aimed to reduce the federal workforce and restrict hiring in many areas" and that "[m]ost agencies had workforce declines greater than 10% and multiple agencies had declines exceeding 30%) available at https://www.gao.gov/products/gao-26-108583 (last accessed August 5, 2026); Government Accountability Office report available at https://www.gao.gov/products/gao-26-107813 (last accessed August 5, 2026).

75. Investors were told that there were no fees because Broadstreet profited from the amounts that they received over and above what they paid investors, and their account statements did not reflect the removal of any fees. *See* ECF 322-8, Declaration of Bharvin Patel ¶¶ 36-37 and Exs A-C thereto; ECF 322-9, Declaration of William Knoblauch ¶ 23; ECF 322-10, Declaration of Dr. Mayank Patel ¶ 14, 28-29; ECF 322-11, Declaration of Narendra Shah ¶ 34; ECF 322-12 Declaration of Tatyana Levy ¶ 29; ECF 322-13, Declaration of Michael Patel ¶¶ 27-28; ECF 138, Monitor's Third Status Report ¶¶ 51-56.

76. BSG Management has placed investor funds from all Series (except for the Series relating to crypto asset mining) in bank accounts in the name of BSG Fund or BSG Management, not in the name of the Series. ECF 12 ¶ 141.

77. Nearly all investors' funds sent to BSG Fund were diverted to BSG Management. *See* ECF 10, Davis Decl. ¶¶ 51, 58-60.

78. There are no Series-level financial statements for BSG Fund reflecting the assets and profits of each Series. ECF 12 ¶¶ 142-143.

79. The so-called Tri-Party Agreement Regarding Broadstreet Entities (the "TPA") was executed in December 2022 and purports to take retroactive effect to June 30, 2022. ECF 12 ¶ 195 (citing Ex. 32), ¶ 189 (citing Ex. 11 at 77, 181-82), and ¶ 193 (citing Ex. 83).

80. The TPA exposes each series to the liabilities of other series (*i.e.*, cross-liability) by creating a lien on the assets of BSG Fund (except as to the Pre-IPO Series), BSG Management, and BSI to the extent necessary to satisfy BSG Fund's investor obligations. ECF 12 ¶¶ 198-199 (citing Ex. 32 (recitals, ¶¶ 1.1, 1.3)).

81. An investor wrote to the Monitor and stated the following: "I believe the stock deal is a blatant violation of fiduciary duty and an example of self-dealing….Broadstreet has communicated in the past that some of their assets, which I did not invest in, are underwater (hotel deals, storage, etc) and the land development assets are the ones that performed well, which by doing this SPAC deal, we would be bailing those underperforming investments out and being diluted by them as they are getting the same redemption treatment as investors in the more profitable series regardless of the fair value of the underlying investments." ECF 269 Ex. B to at 25-26 of 85.

82. Exhibit 82 to ECF 12 is an example of an account statement.

83. The PPMs stated that Series, such as the MCA or Infrastructure Series, would use investor funds to make investments in specific assets. ECF 12 ¶¶ 144-145.

84. Statements in pitch decks stated or implied that BSG Fund owned or controlled assets, like "17,000 acres of land" and "Broad Street Global Fund has the rights to 70% of the Bluff at Gap Creek infrastructure project with [a homebuilder]." ECF 12 ¶¶ 146-147.

85. Statements in pitch decks implied that BSG Fund would make and own investments in things like the MCA industry and "154.18 identified acres" discussed in a land banking Series pitch deck. ECF 12 ¶¶ 148, 150.

86. The BSG Fund Infrastructure Pitch Deck describes the Infrastructure Series as a form of "Passive Investing" and later states in a FAQ section that "Broad Street Global Fund is invested in all the infrastructure deals as a pool, so the investment is well diversified …." ECF 12 ¶ 118.

87. The Baldassarras used their control over BSG Fund's and BSG Management's bank accounts to acquire investments ultimately held by BSG Management or BSI, including the Infrastructure projects and MCA portfolios. ECF 12 ¶ 152.

88. BSG Fund was not a party to the governing agreements with Samson involving MCA portfolios that were funded by BSG Fund. ECF 12 ¶ 152.

89. As of September 2023, none of the Infrastructure projects funded by BSG Fund were owned by BSG Fund, but many were owned, in part, by BSI. ECF 12 ¶ 152.

