# REVOLVING NOTE AND SECURITY AGREEMENT

THIS REVOLVING NOTE AND SECURITY AGREEMENT, dated as of _______, 2019, is entered into by and among L3 Capital Income Fund LLC, a limited liability company ("Lender"), and Alternative Global One I, LLC. , a limited liability company ("Borrower").

WITNESSETH:

WHEREAS, Borrower has requested that Lender enter into a secured lending arrangement with Borrower; and

WHEREAS, Lender is willing do so on the terms and conditions set forth herein; and

WHEREAS, Borrower agrees that the loan will be interest only with the payment of principal when due as specified below, calculated on an annual interest rate specified in Exhibit "A" with a balloon payment of principal due on each one year anniversary unless modified and so extended by the parties hereto.

NOW, THEREFORE, in consideration of the mutual conditions and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## SECTION 1. DEFINITIONS

All terms used herein which are defined in Article I or Article 9 of the UCC shall have the meanings given therein unless otherwise defined in this Agreement. All references to the plural herein shall also mean the singular and to the singular shall also mean the plural unless the context otherwise requires. All references to Borrower and Lender pursuant to the definitions set forth in the recitals hereto, or to any other Person herein, shall include their respective successors and assigns. The words "hereof," "herein," "hereunder," "this Agreement," and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not any particular provision of this Agreement and as this Agreement now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced. The word "including" when used in this Agreement shall mean "including, without limitation." An Event of Default shall exist until such Event of Default is waived in accordance with Section l0(c) or is cured in a manner satisfactory to Lender, if such Event of Default is capable of being cured as determined by Lender. Any accounting term used herein unless otherwise defined in this Agreement shall have the meanings customarily given to such term in accordance with GAAP. All references to time of day shall mean local time in Miami, Florida unless otherwise stated. For purposes of this Agreement, the following terms shall have the respective meanings given to them below:

"Affiliate" means with respect to a Person, (a) any family member, officer, director, employee or manager of such Person, and (b) any other Person (i) that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such given Person, (ii) that, directly or indirectly beneficially owns or holds 5% or more of any class of voting stock or partnership or other interest of such Person or any subsidiary of such Person, or (iii) 5% or more of the voting stock or partnership or other interest of which is directly or indirectly beneficially owned or held by such Person or a subsidiary of such Person. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities or partnership or other interests, by contract or otherwise. Unless the context otherwise requires, references to an "Affiliate" shall be deemed to refer to an Affiliate of an Obligor.

"Borrower" has the meaning ascribed to such term in the introductory paragraph of this Agreement.

"Business Day" means any day excluding Saturday, Sunday, and any day which is a legal holiday under the laws of the State of New York or which is a day on which Lender is otherwise closed for transacting business with the public.

"Capital Expenditure" means all payments in respect of any fixed asset or improvement, or replacement, substitution, or addition thereto, which has a useful life of more than one year, including, without limitation, those arising in connection with the direct or indirect acquisition of such assets by way of increased product or service charges or offset items or in connection with any lease of property by Borrower that, in accordance with GAAP, should be reflected as a liability on the balance sheet of Borrower.

"Collateral" shall have the meaning set forth in Section 5 hereof.

"Date" means the date as of which this Agreement is dated.

"Default" means any event or circumstance which, with the giving of notice or passage of time or both, would constitute an Event of Default.

"Default Rate" shall have the meaning set forth in Section 3(b) hereof.

"Event of Default" means the occurrence or existence of any event or condition described in Section 8(a) hereof.

"First Mortgage" means any presently existing loan and any successor thereof, or any loan acquired hereafter as a refinance of the current loan that in any manner involves real estate.

"GAAP" means generally accepted accounting principles in the United States of America as in effect from time to time as set forth in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and the statements

and pronouncements of the Financial Accounting Standards Board which are applicable to the circumstances as of the date of determination consistently applied, except that, for purposes of determining compliance with any financial covenants set forth herein, GAAP shall be determined on the basis of such principles in effect on the Agreement Date and consistent with those used in the preparation of the audited financial statements delivered to Lender prior to the Agreement Date.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time, and the rules and regulations issued thereunder and from time to time in effect.

"Lien" means any security interest, security title, mortgage, deed to secure debt, deed of trust, lien, pledge, charge, conditional sale or other title retention agreement, or other encumbrance of any kind in respect of any property, including the interest of each lessor under any capitalized lease and the interest of any bondsman under any payment or performance bond, in, of or on any assets or properties of a Person, whether now owned or hereafter acquired and whether arising by agreement or operation of law.

"Loan Documents" means, collectively, this Agreement and all notes, guarantees, security agreements, mortgages, deeds of trust, inter creditor agreements, subordination agreements and other agreements, documents and instruments now or at any time hereafter executed and/or delivered by Borrower in connection with this Agreement, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

"Material Adverse Effect" means any of the following:

a) a material adverse effect on the business, operations, results of operations, prospects, assets, liabilities or financial condition of Borrower;

b) a material adverse effect on the ability of Borrower to perform its obligations under the Loan Documents; or

c) a material adverse effect on the ability of Lender to enforce the Obligations or to realize the intended benefits of any Loan Document, including a material adverse effect on the validity or enforceability of any Loan Document or of any rights against Borrower, or on the status, existence, perfection, priority (subject to Permitted Liens) or enforceability of any Lien securing payment or performance of the Obligations.

"Maturity Date" shall be the one year anniversary of the date upon which any principal is provided as specified in Exhibit "A" attached hereto; provided, however, that, so long as no Default or Event of Default exists and no thirty day notice of demand for repayment has been made thirty days prior to the Maturity Date then the Term Loan shall automatically renew for another year.

"Mortgage" means that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing by Borrower in favor of any lender that may exist prior to the date of this Agreement. Borrower may not have any Mortgage as of the date of this Agreement.

"Obligations" means the Term Loan, all other indebtedness and obligations under this Agreement and the other Loan Documents during or after the initial or any renewal term of this Agreement or after the commencement of any case with respect to Borrower under the United States Bankruptcy Code or any similar statute (including the payment of interest and other amounts which would accrue and become due but for the commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in such case), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured, and however acquired by Lender.

