**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| BROADSTREET NEW YORK INC.,<br><br>Plaintiff,<br><br>-against-<br><br>L3 CAPITAL INCOME FUND, LLC and ALTERNATIVE GLOBAL MANAGEMENT, LLC,<br><br>Defendants. | Index No.____________<br><br>**VERIFIED INTERPLEADER COMPLAINT** |

Interpleader Plaintiff Broadstreet New York Inc. (hereinafter as "Interpleader Plaintiff" or "Broadstreet NY"), by and through its undersigned counsel, hereby files the following Verified Interpleader Complaint against Interpleader Defendants L3 Capital Income Fund, LLC and Alternative Global Management, LLC (collectively as "Interpleader Defendants"), and in support thereof states and alleges, as follows:

**THE PARTIES**

1. Broadstreet NY is a New York based affiliate of Broadstreet, Inc. ("Broadstreet"), a private equity firm based in Greenville, South Carolina with a track record of identifying promising growth sectors for capital investments, including infrastructure land development, hotel development, hotel/lodging, restaurants and other specialty areas. Broadstreet has conducted over $3 billion in transactions, has over 35 front-office personnel and employs more than 600 people throughout the various entities it owns, manages and/or controls.

2. Interpleader Defendant L3 Capital Income Fund, LLC ("L3 Fund") is an unregistered, private investment fund solely managed by Richard Cardinale ("Cardinale"). The L3 Fund purports to solicit investors by way of a private placement memorandum (the "L3 PPM") annexed hereto as **Exhibit A**. According to the L3 PPM, the L3 Fund is to generate returns of 12-

15% for its investors. The L3 Fund purports to have in excess of 100 investors. Upon information and belief, the L3 Fund operates out of New York and its main and only office is believed to be located in the State of New York and the location of the office is attached to an apparent UPS store with retail post office boxes and no real physical operating office. Cardinale, in addition to being the sole manager of the L3 Fund, also purports to be an investor in the L3 Fund. Cardinale is a citizen of the State of New York.

3. Interpleader Defendant Alternative Global Management, LLC ("AGM") is a Delaware limited liability company with its business operations, bank account and principal place of business in the State of New York. Cardinale, David Feingold ("Feingold")[1] and Michael Dazzo ("Dazzo") are the managers and members of AGM. AGM is to receive funds from the below defined Alternative Global Numbered Entities from their business activity for distribution to both the L3 Fund and AGM's members.

**JURISDICTION AND VENUE**

4. Jurisdiction over the Interpleader Defendants in the Supreme Court of the State of New York is proper pursuant to CPLR §§ 301 and 302 by virtue of their principal place of business and by engaging in purposeful and ongoing business activity in New York. Venue is also proper in this Court pursuant to CPLR § 503. Interpleader Plaintiff designates New York County as the place of trial based on Interpleader Plaintiff's residence and since a substantial part of the events or omissions giving rise to the claim occurred in New York County.

**FACTUAL BACKGROUND**

5. Beginning in or about November 2019, the L3 Fund loaned funds and/or transacted business (the "Funds") with various Alternative Global entities, including entities known as

[1] Feingold became the CEO of Broadstreet in July 2022.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Alternative Global Two, LLC, Alternative Global Four, LLC and Alternative Global Five, LLC (collectively, the "Alternative Global Numbered Entities") and which are all Delaware limited liability companies.

6. The members and managers of the Alternative Global Numbered Entities had been Cardinale (with a purported assignment of payments to RVCSI LLC, an entity owned by Cardinale), Feingold and Dazzo. On January 28, 2022, Feingold and Dazzo resigned as members and managers of the Alternative Global Numbered Entities due to various fraud and misconduct of Cardinale described in more detail below.

7. The Funds have been and are deployed among various business lines, including, but not limited to, infrastructure land development, general land development and restaurants (the "Business Lines").

8. In return for the Funds, the Alternative Global Numbered Entities are to receive certain monies generated by the Business Lines and which are required to ultimately flow through to AGM. AGM is to make sure the Funds are repaid to the L3 Fund and any excess amounts beyond amounts owed are then to be equally split among Cardinale, Feingold and Dazzo. Monies directed by AGM are to be paid to the L3 Fund **only** as directed by the unanimous consent of Cardinale, Feingold and Dazzo.

9. As described in the Florida Action, Cardinale, being the sole manager of the L3 Fund, represented to Feingold and Dazzo that he had a fiduciary duty to the L3 Fund and its investors. Further, Cardinale had a duty to disclose all fees, compensation or other monetary benefit he would receive from loaning L3 Fund's monies to entities that he was also a member of and/or in control of, and Cardinale represented to Feingold and Dazzo that he would make these and all required disclosures to his investors. However, Cardinale apparently had failed to disclose



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

to the L3 Fund investors all of the fees, compensation or other monetary benefits Cardinale received, believed to be in excess of $10,800,000, from AGM and/or in connection with the Alternative Global entities. See the First Amended Complaint in the pending Florida Federal Court action against Cardinale and others (the "Florida Action") annexed hereto as **Exhibit B**.

