**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH DIVISION)**

**CASE NO.: 9:26-cv-80119-ALTMAN**

-----------------------------------------------------X

ANTHONY SIRIANI et al.,

Plaintiffs,

v.

DAVID FEINGOLD et al.,

Defendants,

and

L3 CAPITAL INCOME FUND, LLC, et al.,

Nominal Defendants.

-----------------------------------------------------/

**DECLARATION OF STEVEN BALDASSARRA**

I, Steven Baldassarra, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Operating Officer of Broadstreet, Inc. ("BSI") and a managing member of Broadstreet Global Management, LLC ("BSGM"). Through BSGM, my brother Joseph and I are the Managers of the Broadstreet Global Fund, LLC ("BSGF"). I submit this declaration in opposition to Plaintiffs' Renewed Expedited Motion for a Preliminary Injunction (ECF 86). I have personal knowledge of the matters set forth herein, unless indicated otherwise. I dispute any and all allegations of wrongdoing.

2. I understand that Plaintiffs claim an interest in the following land development projects, which are owned by special purpose vehicles ("SPV"s) and managed by real estate

development companies Blackstream Development LLC and/or Contender Development, Inc. (the "Disputed Infrastructure Projects"):

a. Wexford Park – owned by Wilson Bridge Development, LLC, and located at 10 Hazelcroft Drive, Fountain Inn, South Carolina 29644;

b. Brookside Farms – owned by Gap Creek Group, LLC, and located at 3000 East Gap Creek Road, Greer, South Carolina 29651;

c. Chestnut Ridge – owned by Standing Springs Land Development, LLC, and located at 23 Silicon Drive, Greenville, South Carolina 29605;

d. Fox Creek – owned by Hyatt Street Holdings, LLC, and located at 30 Nancy Creek Road, Greer, South Carolina 29651;

e. Bridgeway-Hunts Bridge – owned by HuntsBridge Holdings, LLC, and located at Hunts Bridge Road, Fountain Inn, South Carolina, 29544;

f. Highland Colony Estates – owned by Anderson Ridge Development, LLC, and located at 202 Isleview Place, Greer, South Carolina 29651; and,

g. Lakestone – owned by Woodruff 101 Development, LLC f/k/a Woodruff 101 Land Development, LLC, and located at 901 Jubilee Trail, Woodruff, South Carolina 29388.

3. Except for Highland Colony Estates, which development has been completed, the foregoing projects continue to be developed and operated. Broadstreet entities are involved in numerous other real estate and infrastructure projects. As part of normal development and operation of infrastructure projects, lots are sold pursuant to contracts with homebuilders and lenders, as well as per the SPVs' operating agreements. These sales have been expressly authorized by United States District Judge Darrin P. Gayles: "The Fund and/or Broadstreet, Inc. is authorized

to and may cause the SPVs to sell lots to home builders in the ordinary course of business under the Monitor's supervision pursuant to the terms and conditions of the LPAs."[1] **See Exhibit A.**

4. If the SPVs were prohibited from operating their business and selling lots, they would likely default on loans and contracts with builders, and the Disputed Infrastructure Projects could be and likely would be foreclosed on. Significant harm would likely result to the builders, the lenders, the public, and everyone claiming an interest in the Disputed Infrastructure Projects—including Plaintiffs. Moreover, Plaintiffs have no ownership rights over the Disputed Infrastructure Projects, nor did they ever expect to have any ownership rights.

5. In August 2025, Broadstreet entities advised the corporate monitor of a proposed transaction involving a newly formed special purpose acquisition company ("SPAC"). This transaction was designed to allow BSGF to redeem all existing fund investors. BSGF investors were given the option to either receive SPAC stock or be redeemed for cash. The redemption notice sent to the investors was approved by the corporate monitor and not objected to by the SEC.

6. Plaintiffs' assertion that Broadstreet intends to liquidate any of the disputed projects (noted herein and in the Declaration of Josh Howard) to fund these redemptions is factually incorrect. That is not the case. On February 2, 2026, BSGF issued an update to its investors explicitly stating that the asset sales procuring cash for redemptions do not involve "projects that have been set aside due to a litigation dispute." Further, the SPAC deal involves only part of Broadstreet's infrastructure assets. The remaining assets remain in the Broadstreet portfolio and are not part of the SPAC transaction. Broadstreet intends to sell some of the remaining projects to satisfy the cash obligations of the redemption; however, these sales do not include any of the disputed projects. As Broadstreet has already set these disputed projects aside, there is no

[1] Lot purchase agreements.

"imminent threat" of liquidation that would justify the extraordinary remedy of a preliminary injunction.

7. The corporate monitor has already established protocols to ensure that profits from disputed assets flow back to the appropriate place for the benefit of investors or are held in escrow until such disputes are resolved. Indeed, in the monitor's Second Status Report, dated May 30, 2025, the corporate monitor formally recommended, among other things, that:

> i. Monitorship Entity Broadstreet Inc., as the purported 70% equity owner of the SPVs/projects, not authorize or approve any contract for sale of the SPVs/projects until I have had an opportunity to review the contract and make further recommendations, as may be necessary;
>
> ii. Given the ongoing litigation, as well as the BSG Parties' and CDI's knowledge of the contested ownership of some of the SPVs/projects slated for sale, it is my recommendation that prior to any sale of the contested SPVs/projects, either (i) the contested ownership be resolved through settlement, mediation, or judicial adjudication; or (2) there be an appropriate accounting of the contested value so that sufficient sale proceeds can be escrowed;

8. The monitor also reported that: "The Monitor is pleased to report that the Monitorship Entities responded immediately by adopting all of the Monitor's recommendations." As such, there is no risk that requires the extraordinary relief being requested here.

