# Exhibit 1

# *Siriani v. Feingold*

United States District Court for the Southern District of Florida

May 2, 2026, Decided; May 4, 2026, Entered on Docket

CASE NO. 26-cv-80119-ALTMAN

**Reporter**
2026 U.S. Dist. LEXIS 146440 *; 2026 LX 311710; 2026 WL 1805206

ANTHONY SIRIANI, et al., Plaintiffs, v. DAVID FEINGOLD, et al., Defendants.

**Subsequent History:** Stay granted by, Without prejudice *Siriani v. Feingold, 2026 U.S. Dist. LEXIS 146461 (May 2, 2026)*

**Counsel:** **[*1]** For Ameritech Global Ventures LLC, DZ Squared LLC, Michael Dazzo, Defendants: Lorne Ethan Berkeley, Berkeley Law PA, Cooper City, FL.

For Anthony Siriani, Dr. Robert Simon, Dr. Vincent Lanteri, Dr. Gregory Lovallo, Grace Ciccone, as Executrix of the Estate of Dr. Patrick Ciccone, Joseph Antonakos, Lori Siriani, on behalf of themselves individually and all other similarly situated and derivatively on behalf of the L3 CAPITAL INCOME FUND LLC a Delaware limited liability company (formerly ASHEVILLE INVESTEMENT I LLC and RALEIGH INVESTMENT I LLC), Kate Fauntleroy, Perry Harris, Leroy Howe, William Joseph Moroney, as Trustee of the WJM Trust, Richard Kramer, Plaintiffs: Andrew Michael Greenidge, Epperson & Greenidge PA, Media, PA.

For BB-BCH LLC, Blackstream Development LLC, CONTENDER DEVELOPMENT LLC, Defendants: Konstantine P. Diamaduros, Andrew A. Mathias, PRO HAC VICE, Maynard Nexsen PC, Greenville, SC; Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL; Nicolas T. Burnosky, LEAD ATTORNEY, Maynard Nexsen PC, Winter Park, FL.

For BEAR CREEK HOLDINGS LLC, BB-CHM LLM, CARRINGTON MILL HOLDINGS LLC, Defendants: Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL; Nicolas T. Burnosky, LEAD ATTORNEY, **[*2]** Maynard Nexsen PC, Winter Park, FL; Andrew A. Mathias, Konstantine P. Diamaduros, PRO HAC VICE, Maynard Nexsen PC, Greenville, SC.

For Broad Street Global Management LLC, Defendant: Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY; Michaela N. Weaver, Ioannis G. Conits, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY.

For Broadstreet Global Fund LLC, Joseph Baldassarra, Defendants: Michaela N. Weaver, Ioannis G. Conits, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY.

For Broadstreet Global Holdings LLC, Davick Capital LLC, David Feingold, Defendants: Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY; Ioannis G. Conits, Michaela N. Weaver, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY.

For Broad Street Inc., Defendant: **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, **[*3]** Carle Place, NY; Ioannis G. Conits, Michaela N. Weaver, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY.

For Carlos Salgado, CRESCENT BEACH HOLDINGS LLC, Defendants: Nicolas T. Burnosky, LEAD ATTORNEY, Maynard Nexsen PC, Winter Park, FL; Andrew A. Mathias, Konstantine P. Diamaduros, PRO HAC VICE, Maynard Nexsen PC, Greenville, SC; Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL.

For Broadstreet New York Inc., Defendant: Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY; Ioannis G. Conits, Michaela N. Weaver, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC.

For Debt Consulting Group II LLC, Debt Consulting Group LLC, Defendants: Brianna Paige Hathaway, Lomax Legal, Coral Gables, FL.

For E Consulting Global Group LLC, FEINGOLD MORGAN SANCHEZ LLC, Feingold LLC, JDS Partners, Steven Baldassarra, Defendants: Ioannis G. Conits, Michaela N. Weaver, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY; **[*4]** Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY.