90. A pitch deck for BSG Fund's QSBS Series states that the Series would be making an investment in Broad Street Development Corporation ("BSDC"), which is described as a real estate development corporation that the Baldassarras managed. ECF 12, Ex. 42 at 2-3, Ex. 92 at 1; Ex. 93 at 12.

91. According to the pitch deck, BSDC was pursuing ten (10) real estate developments, including a residential development located on Saluda Dam Road in Easley, South Carolina. ECF 12, Ex. 42 at 3.

92. The pitch deck claims: "Investor returns are backed by the assets of BSDC which will hold real property assets equivalent to the total value of the equity raised." ECF 12, Ex. 42 at 9.

93. The pitch deck also discusses provisions of the tax code that would allow avoidance of tax on gains from the sale of QSBS if certain requirements are met. ECF 12, Ex. 42 at 7, 10-12.

94. The pitch deck states that the QSBS entity must "use 80% of its assets in the active conduct of one or more 'qualified trade or business' … throughout the stock holding period." ECF 12, Ex. 42 at 2.

95. The pitch deck tells investors that their returns on QSBS investments will be "tax free" with generations of an "18% annualized return per year with investor exit after 5[-] year hold for a total return of 90% on the exit with the entire exit qualifying as a QSBS transaction and thereby **tax free**." ECF 12, Ex. 42 at 2 (emphasis added).

96. The unaudited financial statements of BSG Fund for 2021, 2022, 2023, 2024, and the first half of 2025 do not reference the QSBS subseries. ECF 12, Exs. 94, 60 and 61; ECF 322-21; ECF 322-22; *see also* ECF 12 ¶¶ 168-171.

97. The BSDC bank account statements reflect virtually no activity. ECF 12, Ex 95 at 1-46.

98. BSDC does not own the Saluda Dam Road project, which is instead owned 30% by Contender and 70% by Alternative North American Partners, LLC. ECF 12, Ex 35 at 1.

99. Alternative North American Partners LLC is owned by David Feingold and another individual. ECF 12, Ex 11 at 311.

100. The only documents cited in the Motion for the proposition that that Defendants kept separate records for each Series—the "Fund Monthly Schedules"—do not reflect the assets and profits (or losses) of each Series, and Defendants have never produced records that do. ECF 12 ¶ 176; *see also id.* ¶ 55 (the Fund Monthly Schedules track (1) client holdings for each Series; (2) monthly investments into each Series; and (3) dividends paid and reinvested for each Series).

101. Defendants' counsel represented in writing to the SEC that no such records exist. *Id.* ¶ 176.

102. The "October 2020 PPM" and the two versions of Fund's Operating Agreements stated that BSG Management would take reasonable efforts to have financial statements prepared in accordance with GAAP for each Series and would have those financial statements audited. ECF 12 ¶¶ 177-178.

103. BSG Management ignored an auditor's request for information that prevented the auditor from completing its work. ECF 12 ¶ 179.

104. BSG Management terminated an auditor in February 2021 and did not hire another firm until April 2023 who declined the engagement within a week. ECF 12 ¶ 181.

105. Feingold testified that another external auditor had been hired, but has never provided any audited financial statements. ECF 12 ¶¶ 182-183.

106. In September 2023, Steven Baldassara executed an amended operating agreement that deleted a statement about audited financial statements. ECF 12 ¶ 184.

107. BSG Management charged fees for the investment of the Fund's assets, including investments in stocks and fixed income securities. ECF 12 ¶ 95.

108. BSG Management is owned and managed by Steven and Joseph Baldassarras. *See* ECF 12 ¶ 18; ECF 054-2 ¶ 4.

Dated: August 6, 2026

Respectfully submitted,

By: *<u>/s Jacqueline M. Moessner</u>*

Terry R. Miller
S.D. Fla. Bar No. A5503312
(303) 844-1041
millerte@sec.gov

Jacqueline M. Moessner
S.D. Fla. Bar No. A5503301
(303) 844-1031
moessnerj@sec.gov

Zachary T. Carlyle
S.D. Fla. Bar No. A5502167
(303) 844-1084
Carlylez@sec.gov

Attorneys for Plaintiff United States
Securities and Exchange Commission
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000