"Permitted Liens" means First Mortgage (b) Liens and security interests of Lender; (c) Liens securing the payment of taxes, either not yet due or the validity of which are being contested in good faith by appropriate proceedings diligently pursued and available to the applicable Obligor and with respect to which cash reserves have been established in such amounts and in such manner as may be acceptable to Lender, and Lender is satisfied that, while any such protest is pending, there will be no impairment of the enforceability, validity, or priority of any of Lender's Liens on the Collateral; (d) non-consensual statutory Liens (other than Liens securing the payment of taxes) arising in the ordinary course of the applicable Borrower's business to the extent: (i) such Liens secure indebtedness which is not due, or (ii) such Liens secure indebtedness relating to claims or liabilities which are fully insured and being defended at the sole cost and expense and at the sole risk of the insurer or being contested in good faith by appropriate proceedings diligently pursued and available to the applicable Obligor, in each case prior to the commencement of foreclosure or other similar proceedings and with respect to which cash reserves have been established in such amounts and in such manner as may be acceptable to Lender; and (e) zoning restrictions, easements, licenses, covenants and other restrictions affecting the use of real property which do not interfere in any material respect with the use of such real property or ordinary conduct of the business of Borrower as presently conducted thereon or materially impair the value of the real property which may be subject thereto; so long as such security interests and mortgages do not apply to any property of Borrower other than the Equipment or real estate so acquired, and the indebtedness secured thereby does not exceed the cost of the Equipment or real estate so acquired, as the case may be.

"Person" means any individual, sole proprietorship, partnership, corporation, limited liability company, limited liability partnership, business trust, unincorporated association, joint stock corporation, trust, joint venture or other entity or any government or any agency or instrumentality or political subdivision thereof.

"Real Estate" means any real property and all improvements thereon on any real property owned by Borrower or as may be described on Exhibit A hereto. Borrower may not have any real property as of the date of this Agreement.

"Records" means all of Borrower's present and future books of account of every kind or nature, purchase and sale agreements, invoices, ledger cards, bills of lading and other shipping

evidence, statements, correspondence, memoranda, credit files and other data relating to the Collateral or any account debtor, together with the tapes, disks, diskettes and other data and software storage media and devices, file cabinets or containers in or on which the foregoing are stored (including any rights of Borrower with respect to the foregoing maintained with or by any other Person).

"Subordinated Debt" means all of the indebtedness owed by Borrower to any Person other than First Mortgage and Lender, the repayment of which is subordinated to the repayment of the Obligations pursuant to the terms of a subordination agreement approved in writing by Lender in its discretion.

"Taxes" shall have the meaning set forth in Section 2(e) hereof.

"Term Loan" means any loan made by Lender to Borrower in an original principal amount as specified in Exhibit "A" attached hereto which shall be amended from time to time as amounts are borrowed. Each loan shall be payable interest only at the amount so specified herein and due on the twelve month anniversary of the advance of the principal amount, which shall be automatically renewed if no written demand for repayment is made thirty days prior to any Maturity Date.

"Termination Date" means the earliest of (a) the Maturity Date, or (b) the date the Obligations are accelerated pursuant to Section 8(b).

"UCC" means the Uniform Commercial Code, as in effect from time to time, of the State of New York or of any other state the laws of which are required as a result thereof to be applied in connection with the issue of perfection of security interests; provided, however, that to the extent that the UCC is used to define any term herein or in any other documents and such term is defined differently in different Articles or Divisions of the UCC, the definition of such term contained in Article or Division 9 shall govern.

**SECTION 2. TERM LOAN; MATURITY**

A. Term Loan.

a.i. Lender has made the Term Loan available to Borrower in the amount as specified in Exhibit "A" hereto and as amended from time to time.

a.ii. Borrower shall repay the Term Loan Lender and make interest payments with respect to the Term Loan on the first day of each calendar month, commencing with the first such date following the borrowing of principal as specified in Exhibit "A" with interest due prorated based on a thirty day month for any principal amount advanced that does not fall on the first day of the month.

B. Termination of Agreement.

a.i. Borrower shall have a right to prepay all or any portion of the Term Loan prior to the Maturity Date, together with accrued and unpaid interest thereon as well as all other amounts due hereunder. This Agreement and the other Loan Documents, as each of same has been or may hereafter be modified shall continue in full force and effect until all of the Obligations have been repaid in full in cash and all commitments to lend have been terminated. The occurrence of the Termination Date shall not affect the continued effectiveness of any UCC financing statement filed in connection with this transaction, and such financing statements shall remain in effect until terminated as required under Article 9 of the UCC. On the Termination Date, Borrower shall pay to Lender, in full, all outstanding and unpaid Obligations, including, but not limited to the Term Loan, and shall furnish cash collateral to Lender in such amounts as Lender determines are reasonably necessary to secure Lender from loss, cost, damage or expense, including attorneys' fees and legal expenses, in connection with any contingent Obligations, including checks or other payments provisionally credited to the Obligations and/or as to which Lender has not yet received final and indefeasible payment. Lender shall have no obligation to release its security interest in any Collateral until Lender shall have received such payment and such cash collateral, together with a general release of all claims and causes of action by Borrower and each other Credit Party.

a.ii. The occurrence of the Termination Date shall not relieve or discharge Borrower of its duties, obligations and covenants under this Agreement or the other Loan Documents until all Obligations have been fully and finally discharged and paid, and Lender's continuing security interest in the Collateral and the rights and remedies of Lender hereunder, under the other Loan Documents and applicable law, shall remain in effect until all such Obligations have been fully and finally discharged and paid.

C. Renewal. This Agreement shall become effective as of the Effective Date and shall remain in effect so long as any amounts are due and owing hereunder.

D. Advances to Pay Obligations; Right to Cure; Protective Advances.

a.i. Borrower's failure to pay any amount due hereunder or under any other Loan (whether for principal, interest, fees, costs, expenses or otherwise) shall be deemed to be a request by Borrower to Lender to add such amount to the outstanding principal balance of the Term Loan,

and Lender may, but shall not be required to, add such amount to the outstanding principal balance of the Term Loan.

a.ii. Lender may, at its option, (i) cure any default by Borrower under any agreement with a third party or pay or bond on appeal any judgment entered against Borrower, (ii) discharge taxes and Liens at any time levied on or existing with respect to the Collateral, and (iii) pay any amount, incur any expense or perform any act which, in Lender's judgment, is necessary or appropriate to preserve, protect, insure or maintain the Collateral and the rights of Lender with respect thereto or enhance the likelihood of repayment of the Obligations. Lender shall be under no obligation to effect such cure, payment or bonding and shall not, by doing so, be deemed to have assumed any obligation or liability of Borrower.

a.iii. No action by Lender pursuant to this subsection (c) shall constitute a consent to or waiver of any Event of Default or obligate Lender to take any similar action in the future.

a.iv. All such amounts added to the Term Loan pursuant to this subsection (c) shall bear interest at the Default Rate and shall be due and payable on demand and, if not sooner demanded, on the Termination Date.