10. After Feingold and Dazzo's resignation, Cardinale thereafter locked Feingold and Dazzo out of AGM and seized the banks accounts, closed bank access and began to remove monies from AGM without the consent of Feingold or Dazzo and in violation of the law as neither Feingold nor Dazzo resigned from AGM. Upon information and belief, the bank accounts potentially held, at some point since Feingold and Dazzo had resigned, millions of dollars. In fact, it has been recently learned that Cardinale recently has unilaterally withdrawn approximately $300,000 from a portfolio without the required consent or approval of Feingold or Dazzo, and Cardinale is believed to be using the funds to pay either himself, his investors and/or other financial obligations without any consent from Feingold and Dazzo.

11. Also troubling is that, upon information and belief, even though Cardinale has been a fund manager spanning approximately ten investment funds as well as an owner of a Registered Investment Advisor who knows that he must give complete detail to his investors of what he earned and knows, Cardinale amazingly testified in his deposition in the Florida Action to a lack of understanding of such basic finance terms as "compensation," "fund manager," "fund advisor," "advisory," "management fee," "acquisition fee," "distribution," "supervisor," "hedge fund," "internal rate of return," "net income," and "fixed cost," and he further stated in his deposition that he could not speculate on the meaning of such terms, yet he continues to manage millions of dollars in investor funds.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

12. It is believed that over approximately the next five years, substantial sums of money will come into Interpleader Plaintiff's or its affiliates' possession, some of which should be distributed to AGM and/or the L3 Fund and ultimately to their investors or members.

13. Interpleader Plaintiff cannot, however, effect any disbursement to either the L3 Fund or AGM without being exposed to potential liability in view of: (i) the substantial evidence that Cardinale has engaged in fraudulent activity in connection with failing to maintain the books and records of the Alternative Global Numbered Entities and AGM; (ii) the substantial evidence that Cardinale has made materially false and misleading statements and omissions to his L3 Fund investors including in connection with (a) Cardinale's background, (b) Cardinale's purported successful investment history of outsized returns (12-15%), and (c) Cardinale's lack of disclosure of fees and payments received by Cardinale in connection with the L3 Fund, AGM and Alternative Global entities (over $10.8 million not properly disclosed to investors); (iii) Cardinale's shutting out Feingold and Dazzo from AGM and its bank accounts, as well as allegedly misappropriating funds from AGM; (iv) Feingold and Dazzo's pending Florida Action against Cardinale (and others) for fair value of their membership interests (among other claims) in the Alternative Global Numbered Entities as well as claims that Cardinale has converted funds of AGM; (v) complaints by L3 Fund investors about redemptions promised but not delivered by Cardinale; (vi) the gangster-like tactics employed by Cardinale and his long-time business partner against a business competitor and history of such tactics by their merchant cash advance business (Richmond Capital n/k/a RCG Advances), and (vii) upon information and belief, the L3 Fund investor complaints made to the United States Securities and Exchange Commission regarding Cardinale.

14. In addition, there are three other pending cases beyond the Florida Action directly or indirectly involving Cardinale and various Alternative Global entities in the state courts in New



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

York and Florida and in the Federal District Court in South Carolina (and one recently dismissed case in the Delaware Chancery Court). Neither Broadstreet, Broadstreet NY nor any Broadstreet entity is a party in those cases.

15. Furthermore, as mentioned above, the Florida Action is based on a pattern of misconduct and fraudulent misrepresentations by Cardinale concerning, *inter alia*¸ certain undisclosed conflicts of interest and undisclosed payout structures related to*, inter alia*, Alternative Global entities as well as significant monies that Cardinale owes to Feingold and Dazzo.

16. Recognizing the severity of the allegations contained in the operative Complaint in the Florida Action, the court in the Florida Action took the unusual, and extraordinary, step of ordering Cardinale (and all defendants there) to appear for a deposition before the plaintiffs or third parties there were required to sit for a deposition or produce documents because the court was persuaded that there existed a legitimate concern that Cardinale may tailor his testimony if the court did not depart from the standard deposition sequencing.

17. The court's understandable concern in the Florida Action was justified given the multiple, uncontradicted, and detailed affidavits in the Florida Action regarding, *inter alia*: (i) Cardinale's involvement in gangster-like tactics in an effort to intimidate a business competitor in an industry in which Cardinale competes (and potential witness in the Florida Action) at said individual's residence; (ii) Cardinale's ownership in an entity (RCG Advances, LLC) that recently stipulated to an Order with the Federal Trade Commission with a seven figure settlement involving improper, threatening merchant collection tactics; and (iii) a separate recent Federal Court finding that Cardinale's long-time business partner in RCG Advances, LLC and other businesses (who has also been an undisclosed owner with Cardinale in Cardinale's now defunct L3 registered investment advisor) civilly violated the Racketeer Influenced and Corrupt Organizations Act.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

18. Interpleader Plaintiff has commenced this interpleader action pursuant to CPLR § 1006(a) because it is or may be exposed to multiple liability as the result of adverse claims of the L3 Fund and AGM to the Funds. Thus, any distribution of Funds to L3 Fund or AGM could expose Interpleader Plaintiff to competing claims to the Funds as well as concerns that any investor or member who rightfully has a claim to monies may not receive said monies based on Cardinale's previously referenced history and misconduct and the need for court oversight to make sure that persons who should rightfully receive monies will, in fact, receive said monies.