9. Additionally, in their moving papers, Plaintiffs' counsel makes numerous false and misleading statements. For example, Plaintiffs' state that: "*the Monitor informed Broadstreet that it could not sell these infrastructure projects without putting at least $17 million in escrow to address the pending litigation over these assets*". This is false. The parties as part of a potential mediation were discussing an amount Broadstreet could put in escrow <u>with the monitor</u> as a show of good faith to participate in a mediation. No independent escrow account was going to be opened for this. However, that never occurred and the mediation was conducted to impasse.

10. Additionally, Broadstreet is a major player in the housing economy of the Carolinas. The far-reaching effects of an asset freeze would likely be harmful to the Carolinas (i.e.,

job losses, housing shortage, etc.). A freeze on these disputed projects would not only be unnecessary given the disputed assets have already been "set aside", but it would also likely impede our ability to complete the redemption of our own investors by the May 27, 2026 deadline due to the harm it would likely cause the non-disputed assets and overall disruption to business caused by an asset freeze. An asset freeze would also likely disrupt pending negotiations with third-party purchasers and create a false perception of financial distress, potentially forcing "fire sales" that would ultimately harm all stakeholders.

11. Plaintiffs' allegations and claims of "theft" or "hijacking" of assets are completely untrue and ignore the documented contractual history of these projects. Further, these allegations are causing extreme harm and damage to Broadstreet and the Disputed Infrastructure Projects.

12. On November 11, 2021, a Termination of Partnership Agreement was executed between Alternative Global Management LLC ("AGM") and BSGM (executed by me on behalf of BSGM). **See Exhibit B**. Under this agreement, the venture known as "Alternative Global Partners" was terminated, and its prior business dealings and assets were transferred to BSGM. Prior to this most recent filing, Cardinale did not dispute the validity of the agreement. Cardinale seemingly now disputes the validity of this agreement. As he has done in the past on numerous occasions, he changes his story to fit whatever narrative he is trying to put forth at that time. This agreement established that AGM (the "First Party") was no longer a partner but a creditor entitled to a guaranteed return of its initial capital plus a 40% return. Many of the projects Plaintiffs now claim were "stolen" are specifically listed in this 2021 agreement as assets whose management and decision-making rights were vested in Broadstreet.

13. It is my understanding that none of the Plaintiffs actually invested any money in the infrastructure projects. In fact, it is my understanding that they invested in the L3 Capital

Income Fund and were only promised by Cardinale a return and no share of any profits. It is my further understanding that the L3 Capital Income Fund only loaned money to various Alternative Global named entities and never put one penny directly into any of the Disputed Infrastructure Projects. **See Exhibit C.**

14. The additional disputed assets include four hotel projects, two Culver's restaurants, and two "Gaffney" parcels. I understand that Plaintiffs are claiming rights to monies that come from the operations of these projects. However, there is a dispute over how much money, if any, they are entitled to due to Cardinale's breaches, wrongful conduct, and abandonment of the projects. Cardinale disappeared on these projects years ago and let others complete them. Indeed, in regard to the hotels, myself, my brother, Ford Elliot, and Josh Howard have had to execute three levels of personal guarantees to proceed: (1) performance guarantees; (2) completion guarantees; and (3) debt guarantees, none of which Cardinale or any Plaintiff signed. We are far more at risk than anyone else. Additionally, significant time, effort, and resources have been put into these projects without Cardinale. Also, Michael Dazzo and myself had to execute personal performance and debt guarantees for the Culver's restaurants, which neither Cardinale nor his investors ever signed.

15. As set forth in the Declaration of Joshua Howard, dated April 20, 2026, if any of these assets were frozen, it would likely result in defaults, closures, job losses, foreclosures, and harm to the local economy and anyone claiming a benefit, including Plaintiff. If at any time there comes a point where there is an equity distribution from any of the disputed projects to Broadstreet, Broadstreet will escrow those funds, if any, until the dispute is resolved.

16. I also believe it is critical to make the Court aware of the history between the parties. Broadstreet previously offered to take over the L3 funds—before Cardinale could dissipate the

remaining investor value—and guaranteed that investors would receive a 100% return of their principal. Cardinale rejected this offer, choosing instead to continue enriching himself. Furthermore, Broadstreet attempted to interplead funds in a New York action specifically to distribute money to the investors. Cardinale and L3 opposed that action as well. We took these proactive steps despite having no privity or relationship with L3 or its investors. Now, four years later, Plaintiffs bring this motion in bad faith. In a transparent attempt to derail a multi-billion-dollar transaction that does not even involve the Disputed Infrastructure Projects, they are attempting to weaponize the extraordinary remedy of a preliminary injunction as leverage for extortion.

## CONCLUSION

17. For the reasons stated in our submissions, I respectfully request that Plaintiffs' Renewed motion be denied in the entirety,

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of April 2026 in ____________________________.

______________________________
STEVEN BALDASSARRA