For Daniel Amaniera, Todd Sanders, Defendants: Adrian Jorge Alvarez, De Biase Alvarez, Boca Raton, FL; Danielle Cohen, PRO HAC VICE, Tesser & Cohen P.C., Hackensack, NJ.

For FORD ELLIOTT, Defendant: Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL; Andrew A. Mathias, Konstantine P. Diamaduros, PRO HAC VICE, Maynard Nexsen PC, Greenville, SC; Nicolas T. Burnosky, LEAD ATTORNEY, Maynard Nexsen PC, Winter Park, FL.

For HYATT STREET HOLDINGS LLC, Defendant: Andrew Benjamin Boese, Leon Cosgrove LLC, Coral Gables, FL; Brittany Leigh Finnegan, Leon Cosgrove LLP, Miami, FL; Marcos Daniel Jimenez, LEAD ATTORNEY, Leon Cosgrove Jimenez LLP, Miami, FL.

For Josh Howard, Defendant: Nicolas T. Burnosky, LEAD ATTORNEY, Maynard Nexsen PC, Winter Park, FL; Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL.

For David Knox, Plaintiff: Andrew Michael Greenidge, LEAD ATTORNEY, Epperson & Greenidge PA, Media, PA.

For L3 CAPITAL ADVISORS LLC, Richard Cardinale, Defendants: Avi Benayoun, LEAD ATTORNEY, Zachary Ryan Needell, Greenberg Traurig, Fort Lauderdale, FL; Jared Edward Dwyer, Dwyer Law P.A., Miami, FL; Toby S. Soli, PRO HAC VICE, **[*5]** Greenberg Traurig, White Plains, NY.

For L3 CAPITAL HOTEL FUND LLC, Raleigh Investment I LLC, L3 CAPITAL HOTEL FUND LLC, Asheville Investment I LLC, Defendants: Avi Benayoun, Greenberg Traurig, Fort Lauderdale, FL; Ryan K. Stumphauzer, Timothy Andrew Kolaya, Stumphauzer Kolaya Nadler & Sloman PLLC, Miami, FL.

For L3 CAPITAL INCOME FUND LLC, a Delaware limited liability company, L3 CAPITAL HOTEL FUND LLC, formerly known as, Defendants: Avi Benayoun, Greenberg Traurig, Fort Lauderdale, FL; Timothy Andrew Kolaya, Ryan K. Stumphauzer, Stumphauzer Kolaya Nadler & Sloman PLLC, Miami, FL.

For L3 Capital Management LLC, Defendant: Jared Edward Dwyer, Dwyer Law P.A., Miami, FL; Toby S. Soli, PRO HAC VICE, Greenberg Traurig, White Plains, NY; Avi Benayoun, LEAD ATTORNEY, Zachary Ryan Needell, Greenberg Traurig, Fort Lauderdale, FL.

For L3 CAPITAL HOTEL FUND LLC, a Delaware limited liability company, Defendant: Ryan K. Stumphauzer, Timothy Andrew Kolaya, Stumphauzer Kolaya Nadler & Sloman PLLC, Miami, FL; Avi Benayoun, Greenberg Traurig, Fort Lauderdale, FL.

For Ormond Beach Holdings LLC, Defendant: Konstantine P. Diamaduros, Andrew A. Mathias, PRO HAC VICE, Maynard Nexsen PC, Greenville, SC; Nicolas **[*6]** T. Burnosky, LEAD ATTORNEY, Maynard Nexsen PC, Winter Park, FL; Jeannine Cline Jacobson, Maynard Nexsen, Miami, FL.

For L3 CAPITAL SPECIAL OPPORTUNITY FUND LLC, a Delaware series limited liability company, Defendant: Timothy Andrew Kolaya, Ryan K. Stumphauzer, Stumphauzer Kolaya Nadler & Sloman PLLC, Miami, FL; Avi Benayoun, Greenberg Traurig, Fort Lauderdale, FL.