E. Requirements of Law.

Notwithstanding any other provision herein, in the event that any change in any requirement of law or in the interpretation, or application thereof or compliance by Lender with any request or directive (whether or not having the force of law) from any central bank or other governmental authority made subsequent to the Agreement Date:

a.i. shall subject Lender to any tax of any kind whatsoever with respect to this Agreement or change the basis of taxation of payments to Lender in respect thereof (except for Taxes and changes in the rate of tax on the net income of Lender); or

a.ii. shall impose on Lender any other condition;

and the result of any of the foregoing is to increase the cost to Lender, by an amount which Lender deems to be material, of making, continuing or maintaining the Term Loan or to reduce any amount receivable hereunder in respect thereof then, in any such case, Borrower shall as promptly as practicable pay Lender, upon its written demand, any additional amounts necessary to compensate Lender for such increased cost or reduced amount receivable. If Lender becomes entitled to claim any additional amounts pursuant to this subsection, it shall as promptly as practicable notify Borrower in writing of the event by reason of which it has become so entitled. A certificate as to any additional amounts payable pursuant to this subsection (detailing the basis

for calculation of such additional amounts) submitted by Lender to Borrower shall be conclusive in the absence of manifest error. This covenant shall survive the termination of this Agreement and the payment of the Obligations and all other amounts payable hereunder.

F. Taxes. All payments made by Borrower under this Agreement shall be made free and clear of, and without deduction or withholding for or on account of, any present or future income, stamp or other taxes, levies, imposts, duties, charges, fees, deductions or withholdings, now or hereafter imposed, levied, collected, withheld or assessed by any governmental authority, excluding, in the case of Lender, net income taxes and franchise or gross receipts taxes imposed on Lender as a result of a present or former connection between the jurisdiction of the government or taxing authority imposing such tax and Lender (excluding a connection arising solely from Lender having executed, delivered, performed its obligations or received a payment under, or enforced, this Agreement) or any political subdivision or taxing authority thereof or therein (all such non-excluded taxes, levies, imposts, duties, charges, fees, deductions and withholdings being hereinafter called "Taxes"). If any Taxes are required to be withheld from any amounts payable to Lender hereunder, the amounts so payable to Lender shall be increased to the extent necessary to yield to Lender (after payment of all Taxes) interest or any such other amounts payable hereunder at the rates or in the amounts specified in this Agreement. Whenever any Taxes are payable by Borrower, as promptly as possible thereafter Borrower shall send to Lender for its own account a certified copy of an original official receipt received by Borrower showing payment thereof. If Borrower fails to pay any Taxes when due to the appropriate taxing authority or fails to remit to Lender the required receipts or other required documentary evidence, Borrower shall indemnify Lender for any incremental taxes, interest or penalties that may become payable by Lender as a result of any such failure. The agreements in this subsection shall survive the termination of this Agreement and the payment of the Obligations and all other amounts payable hereunder.

## SECTION 3. INTEREST AND FEES

A. Interest. Borrower shall pay to Lender interest on the outstanding principal balance of the Term Loan at a per annum rate equal as specified in Exhibit "A".

B. Default Interest. To the extent permitted by law and without limiting any other right or remedy of Lender hereunder, whenever an Event of Default exists, the rate of interest on the unpaid principal balance of the Term Loan otherwise in effect hereunder shall, at the option of Lender, be increased by the amount of eighteen percent (18%) (such increased rate of interest, the "Default Rate"). Lender may charge the Default Rate retroactively beginning on the date the applicable Event of Default first occurred or existed. Borrower acknowledges that: (i) the Default Rate is a material inducement to Lender to make the Term Loan described herein; (ii) Lender would not have made the Term Loan in the absence of the agreement of Borrower to pay the Default Rate; (iii) the Default Rate represents compensation for increased risk to Lender that the Term Loan will not be repaid; and (iv) the Default Rate is not a penalty and represents a reasonable estimate of (A) the cost to Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Term Loan, and (B) compensation to Lender for losses that are difficult to ascertain. In the event of

termination of this Agreement by either party hereto, Lender's entitlement to the Default Rate will continue until all Obligations are paid in full.

C. Interest Payments. Interest shall be payable by Borrower to Lender monthly in arrears on the first day of each calendar month and shall be calculated on the basis of a three hundred sixty (360) day year and actual days elapsed. If Lender so elects, all interest accruing hereunder while an Event of Default exists or after the Termination Date shall be payable on demand.

D. Usury. Borrower acknowledges that Lender does not intend to reserve, charge or collect interest on money borrowed under this Agreement at any rate in excess of the rates permitted by applicable law and that, should any interest rate provided for in this Agreement exceed the legally permissible rate(s), the rate will automatically be reduced to the maximum rate permitted under applicable law. If Lender should collect any amount from or on behalf of Borrower which, if it were interest, would result in the interest rate charged hereunder exceeding the maximum rate permitted by applicable law, such amount will be applied to reduce principal of the Obligations or, if no Obligations remain outstanding, will be refunded to Borrower.

**SECTION 4. CONDITIONS PRECEDENT**

Each of the following is a condition precedent to Lender entering into this Agreement hereunder:

A. Lender shall have received evidence, in form and substance satisfactory to Lender, that Lender has valid perfected and second-priority security interests in and Liens upon the Collateral and any other property which is intended to be security for the Obligations or the liability of any Credit Party in respect thereof, subject only to Permitted Liens.

B. All requisite corporate action and proceedings in connection with this Agreement and the other Loan Documents shall be satisfactory in form and substance to Lender, and Lender shall have received all information and copies of all documents, including records of requisite corporate action and proceedings which Lender may have requested in connection therewith, such documents where requested by Lender or its counsel to be certified by appropriate corporate officers or governmental authorities.

C. Lender shall have received, in form and substance satisfactory to Lender, all consents, waivers, acknowledgments and other agreements from third Persons which Lender may deem necessary or desirable in order to permit, protect and perfect its security interests in and Liens upon the Collateral or to effectuate the provisions or purposes of this Agreement and the other Loan Documents, including acknowledgments by lessors, mortgagees and warehousemen of Lender's security interests in the Collateral, waivers by such Persons of any security interests, Liens or other claims by such Persons to the Collateral and agreements

permitting Lender access to, and the right to remain on, the premises to exercise its rights and remedies and otherwise deal with the Collateral.

D. The other Loan Documents and all instruments and documents hereunder and thereunder shall have been duly executed and delivered to Lender, in form and substance satisfactory to Lender.

E. Lender shall have received such other agreements, documents, instruments and other items as it may require.

F. All representations and warranties contained herein and in the other Loan Documents shall be true and correct in all material respects.

G. No Default or Event of Default shall exist.

H. No event or circumstance shall exist or have occurred which has had, or which could reasonably be expected to have, a Material Adverse Effect.