19. Additionally, within the next few weeks, it is anticipated that some Funds may be released for some Business Lines due to monies generated from operations (the "First Funds") and which may become payable, potentially to Interpleader Defendants. As such, this interpleader is imperative and for the best interests of all parties.

20. Given the Interpleader Defendants, and potentially their members, interest holders or investors, competing claims to the First Funds and the Funds, Plaintiff cannot distribute the First Funds or future Funds and seeks to deposit the Funds with the Court under CPLR §§ 1006 and 2601.

21. Interpleader Plaintiff further respectfully requests that the Court order the Interpleader Defendants to notify all of their members and interest holders of this interpleader action so they can stake their claim to the Funds as well, which would be in the best interests of all potential claim holders.

22. Due to the pending litigations and severity of Cardinale's misconduct, and potential exposure to multiple liability as the result of adverse claims, Interpleader Plaintiff must be able to deposit the Funds with the Court over potentially the course of the next five years to insure that all monies are actually received by the appropriate claim holders.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## PRAYER FOR RELIEF

**WHEREFORE**, Interpleader Plaintiff respectfully requests that the Court enter judgment that:

(a) Interpleader Plaintiff be authorized to pay into the Court, or to a person designated by the Court, the total amount of the First Fund, less any deductions that this Court deems appropriate;

(b) Interpleader Plaintiff be authorized to pay into the Court, or to a person designated by the Court, the total amount of the future Funds, less any deductions that this Court deems appropriate;

(c) Upon such payment, Interpleader Plaintiff and its affiliates be discharged from any and all liability to any of the Interpleader Defendants, or any other individuals with respect to the First Funds and the future Funds;

(d) Interpleader Plaintiff's costs, disbursements, attorneys' fees and other expenses incurred in connection with this action be paid out of the First Funds and/or the future Funds paid to the Court, or as otherwise directed by the Court;

(e) Interpleader Defendants be required to provide notice of this action to its members, interest holders and/or investors as the case may be;

(f) Interpleader Defendants be required to assert their respective claims to the First Funds and future Funds in this action and to litigate amongst themselves their respective rights to the First Funds and future Funds and that the Court determine the Interpleader Defendants' respective rights and duties;

(g) Interpleader Plaintiff is dismissed from the action, with prejudice as to the First Funds and the future Funds, after depositing said currency into the Court, or as otherwise instructed by the Court; and

(h) For such other and further relief in favor of Interpleader Plaintiff as this Court deems just and equitable under the circumstances of this case.

Dated: Mineola, New York
January 17, 2023

Respectfully submitted,

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**

By: /s/ *Irwin Weltz*
Irwin Weltz



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Thomas Scot Wolinetz
170 Old Country Road, Suite 310
Mineola, New York 11501
Telephone: (516) 506-0561
Irwin@weltz.law
twolinetz@weltz.law

*Attorneys for Interpleader Plaintiff*
Broadstreet New York Inc.



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**VERIFICATION**

STATE OF SOUTH CAROLINA )
) ss:
COUNTY OF GREENVILLE )

Steven Baldassarra, being duly sworn, deposes and says:

I am the President of Interpleader Plaintiff Broadstreet New York Inc. I have read the foregoing Verified Interpleader Complaint and know its contents. The Verified Interpleader Complaint is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

[signature]
Steven Baldassarra

Sworn to before me on
this 17 day of January, 2023

[signature]
NOTARY PUBLIC

H. STEWART JAMES NOTARY PUBLIC SOUTH CAROLINA

Sworn to before
me this 17th day
of Jan. 2023
Bridget P. Klelie
Notary Public for SC
My Commission expires 04/15/32



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**CERTIFICATE OF CONFORMITY OF ACKNOWLEDGMENT**
**PURSUANT TO N.Y. CPLR 2309(c) AND NYS RPL § 299-a**

The undersigned does hereby certify that he is an attorney-at-law duly admitted to practice in the State of South Carolina; that he/she is a person duly qualified to make this certificate of conformity pursuant to section 299-a of the Real Property Law of the State of New York; that he/she is fully acquainted with the laws of the State of South Carolina pertaining to the acknowledgement of oaths and affidavits; that the attached Verified Interpleader Complaint with the Verification of Steven Baldassarra, named in the foregoing instrument, taken and sworn to before H. Stewart James, a notary public, on January 17, 2023, is in the manner prescribed by such laws of the State of South Carolina, being the State in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in the State of South Carolina.

________________________
Name:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.