For RVCSI LLC, Defendant: Avi Benayoun, LEAD ATTORNEY, Zachary Ryan Needell, Greenberg Traurig, Fort Lauderdale, FL; Toby S. Soli, PRO HAC VICE, Greenberg Traurig, White Plains, NY; Jared Edward Dwyer, Dwyer Law P.A., Miami, FL.

For MCA Venture I LLC, Defendant: Ioannis G. Conits, Michaela N. Weaver, PRO HAC VICE, Gallivan White & Boyd P.A., Greenville, SC; Thomas Scot Wolinetz, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Mineola, NY; **Irwin Weltz**, PRO HAC VICE, Weltz Kakos Gerbi Wolinetz Volynsky LLP, Carle Place, NY.

**Judges:** ROY K. ALTMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROY K. ALTMAN

## Opinion

**ORDER DENYING EXPEDITED MOTION FOR PRELIMINARY INJUNCTION**

Our Plaintiffs have filed an Expedited Motion for Preliminary Injunction (the "Motion") [ECF No. 86], seeking to prevent several of our Defendants—whom they refer to as the "Broadstream and Blackstream **[*7]** Defendants"—from selling various "disputed" assets.[1] The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to Motion (the "Response") [ECF No. 97]; Reply in Support of Motion (the "Reply") [ECF No. 101].[2] After careful review, we **DENY** the Motion.[3]

**BACKGROUND**

Our Plaintiffs are individuals who invested in three funds: "(i) L3 Capital Income Fund, LLC; (ii) L3 Capital Hotel Fund, LLC; and (iii) L3 Special Opportunity Fund, LLC" (collectively, the "L3 Funds"). Motion at 5 n.2.[4] According to the Plaintiffs, their investments in the L3 Funds were used to purchase stakes in the "Disputed Assets." *Id.* at 5.

---

[1] According to the Plaintiffs, the Broadstream and Blackstream Defendants are: David Feingold; Feingold Morgan Sanchez, LLC; Michael Dazzo; Joseph Baldassarra; Steven Baldassarra; Broad Street Global Management, LLC; Broadstreet, Inc.; Bear Creek Holdings, LLC; Carrington Mill Holdings, LLC; BB-BCH, LLC; BB-CHM, LLM; Crescent Beach Holdings, LLC; Ormond Beach Holdings, LLC; Hyatt Street Holdings, LLC; Blackstream Development, LLC; Ford Elliott; Josh Howard; Carlos Salgado; and Contender Development, Inc. For purposes of this Order, we'll refer to these parties as the "Defendants."

[2] We allowed the "Cardinale Defendants" to file a separate response to the Motion, *see* Cardinale Defendants' Response to the Motion ("Cardinale Response") [ECF No. 95], to which the Plaintiffs have now replied, *see* Reply to Cardinale Response [ECF No. 102].

[3] The Plaintiffs asked that we adjudicate the Motion by "April 27, 2026." Motion at 25. To accommodate the Plaintiffs' request, we've expedited our ruling on this Motion and, consequently, limited our analysis to the dispositive issues we address below.

[4] The Plaintiffs also purport to seek injunctive relief "derivatively on behalf of the L3 Funds." Motion at 5. But they haven't sufficiently explained *why* they should be allowed to do so. As the Cardinale Defendants observe, the "Plaintiffs did not make a demand on the L3 Funds that was rejected, nor have they made any showing that making such a demand would be futile." Cardinale Response at 2. While the Complaint argues that the Plaintiffs' "lack of pre-suit demand upon the manager of the L3 Funds, controlled by Richard Cardinale" should be "excused because this action implicates Richard Cardinale's own wrongdoing," the Plaintiffs don't explain with the requisite particularity *why* it would be futile to demand that the L3 Funds file a direct action seeking the Plaintiffs' desired injunctive relief. *See* De. R. Ch. Ct. 23.1 (describing the pleading requirements for derivative claims). In fact, the Plaintiffs concede that the "L3 Funds and their manager all agree with the [requested injunctive] relief," suggesting that such a demand *wouldn't* be futile. Reply to Cardinale Response at 2. Perhaps recognizing the potential inadequacy of their standing to seek injunctive relief derivatively, the Plaintiffs claim that, "whether Plaintiffs properly filed their Motion derivatively on behalf of the L3 Funds is not a concern at this stage[.]" *Ibid.* We disagree. The Plaintiffs haven't carried their burden of showing that they're likely to succeed on their derivative claim, given the procedural concerns raised by the Cardinale Defendants, so we'll address only the Plaintiffs' direct claims in this Order.