**SECTION 5. GRANT OF SECURITY INTEREST**

To secure payment and performance of all Obligations, Borrower (as to each of the items listed below) each hereby grants to Lender a continuing security interest in, a Lien upon, and a right of set off against, and hereby assigns to Lender as security, all of the such Obligor's rights and interests in the following property, whether now owned or existing or hereafter acquired or arising, and wherever located (collectively, the "Collateral"):

a) all Real Estate;

b) all Accounts;
c) all cash and cash equivalents;
d) all Chattel Paper;
e) all Deposit Accounts;

f) all Documents;

g) all Equipment;

h) all Fixtures;

i) all General Intangibles;

j) all Instruments;

k) all Inventory;

l) all Investment Property;

m) all Letter-of-Credit Rights;

n) the commercial tort claims (as defined in the UCC);

o) all Proceeds;

p) all Records; and

q) all other assets and property of each Obligor now or hereafter in possession of Lender and/or in which Lender is granted a security interest or other Lien pursuant to any Loan Document.

All of the Collateral secures all of the Obligations, and Lender shall not have any obligation to release its security interests in or any other Liens on any Collateral unless and until all of the requirements of Section 2(b) are fully satisfied.

**SECTION 6. PAYMENT**

Payments. All Obligations shall be payable to Lender via wire transfer to such account and pursuant to such wire instructions as Lender may designate from time to time. Lender may apply payments received or collected from Borrower or for the account of Borrower (including the monetary proceeds of collections or of realization upon any Collateral) to such of the Obligations, whether or not then due, in such order and manner as Lender determines, and Lender shall have the continuing exclusive right to reverse and reapply any and all such payments and collections in such manner and in such order as Lender may deem advisable. Borrower shall make all payments to Lender on the Obligations free and clear of, and without deduction or withholding for or on account of, any setoff, counterclaim, defense, duties, taxes, levies, imposts, fees, deductions, withholding, restrictions or conditions of any kind. If after receipt of any payment of, or proceeds of Collateral applied to the payment of, any of the Obligations, Lender is required to surrender or return such payment or proceeds to any Person for any reason, then the Obligations intended to be satisfied by such payment or proceeds shall be reinstated and continue and this Agreement shall continue in full force and effect as if such payment or proceeds had not been received by Lender. Borrower shall be liable to pay to Lender, and does hereby indemnify and hold Lender harmless for the amount of any payments or proceeds surrendered or returned. This Section 6 shall remain effective notwithstanding any contrary action which may be taken by Lender in reliance upon such payment or proceeds and shall survive the payment of the Obligations and the termination or non-renewal of this Agreement.

## SECTION 7. REPRESENTATIONS AND WARRANTIES

Borrower hereby represents and warrants to Lender the following (which shall survive the execution and delivery of this Agreement):

A. Corporate Existence, Power and Authority: Subsidiaries. Borrower is a limited liability company duly organized and in good standing under the laws of its state of organization and is duly qualified as a foreign limited liability company and in good standing in all states or other jurisdictions where the nature and extent of the business transacted by it or the ownership of assets makes such qualification necessary, except for those jurisdictions in which the failure to so qualify could not reasonably be expected to have a Material Adverse Effect. The execution, delivery and performance of this Agreement, the other Loan Documents and the transactions contemplated hereunder and thereunder are all within each Obligor's limited liability company powers, have been duly authorized and are not in contravention of law or the terms of Borrower's articles of organization, operating agreement or other organizational documentation, or any indenture, agreement or undertaking to which Borrower is a party or by which Borrower or its property are bound. This Agreement and the other Loan Documents constitute legal, valid and binding obligations of Borrower enforceable in accordance with their respective terms. Borrower does not have any subsidiaries or any investments in any other Person.

B. Priority of Liens; Title to Properties. The security interests and Liens granted to Lender under this Agreement and the other Loan Documents constitute valid and perfected second priority security interests and Liens in and upon the Collateral, subject only to a first-priority mortgage in and upon the Real Estate and Collateral or other Permitted Liens as determined by Lender. Borrower has good and marketable title to all of its properties and assets subject to no Liens other than Permitted Liens.

C. Litigation. There is no present investigation by any governmental agency pending, or to the best of Borrower' knowledge threatened, against or affecting Borrower, their assets or business and there is no action, suit, proceeding or claim by any Person pending, or to the best of Borrower' knowledge threatened, against Borrower or their assets or goodwill, or against or affecting any transactions contemplated by this Agreement, which if adversely determined against Borrower would result in liability to such Borrower in excess of $100,000 or which could reasonably be expected to result in a Material Adverse Effect except for that certain suit pending in Circuit Court, Palm Beach County under case number 502013CA012387.

D. Compliance with Other Agreements and Applicable Laws. Borrower does not believe it is in default in any material respect under, or in violation in any material respect of any of the terms of, any agreement, contract, instrument, lease or other commitment to which it is a party or by which it or any of its assets are bound, and Borrower is in compliance in all material respects with all applicable provisions of laws, rules, regulations, licenses, permits, approvals and orders of any foreign, federal, state or local governmental authority.

E. Survival of Warranties: Cumulative. All representations and warranties contained in this Agreement or any of the other Loan Documents shall survive the execution and delivery of this Agreement and shall be deemed to have been made again by Borrower to Lender on the date of each additional borrowing or other credit accommodation hereunder and shall be conclusively presumed to have been relied on by Lender regardless of any investigation made or information possessed by Lender. The representations and warranties set forth herein shall be cumulative and in addition to any other representations or warranties which Borrower shall now or hereafter give, or cause to be given, to Lender.

F. Costs and Expenses. Borrower shall pay to Lender on demand all costs, expenses, filing fees and taxes paid or payable in connection with the preparation, negotiation, execution, delivery, recording, administration, collection, liquidation, enforcement and defense of the Obligations, Lender's rights in the Collateral, this Agreement, the other Loan Documents and all other documents executed in connection herewith or therewith and the consummation of the transactions contemplate hereby and thereby and any amendments, supplements or consents which may hereafter be contemplated (whether or not executed) or entered into in respect hereof and thereof, including: (i) all costs and expenses of filing or recording (including Uniform Commercial Code financing statement filing taxes and fees, documentary taxes, intangibles taxes and mortgage recording taxes and fees, if applicable); (ii) all insurance premiums (including title insurance), appraisal fees and search fees; (iii) costs and expenses of remitting loan proceeds and collecting checks and other items of payment, together with Lender's customary charges and fees with respect thereto (including wire transfer fees); (iv) costs and expenses of preserving and protecting the Collateral; (v) costs and expenses paid or incurred in connection with obtaining payment of the Obligations, enforcing the security interests and Liens of Lender, selling or otherwise realizing upon the Collateral, and otherwise enforcing the provisions of this Agreement and the other Loan Documents or defending any claims made or threatened against Lender arising out of the transactions contemplated hereby and thereby (including preparations for and consultations concerning any such matters); (vi) all out-of-pocket expenses and costs heretofore and from time to time hereafter incurred by Lender during the course of periodic field examinations of the Collateral and Borrower' operations; (vii) the fees and disbursements of counsel (including legal assistants) to Lender in connection with any of the foregoing, and (viii) all costs, expenses, filing fees and taxes paid or payable by Lender in connection with the collection, the liquidation, the enforcement and defense of the Obligations, Lender's rights in the Collateral, this Agreement, the other Loan Documents and all other documents related herewith or therewith.