These Disputed Assets are "hotels, land infrastructure, restaurants, and land outparcel assets[.]" *Id.* at 6. Critically, each of the disputed assets is a parcel of "real property." Exhibit A [ECF No. 86-1] (listing the Disputed Assets).

The Plaintiffs allege that, through an ongoing conspiracy "mastermind [*sic*] by Defendant David Feingold," the Disputed Assets "are now improperly under the control of the Broadstream and Blackstream Defendants." Motion at 5. The Plaintiffs fear that the Defendants may sell the Disputed Assets before May 27, **[*8]** 2026, so that they can "make good on unrelated payments to Broadstreet investors[.]" *Ibid.*; *see also ibid.* ("[T]he Broadstreet and Blackstream Defendants have announced they are negotiating sales of entire projects and businesses lines because they need to raise approximately $130 million by no later than May 27, 2026, to complete the cash portion of a redemption transaction with Broadstreet investors."). This potential sale, the Plaintiffs say, would deprive them of their ability to obtain the relief they seek in their conversion claim—specifically, the "return to the L3 Funds of their ownership interests in specific real property and operating businesses that they own and that were wrongfully converted by the Broadstreet and Blackstream Defendants." *Id.* at 7; *see also id.* at 16 (claiming that the Plaintiffs' conversion claim seeks "more than just money, it also seeks the underlying assets held in the investments which include the hotels, restaurants, and land infrastructure businesses").

**THE LAW**

"A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable **[*9]** injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga., 978 F.3d 1266, 1270-71 (11th Cir. 2020)* (footnote omitted). A showing of irreparable injury is "the sine qua non of injunctive relief" and most important of the four factors. *Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)* (en banc) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, 826 F.2d 1283, 1285 (11th Cir. 1990)*). To satisfy this standard, the "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)*. Still, a district court cannot grant a preliminary injunction unless the moving party satisfies *all four* of the requirements. See *Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016)* ("Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms [his request]."). The Plaintiffs bear the burden of establishing their need for a preliminary injunction. *See ibid.* ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." (cleaned up)).

**ANALYSIS**

The Plaintiffs are in a bind. Their request for injunctive relief is based on their conversion claim. **[*10]** *See* Motion at 15 ("Plaintiffs' conversion claim may serve as the basis for injunctive relief and there is substantial likelihood of success on Plaintiffs' conversion claim relating to the hotels, restaurants, and land infrastructure projects converted by the Broadstreet and Blackstream Defendants."). But their conversion claim (as described in the Complaint [ECF No. 1]) seeks the return of allegedly converted funds—a purely economic loss that can't support a request for injunctive relief. To evade this bar on their request, the Plaintiffs argue that their conversion claim *actually* seeks the return of the Disputed Assets—parcels of real property. But, as we'll explain below, real property can't be the subject of a conversion claim. Because the Plaintiffs' request for injunctive relief fails under both theories, we **DENY** their Motion.

It's "axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Noble Prestige Ltd. v. Galle, 83 F.4th 1366, 1382 (11th Cir. 2023)* (quoting *Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 (11th Cir. 1994)*). Put another way, a purely monetary loss doesn't ordinarily constitute irreparable harm such that injunctive

relief is warranted. *See* ***[*11]*** *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Ltd. Liab. Co., 425 F.3d 964, 970 (11th Cir. 2005)* ("[E]conomic losses alone do not justify a preliminary injunction.").