## SECTION 8. EVENTS OF DEFAULT AND REMEDIES

A. Events of Default. The occurrence or existence of any one or more of the following events are referred to herein individually as an "Event of Default," and collectively as "Events of Default":

a.i. Borrower fails to pay when due any of the Obligations, including but not limited to any payment of principal or interest on the Term Loan;

a.ii. Borrower fails to perform any of the terms, covenants, conditions or provisions contained in this Agreement, the Mortgage or any of the other Loan Documents to which Borrower is a party and, to the extent such failure can be cured, such failure continues for a period of fifteen (15) days;

a.iii. any representation, warranty or statement of fact made by Borrower to Lender in this Agreement, any other Loan Document or any other agreement, schedule, confirmatory assignment or otherwise shall when made or deemed made be false or misleading in any material respect;

a.iv. Borrower purports to revoke or terminate, or fails to perform any of the terms, covenants, conditions or provisions of, any guarantee, endorsement, pledge agreement or other agreement of such Borrower in favor of Lender and such failure continues for a period of fifteen (15) days;

a.v. any default or event of default occurs under the Mortgage or any other Loan Document after taking into account any grace periods set forth therein;

B. Remedies. If an Event of Default exists, in each case without demand or notice to Borrower (unless such notice is expressly required hereunder or under applicable law):

a.i. Lender shall have all rights and remedies provided in this Agreement, the Mortgage, the other Loan Documents, the UCC and other applicable law. All rights, remedies and powers granted to Lender hereunder, under any of the other Loan Documents, the UCC or other applicable law, are cumulative, not exclusive and enforceable, in Lender's discretion, alternatively, successively, or concurrently on any one or more occasions, and shall include, without limitation, the right to apply to a court of equity for an injunction to restrain a breach or threatened breach by any Credit Party of this Agreement or any of the other Loan Documents. Lender may, at any time or times, proceed directly against Borrower to collect the Obligations without prior recourse to the Collateral.

a.ii. Lender may, in its discretion and without limitation, (A) accelerate the payment of all Obligations and demand immediate payment thereof to Lender, and/or terminate Lender's commitment (if any) to provide loans and any other financial accommodations hereunder, (B) with or without judicial process or the aid or assistance of others, enter upon any premises on or in which any of the Collateral may be located and take possession of the Collateral or complete processing, manufacturing and repair of all or

any portion of the Collateral, and each Obligor hereby irrevocably consents to any such action by Lender, (C) require Borrower to, at Borrower's expense, and Borrower hereby agrees that it shall, assemble and make available to Lender any part or all of the Collateral at any place and time designated by Lender, (D) collect, foreclose, receive, appropriate, setoff and realize upon any and all Collateral, (E) remove any or all of the Collateral from any premises on or in which the same may be located for the purpose of effecting the sale, foreclosure or other disposition thereof or for any other purpose, and (F) sell, lease, transfer, assign, deliver or otherwise dispose of any and all Collateral (including entering into contracts with respect thereto, public or private sales at any exchange, broker's board, at any office of Lender or elsewhere) at such prices or terms as Lender may deem reasonable, for cash, upon credit or for future delivery, with Lender having the right to purchase the whole or any part of the Collateral at any such public sale, all of the foregoing being free from any right or equity of redemption of Borrower, which right or equity of redemption is hereby expressly waived and released by Borrower. If any of the Collateral is sold or leased by Lender upon credit terms or for future delivery, the Obligations shall not be reduced as a result thereof until payment therefor is finally collected by Lender. If notice of disposition of Collateral is required by law, ten (10) days prior notice by Lender to Borrower designating the time and place of any public sale or the time after which any private sale or other intended disposition of Collateral is to be made, shall be deemed to be reasonable notice thereof, and Borrower waives any other notice. In the event Lender institutes an action to recover any Collateral or seeks recovery of any Collateral by way of a receiver, a writ of possession or any other pre-judgment remedy, Borrower waives the posting of any bond which might otherwise be required.

a.iii. Lender may apply the cash proceeds of Collateral actually received by Lender from any sale, lease, foreclosure or other disposition of the Collateral to payment of the Obligations, in whole or in part and in such order as Lender may elect, whether or not then due. Borrower shall remain liable to Lender for the payment of any deficiency with interest at the Default Rate and all costs and expenses of collection or enforcement, including attorneys' fees and legal expenses.

a.iv. Lender may (A) exercise any of its remedies under the Mortgage and/or any other Loan Document, (B) apply any cash collateral to the Obligations (without limiting the foregoing, Lender may instruct any bank or other financial institution holding any cash, certificate of deposit or other Collateral to pay over such Collateral to Lender), and (C) draw on any letter of credit issued for the benefit of Lender in connection with this Agreement or any other Loan Document and apply the proceeds thereof to the Obligations.

a.v. Lender may, without regard to any waste, adequacy of the security or solvency of Borrower, apply for the appointment of a receiver of the Collateral, to which appointment each Obligor hereby irrevocably consents, whether or not foreclosure or repossession proceedings have been commenced hereunder or under any other Loan Document and whether or not a foreclosure sale or secured party sale has occurred.

a.vi. Lender may cancel any insurance policy of Borrower's in exchange for a refund of the unearned premium with respect thereto, and Borrower hereby authorizes any insurance company which has issued any such policy to make such payment directly to Lender for application to the Obligations.

**SECTION 9. JURY TRIAL WAIVER; OTHER WAIVERS AND CONSENTS; GOVERNING LAW**

A. Governing Law; Choice of Forum; Service of Process; Jury Trial Waiver.

a.i. The validity, interpretation and enforcement of this Agreement and the other Loan Documents and any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the State of Florida (without giving effect to principles of conflicts of law).

a.ii. Borrower and Lender irrevocably consent and submit to the non-exclusive jurisdiction of the state courts of New York, New York and the United States District Court serving New York, New York and waive any objection based on venue or forum non conveniens with respect to any action instituted therein arising under this Agreement or any of the other Loan Documents or in any way connected with or related or incidental to the dealings of the parties hereto in respect of this Agreement or any of the other Loan Documents or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise, and agree that any dispute with respect to any such matters shall be heard only in the courts described above (except that Lender shall have the right to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction which Lender deems necessary or appropriate in order to realize on the Collateral or to otherwise enforce its rights against each Obligor or their property).