Here, the Plaintiffs invested capital into fund vehicles managed by third parties, expecting a financial return. Their conversion claim is based entirely on the Defendants' alleged misappropriation of that capital. *See, e.g.*, Complaint ¶ 343 ("The Defendants have exercised unlawful, tortious, and unjustified dominion and/or control over millions of dollars belonging to the L3 Investors, which were invested in the L3 Funds"); *id.* ¶ 356 ("Plaintiffs have discovered that Feingold, Dazzo, Sanders, Amaniera and Cardinale siphoned away at least $24.6 million to bank accounts controlled by them without the L3 Investors' knowledge or permission."). Because the Plaintiffs can recover monetary damages to remedy this alleged harm, injunctive relief is unavailable to them.

Attempting to overcome this well-established bar on injunctive relief, the Plaintiffs shift their focus away from their allegedly misappropriated capital and to the Disputed Assets. As the Plaintiffs see it, the Defendants converted the Disputed Assets—*i.e.*, parcels of real (and *unique*) property purchased with the Plaintiffs' investment funds. *See* Motion at **[*12]** 21 ("All the converted assets that Plaintiffs seek to freeze involve real property."). And, according to the Plaintiffs, "[i]t is well settled that money damages are an inadequate remedy at law in actions involving real property disputes because land is considered unique." *Id. at 20* (cleaned up). Their argument fails for two reasons.

*First*, the Plaintiffs can't use the Motion to rewrite the Complaint. Their conversion claim, as described in the Complaint, is silent as to the Disputed Assets—only discussing the alleged conversion of the Plaintiffs' funds and their attendant loss of investment income. *See* Complaint ¶¶ 342-352. The Plaintiffs insist that their references to "investments" in the Complaint cover these assets, *see* Motion at 15-16 (emphasizing the word "investments" in quotes from the Complaint), but a fulsome reading of the conversion claim makes clear that the Plaintiffs seek compensation for investment principal and income lost as a result of the Defendants' alleged conversion. *See, e.g., id.* ¶ 343 ("The Defendants have exercised unlawful, tortious, and unjustified dominion and/or control over millions of dollars belonging to the L3 Investors, which were invested in the L3 Funds[.]"); **[*13]** *id.* ¶ 346 ("Plaintiffs have discovered that Feingold, Dazzo, Sanders, Amaniera and Cardinale siphoned away at least $24.6 million to bank accounts controlled by them without the L3 Investors' knowledge or permission."); *id.* ¶ 347 ("Afterwards, Feingold and Dazzo directed the L3 Funds' and L3 Investors' investments to be transferred to the Broadstreet without their knowledge or permission and actively blocked the L3 Funds and L3 Investors from receiving a return on their investments[.]"); *id.* ¶ 352 ("The L3 Funds and the L3 Investors have been damaged as a proximate and direct result of *Defendants' conversion of Plaintiffs and other Class members' respective contributions to the L3 Funds*. The L3 Investors have been deprived of the reasonable rates of return that they otherwise would have earned." (emphasis added)).[5] Indeed, the Plaintiffs' conversion claim includes a prayer for relief that seeks "all damages," but is otherwise silent as to the return of any specific assets.