a.iii. Borrower hereby waives personal service of any and all process upon it and consents that all such service of process may be made by certified

mail (return receipt requested) directed to its address in accordance with the notice provisions hereof and service so made shall be deemed to be completed three (3) days after the same shall have been so deposited in the U.S. mail, or, at Lender's option, by service upon Borrower in any other manner provided under the rules of any such courts. Within thirty (30) days after such service, Borrower shall appear in answer to such process, failing which Borrower shall be deemed in default and judgment may be entered by Lender against Borrower for the amount of the claim and other relief requested.

a.iv. BORROWER AND LENDER EACH HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING UNDER THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, OR (ii) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO IN RESPECT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS RELATED HERETO OR THERETO IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER IN CONTRACT, TORT, EQUITY OR OTHERWISE. BORROWER AND LENDER EACH HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT BORROWER OR LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

a.v. Lender shall not have any liability to Borrower (whether in tort, contract, equity or otherwise) for losses suffered by Borrower in connection with, arising out of, or in any way related to the transactions or relationships contemplated by this Agreement, or any act, omission or event occurring in connection herewith, unless it is determined by a final and non-appealable judgment or court order binding on Lender, that the losses were the result of acts or omissions constituting gross negligence or willful misconduct. In any such litigation, Lender shall be entitled to the benefit of the rebuttable presumption that it acted in its sole discretion and with the exercise of ordinary care in the performance by it of the terms of this Agreement. In no event shall Lender or any of its Affiliates or any of their respective officers, directors, employees or agents be liable on any theory of liability for any special, indirect, consequential, exemplary or punitive damages (including any loss of profits, business or anticipated savings). Borrower hereby waives, releases and agrees not to sue upon

any such claim for any special, indirect, consequential or punitive damages, whether or not accrued and whether or not known or suspected to exist in its favor.

B. Waiver of Notices. Borrower hereby expressly waives demand, presentment, acceptance, notice of acceptance, protest and notice of protest and notice of dishonor with respect to any and all instruments and commercial paper, included in or evidencing any of the Obligations or the Collateral, and any and all other demands and notices of any kind or nature whatsoever with respect to the Obligations, the Collateral and this Agreement, except such as are expressly provided for herein. No notice to or demand on Borrower which Lender may elect to give shall entitle Borrower to any other or further notice or demand in the same, similar or other circumstances.

C. Amendments and Waivers. Neither this Agreement nor any provision hereof shall be amended, modified, waived or discharged orally or by course of conduct, but only by a written agreement signed by an authorized officer of Lender, and as to amendments, as also signed by an authorized officer of Borrower. Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights, powers and/or remedies unless such waiver shall be in writing and signed by an authorized officer of Lender. Any such waiver shall be enforceable only to the extent specifically set forth therein. A waiver by Lender of any right, power and/or remedy on any one occasion shall not be construed as a bar to or waiver of any such right, power and/or remedy which Lender would otherwise have on any future occasion, whether similar in kind or otherwise.

D. Waiver of Counterclaims. Borrower waives all rights to interpose any claims, deductions, setoffs or counterclaims of any nature (other than compulsory counterclaims) in any action or proceeding with respect to this Agreement, the Obligations, the Collateral or any matter arising therefrom or relating hereto or thereto.

E. Indemnification. Borrower shall indemnify and hold Lender and its Affiliates, and their respective directors, agents, employees and counsel, harmless from and against any and all losses, claims, damages, liabilities, costs or expenses imposed on, incurred by or asserted against any of them in connection with any litigation, investigation, claim or proceeding commenced or threatened related to the negotiation, preparation, execution, delivery, enforcement, performance or administration of this Agreement, any other Loan Documents, or any undertaking or proceeding related to any of the transactions contemplated hereby or any act, omission, event or transaction related or attendant thereto, including amounts paid in settlement, court costs, and the fees and expenses of counsel. To the extent that the undertaking to indemnify, pay and hold harmless set forth in this Section may be unenforceable because it violates any law or public policy, Borrower shall pay the maximum portion which it is permitted to pay under applicable law to Lender in satisfaction of indemnified matters under this Section. The foregoing indemnity shall survive the payment of the Obligations and the termination or non-renewal of this Agreement.

**SECTION 10. MISCELLANEOUS**

A. Notices. All notices, requests and demands hereunder shall be (i) in writing, (ii) made to Lender or Borrower at their respective addresses set forth below, or to such other address as either party may designate by written notice to the other in accordance with this provision, and (ii) deemed to have been given or made: if delivered in person, immediately upon delivery; if by facsimile transmission, immediately upon sending and upon confirmation of receipt; if by nationally recognized overnight courier service with instructions to deliver the next Business Day, one (1) Business Day after sending; and if by certified mail, return receipt requested, five (5) days after mailing.

If to Borrower:

With a copy to:

If to Lender:

With a copy to:

B. Partial Invalidity. If any provision of this Agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Agreement as a whole, but this Agreement shall be construed as though it did not contain the particular provision held to be invalid or unenforceable and the rights and obligations of the parties shall be construed and enforced only to such extent as shall be permitted by applicable law.

C. Successors. This Agreement, the other Loan Documents and any other document referred to herein or therein shall be binding upon and inure to the benefit of and be enforceable by Lender, Borrower and their respective successors and assigns, except that Borrower may not assign its rights or obligations under this Agreement, any other Loan Documents or any other document referred to herein or therein without the prior written consent of Lender. Lender may assign its rights and delegate its obligations under this Agreement and the other Loan Documents and further may assign, or sell participations in, all or any part of the Term Loan or any other interest herein to another financial institution or other Person, in which event, the assignee or participant shall have, to the extent of such assignment or participation, the same rights and benefits as it would have if it were Lender hereunder, except as otherwise provided by the terms of such assignment or participation; provided, that, absent a Default or Event of Default, Lender may consult with Borrower prior to the consummation of such assignment or sale.

D. Execution in Counterparts; Execution by Fax or E-Mail. This Agreement and each other Loan Document may be executed in separate counterparts, all of which shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement or any other Loan Document by facsimile or e-mail shall be equally as effective as delivery of an original executed counterpart of this Agreement or such other Loan Document. Any party delivering an executed counterpart of this Agreement or any other Loan Document by facsimile or e-mail also shall deliver an original executed counterpart of this Agreement or such other Loan Document, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement or such other Loan Document.

E. No Third-Partv Beneficiaries. Neither (i) any stockholder or owner of any other equity interest in Borrower, (ii) any of Borrower's employees or creditors (other than Lender and Lender's Affiliates), nor (iii) any other Person claiming by or through Borrower shall be entitled to rely on this Agreement or have any rights, remedies or claims against Lender or any Affiliate of Lender under or in connection with this Agreement.

F. Entire Agreement. This Agreement, the other Loan Documents, any supplements hereto or thereto, and any instruments or documents delivered or to be delivered in connection herewith or therewith represents the entire agreement and understanding concerning the subject matter hereof and thereof between the parties hereto, and supersede all other prior agreements, understandings, negotiations and discussions, representations, warranties, commitments, proposals, term sheets, offers and contracts concerning the subject matter hereof, whether oral or written. In the event of any inconsistency between the terms of this Agreement and any schedule or exhibit hereto, the terms of this Agreement shall govern.