*Second*, the Plaintiffs' argument that "[a]ll of the converted assets that Plaintiffs seek to freeze involve real property" is self-defeating. Motion at 21. If it were true that the Plaintiffs' claim was for **[*14]** the alleged conversion of unique real property, that claim would be facially invalid because "real property cannot be the subject of conversion" under Florida law. *Am. Intern. Land Corp. v. Hanna, 323 So.2d 567, 569 (1975)* (citing *Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 So. 840 (1912)*); *see also Philips v. Klempner*, 2010 WL 11505153, at *7 (S.D. Fla. Jan. 20, 2010) (Lenard, J.) ("Under Florida law, real property cannot be the subject of conversion. Instead, conversion exists where there is a taking of chattels with intent to exercise over them an ownership inconsistent with the real owner's right of possession." (cleaned up)). This real-property bar on conversion claims applies to both legal and

[5] The Plaintiffs' conversion claim discusses "Converted Properties," but this term isn't defined to include the Disputed Assets (or any real property). In fact, it's not clear how the Plaintiffs define the term. *See* Complaint ¶ 347 ("Afterwards, Feingold and Dazzo with assistance of Elliott, Howard and Salgado directed the L3 Funds' and L3 Investors' investments to be transferred to the Broadstreet and/or the Blackstream Entities without their knowledge or permission and actively blocked the L3 Funds and L3 Investors from receiving a return on their investments ('Converted Properties')."). As best we can tell, the term Converted Properties aims to describe "the L3 Funds' and L3 Investors' investments" but doesn't cover (or even reference) any of the Disputed Assets. *Ibid.*

equitable interests in real property. *See* U.S. ex rel. Crenshaw v. Degayner, 622 F. Supp. 2d 1258, 1280 (M.D. Fla. 2008) (Fawsett, C.J.) ("Even if Crenshaw's property interests were construed as 'equitable,' they would still be equitable interests in real property, which cannot be the subject of an action for conversion." (emphasis original)).[6]

Recognizing the flaw they've inserted into their own argument, the Plaintiffs contend in reply that "[n]o where [*sic*] in Plaintiffs [*sic*] conversion claim does it say that it is seeking to recover 'real property.' . . . While the investments the Non-L3 Defendants stole are tied to real property, which makes them unique. They are more than just real property. The Non-L3 Defendants stole the investments in **[*15]** the SPVs that own the real property and the businesses operating on that land." Reply at 8. This statement is both accurate and absurd. It's accurate insofar as the Plaintiffs' conversion claim says nothing about the conversion or return of any real property. But it's also absurd: The premise of the Motion is that money damages are inadequate because the Plaintiffs seek the return of their "ownership rights to *specific real property* and operating businesses in specific locations." Motion at 7. (emphasis added). And the Plaintiffs' own exhibit identifies *every one* of the Disputed Assets as a parcel of "real property"—not business interests or anything else. *See generally* Exhibit A.

* * *

At every turn, the Plaintiffs contradict themselves and confuse the issues. Their original conversion claim speaks exclusively in terms of monetary damages and remedies. Since economic losses aren't sufficient to warrant injunctive relief, the Plaintiffs attempt to transform their conversion claim into a claim for the return of real property. Faced with the reality that real property can't form the basis of a conversion claim, however, the Plaintiffs again try convincing us that they *actually* seek the **[*16]** return of "business interests"—not real property. We won't indulge this clumsy sleight of hand. The Plaintiffs' alleged harm can be remedied by monetary damages, so injunctive relief is unavailable. The Motion is therefore **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on May 2, 2026.

/s/ Roy K. Altman

**ROY K. ALTMAN**

**UNITED STATES DISTRICT JUDGE**

---

End of Document

[6] The Plaintiffs also fail to show that they're likely to succeed on a non-monetary conversion claim. "Under Florida law, a plaintiff in an action for conversion [ ] must establish possession or an immediate right to possession of the converted property at the time of the conversion." *Bailey*, 419 F.3d at 1212. Here, the Plaintiffs never explain how they have a "right to possess" the real property the L3 Funds invested in. Instead, they cite irrelevant cases for the proposition that "conversion can serve as the basis for a preliminary injunction where something other than just money has been converted." Motion at 15. But none of those cases involved the "conversion" of real property or equity investments. *See* Motion at 15 (citing cases involving "cryptocurrency," "domain names," "books and records," and "gold rings").