G. Oral Agreements Ineffective. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,

CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, Borrower and Lender have caused this Mortgage and Security Agreement to be duly executed as of the day and year first above written.

BORROWER

By: ________________________________________

LENDER

By: ________________________________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| Amount | Rate | Date | Borrower sign | Lender sign |
|---|---|---|---|---|
| $2,761,475 | 15% | 10/25/19 | Signed | Signed |
| $1,492,500 | 15% | 11/1/19 | Signed | Signed |
| $885,500 | 15% | 11/8/19 | Signed | Signed |
| $492,525 | 15% | 11/15/19 | Signed | Signed |
| $1,435,500 | 15% | 11/22/99 | Signed | Signed |
| $1,485,000 | 15% | 12/6/19 | Signed | Signed |
| $1,188,000 | 15% | 12/13/19 | Signed | Signed |
| $2,356,200 | 15% | 12/20/19 | Signed | Signed |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| | | |
|---|---|---|
| $ 564300 Rate 15% | Date 1/10/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 346500 Rate 12% | Date 1/10/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 173,250 Rate 12% | Date 1/17/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 11,506.25 Rate 15% | Date 1/17/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 1,534,500 Rate 15% | Date 1/17/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 497,500 Rate 15% | Date 1/24/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 74625 Rate 12% | Date 1/31/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |
| $ 547,250 Rate 15% | Date 1/31/20 | Borrower sign Michael Dayno<br>Lender sign R Cardale |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| | | |
|---|---|---|
| $ 646,750 Rate 15% | Date 2/7/20 | Borrower sign Michael Dayne<br>Lender sign [signature] |
| $ 646,750 Rate 15% | Date 2/14/20 | Borrower sign Michael Dayne<br>Lender sign [signature] |
| $ 1,019,875 Rate 15% | Date 2/28/20 | Borrower sign Michael Dayne<br>Lender sign [signature] |
| $________ Rate __% | Date________ | Borrower sign________<br>Lender sign ________ |
| $________ Rate __% | Date________ | Borrower sign________<br>Lender sign ________ |
| $________ Rate __% | Date________ | Borrower sign________<br>Lender sign ________ |
| $________ Rate __% | Date________ | Borrower sign________<br>Lender sign ________ |
| $________ Rate __% | Date________ | Borrower sign________<br>Lender sign ________ |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 323,315 Rate 15% Date 3/13/20 Borrower sign Michael Dayo
Lender sign [signature]

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 721,375 Rate 15% Date 4/10/20 Borrower sign Michael Dagro
Lender sign R Candale

$ 129,350 Rate 12% Date 4/10/20 Borrower sign Michael Dagro
Lender sign R Candale

$ 27,139.81 Rate 15% Date 4/10/20 Borrower sign Michael Dagro
Lender sign R Candale

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 223,875 Rate 12% Date 5/1/20 Borrower sign [signature]
Lender sign [signature]

$ 199,000 Rate 15% Date 5/1/20 Borrower sign [signature]
Lender sign [signature]

$ 1,368,125 Rate 15% Date 5/8/20 Borrower sign [signature]
Lender sign [signature]

$ 373,125 Rate 15% Date 5/15/20 Borrower sign [signature]
Lender sign [signature]

$ 522,375 Rate 12% Date 5/22/20 Borrower sign [signature]
Lender sign [signature]

$ 572,125 Rate 15% Date 5/22/20 Borrower sign [signature]
Lender sign [signature]

$_________ Rate __% Date_______ Borrower sign____________
Lender sign ____________

$_________ Rate __% Date_______ Borrower sign____________
Lender sign ____________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 1,243,750 Rate 15% Date 6/5/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 1,915,375 Rate 15% Date 6/19/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 248,750 Rate 12% Date 6/19/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 721,375 Rate 15% Date 6/26/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$________ Rate __% Date______ Borrower sign________
Lender sign ________

$________ Rate __% Date______ Borrower sign________
Lender sign ________

$________ Rate __% Date______ Borrower sign________
Lender sign ________

$________ Rate __% Date______ Borrower sign________
Lender sign ________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| | | |
|---|---|---|
| $ 865,650 Rate 15% | Date 7/10/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 38,021.36 Rate 15% | Date 7/10/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 2,089,500 Rate 15% | Date 7/17/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 248,750 Rate 12% | Date 7/24/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 1,979,055 Rate 15% | Date 7/24/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 99,500 Rate 12% | Date 7/31/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $ 1,641,750 Rate 15% | Date 7/31/20 | Borrower sign Michael Dagno<br>Lender sign R Cardale |
| $______ Rate __% | Date_____ | Borrower sign________<br>Lender sign________ |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 746,250 Rate 12% Date 8/7/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 1,558,667.50 Rate 15% Date 8/7/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 497,500 Rate 12% Date 8/14/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 1,825,825.= Rate 15% Date 8/14/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| | | | |
|---|---|---|---|
| $ 746,250 Rate 12% | Date 8/7/20 | Borrower sign Michael Dagna | Lender sign R Cardale |
| $ 1,558,667.50 Rate 15% | Date 8/7/20 | Borrower sign Michael Dagna | Lender sign R Cardale |
| $ 497,500 Rate 12% | Date 8/14/20 | Borrower sign Michael Dagna | Lender sign R Cardale |
| $ 1,825,825 Rate 15% | Date 8/14/20 | Borrower sign Michael Dagna | Lender sign R Cardale |
| $ 945,250 Rate 15% | Date 8/21/20 | Borrower sign Michael Dagna | Lender sign R Cardale |
| $_____ Rate __% | Date_____ | Borrower sign_____ | Lender sign _____ |
| $_____ Rate __% | Date_____ | Borrower sign_____ | Lender sign _____ |
| $_____ Rate __% | Date_____ | Borrower sign_____ | Lender sign _____ |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

| | | |
|---|---|---|
| $ 1,144,250 Rate 15% | Date 9/4/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $ 99,500 Rate 12% | Date 9/4/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $ 1,691,500 Rate 15% | Date 9/11/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $ 1,243,750 Rate 15% | Date 9/18/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $ 383,075 Rate 15% | Date 9/25/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $ 24,875 Rate 12% | Date 9/25/20 | Borrower sign Michael Dazzo<br>Lender sign R Cordale |
| $______ Rate __% | Date_____ | Borrower sign______<br>Lender sign ______ |
| $______ Rate __% | Date_____ | Borrower sign______<br>Lender sign ______ |

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 198,530.41 Rate 15% Date 10/2/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 14,243.07 Rate 12% Date 10/2/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 1,522,350 Rate 15% Date 10/2/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 756,205 Rate 15% Date 10/9/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 1,233,800 Rate 15% Date 10/16/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 228,850 Rate 12% Date 10/16/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 1,393,000 Rate 15% Date 10/23/20 Borrower sign Michael Dagno
Lender sign R Cordale

$ 701,475 Rate 15% Date 10/30/20 Borrower sign Michael Dagno
Lender sign R Cordale

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$4,736,200 Rate 15% Date 11/6/20 Borrower sign [signature] Lender sign [signature]

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________

Lender sign ____________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 199,005 Rate 12% Date 11/13/20 Borrower sign Michael Dagno
Lender sign R Cardale

$ 696,500 Rate 15% Date 11/13/20 Borrower sign Michael Dagno
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date________ Borrower sign____________________
Lender sign ____________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 686,550 Rate 12% Date 11/20/20 Borrower sign Michael Dagro
Lender sign R Cardale

$ 965,150 Rate 15% Date 11/20/20 Borrower sign Michael Dagro
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 487,550 Rate 15% Date 11/27/20 Borrower sign [signature]
Lender sign [signature]

$ 99,500 Rate 12% Date 11/27/20 Borrower sign [signature]
Lender sign [signature]

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

$__________ Rate __% Date_________ Borrower sign____________________
Lender sign ____________________

**EXHIBIT "A"**

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 2,139,25 Rate 15% Date 12/4/20 Borrower sign [signature]
Lender sign [signature]

$ 590,700 Rate 12% Date 12/4/20 Borrower sign [signature]
Lender sign [signature]

$ 333,325 Rate 12 % Date 12/11/20 Borrower sign [signature]
Lender sign [signature]

$ 1,353,200 Rate 15% Date 12/11/20 Borrower sign [signature]
Lender sign [signature]

$ 279,595 Rate 12% Date 12/18/20 Borrower sign [signature]
Lender sign [signature]

$ 895,500 Rate 15% Date 12/18/20 Borrower sign [signature]
Lender sign [signature]

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

**EXHIBIT "A"**

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 2,200,000 Rate 15% Date 12/29/20 Borrower sign Michael Dagno

Lender sign R Coalale

$ 137,310 Rate 12% Date 12/29/20 Borrower sign Michael Dagno

Lender sign R Coalale

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________

Lender sign __________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 55,209.89 Rate 12% Date 1/1/21 Borrower sign Michael Dagno
Lender sign R Cardale

$ 399,785.37 Rate 15% Date 1/1/21 Borrower sign Michael Dagno
Lender sign R Cardale

$ 164,739.60 Rate 12% Date 1/11/21 Borrower sign Michael Dagno
Lender sign R Cardale

$ 3,694,133.40 Rate 15% Date 1/11/21 Borrower sign Michael Dagno
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 400,000- Rate 12 % Date 1/15/21 Borrower sign Michael Dagga
Lender sign R Cardale

$ 752,350- Rate 15% Date 1/15/21 Borrower sign Michael Dagga
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

- $ 675,000 Rate 15% Date 1/22/21 Borrower sign ______ Lender sign ______
- $ 142,000 Rate 12% Date 1/22/21 Borrower sign ______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______
- $______ Rate __% Date______ Borrower sign______ Lender sign ______

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 1,000,000 Rate 15% Date 1/29/21 Borrower sign Michael Dagno
Lender sign R Cardale

$ 75,000 Rate 12% Date 1/29/21 Borrower sign Michael Dagno
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 239,500 Rate 12 % Date 2/12/21 Borrower sign [signature]
Lender sign [signature]

$ 817,150 Rate 15 % Date 2/12/21 Borrower sign [signature]
Lender sign [signature]

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 600,000 Rate 15% Date 2/19/21 Borrower sign [signature]

Lender sign [signature]

$ 250,000 Rate 12 % Date 2/19/21 Borrower sign [signature]

Lender sign [signature]

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

$_________ Rate __% Date_______ Borrower sign______________

Lender sign ______________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 1,470,000 Rate 15% Date 3/5/21 Borrower sign Michael Dazzo

Lender sign ____________

$ 195,000 Rate 12% Date 3/5/21 Borrower sign Michael Dazzo

Lender sign ____________

$ 100,000 Rate 12% Date 3/19/21 Borrower sign Michael Dazzo

Lender sign ____________

$ 575,000 Rate 15% Date 3/19/21 Borrower sign Michael Dazzo

Lender sign ____________

$__________ Rate __% Date________ Borrower sign____________

Lender sign ____________

$__________ Rate __% Date________ Borrower sign____________

Lender sign ____________

$__________ Rate __% Date________ Borrower sign____________

Lender sign ____________

$__________ Rate __% Date________ Borrower sign____________

Lender sign ____________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 1,565,000 Rate 15% Date 3/26/21 Borrower sign Michael Dapo
Lender sign

$ 81,334.17 Rate 12% Date 4/6/21 Borrower sign Michael Dapo
Lender sign

$ 383,184.71 Rate 15% Date 4/6/21 Borrower sign Michael Dapo
Lender sign

$ 550,000 Rate 15% Date 5/6/21 Borrower sign Michael Dapo
Lender sign

$ 250,000 Rate 12 % Date 5/6/21 Borrower sign Michael Dapo
Lender sign

$ 525,000 Rate 15% Date 6/11/21 Borrower sign Michael Dapo
Lender sign

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 250,000 Rate 15 % Date 6/25/21 Borrower sign Michael Dagro
Lender sign R Cardale

$ 150,000 Rate 12 % Date 6/25/21 Borrower sign Michael Dagro
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

$__________ Rate __% Date________ Borrower sign__________________
Lender sign __________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 746,250 Rate 12% Date 8/7/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 1,558,667.50 Rate 15% Date 8/7/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 497,500 Rate 12% Date 8/14/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$ 1,825,825.– Rate 15% Date 8/14/20 Borrower sign Michael Dazzo
Lender sign R Cardale

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

$__________ Rate __% Date________ Borrower sign________________
Lender sign ________________

EXHIBIT "A"

The principal amounts advanced herein and agreed to as being owed are as follows:

$ 746,250 Rate 12% Date 8/7/20 Borrower sign Michael Dagna
Lender sign R Cardale

$ 1,558,667.50 Rate 15% Date 8/7/20 Borrower sign Michael Dagna
Lender sign R Cardale

$ 497,500 Rate 12% Date 8/14/20 Borrower sign Michael Dagna
Lender sign R Cardale

$ 1,825,825 Rate 15% Date 8/14/20 Borrower sign Michael Dagna
Lender sign R Cardale

$ 945,250 Rate 15% Date 8/21/20 Borrower sign Michael Dagna
Lender sign R Cardale

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______

$______ Rate __% Date______ Borrower sign______
Lender sign ______