# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-cv-20375-ALTMAN/Reid

DAVID FEINGOLD, MICHAEL DAZZO,
& BLACKSTREAM DEVELOPMENT, LLC,
*a South Carolina limited liability company*,
DURHAM HOMES USA, LLC,

Plaintiffs,

v.

RICHARD CARDINALE, VANIA CARDINALE,
RVCNY, LLC, RVCSI, LLC, SOUTHERN FIRST
BANCSHARES, INC. d/b/a/ SOUTHERN FIRST BANK,

Defendants.
_____________________________________/

**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM BLACKSTREAM AND BLACKSTREAM'S MOTION FOR PROTECTIVE ORDER**

**THIS CAUSE** comes before the Court on Plaintiff Alternative Global Two, LLC ("AG Two") filed before the Court its Motion to Compel Discovery from Defendant Blackstream Development, LLC ("Blackstream") and Blackstream's Motion for Protective Order as to Discovery, or in the Alternative, to Set Evidentiary Hearing. [ECF No. 220]. Having reviewed AG Two's argument, the record, and Blackstream's Response [ECF No. 223], the Motion to Compel is **DENIED** and Blackstream's Motion for Protective Order [ECF No. 224] is hereby **GRANTED**.

## I. BACKGROUND

(a) *The Original Litigation.*

This lawsuit began in this Court between six parties. *See generally* [ECF No. 102]. Plaintiffs David Feingold, Michael Dazzo sued Defendants Richard Cardinale, Vania Cardinale, and two limited liability companies owned by Richard Cardinale, RVCNY, LLC and RVCSI, LLC.

[*Id.* ¶¶ 2–7]. According to the Second Amended Complaint, Feingold, Dazzo, and Defendant Richard Cardinale ("Cardinale") agreed that Cardinale would lend money to Feingold and Dazzo's business entities on an unsecured basis. [*Id.* ¶¶ 11–12]. Cardinale represented to Feingold and Dazzo that he would raise the funds through his investment company, L3 Capital Income. [*Id.* ¶ 14]. The parties agreed that, in exchange, Cardinale would be "an equal equity owner" in any borrowing business entity and could earn money from any monies generated from the borrowing business entities. [*Id.* ¶ 16]. These business entities eventually became Alternative Global One LLC (specializing in the merchant cash advance industry), Alternative Global Two LLC (seeking opportunities in infrastructure and real estate development), Alternative Global Three LLC (focusing on the debt-settlement industry), Alternative Global Four LLC (developing real estate), Alternative Global Five LLC (investing in the fast-food industry), and last, Alternative Global Six LLC (specializing in home building). [*Id.* ¶ 16]. The six special purpose investment funds became collectively known as Alternative Global ("AG") Companies. [*Id.* ¶ 11].

According to Plaintiffs, Cardinale agreed to maintain the books and records of these companies but failed to do so. [*Id.*]. Plaintiffs and Cardinale also agreed that Cardinale would provide "complete back-office services" for the Alternative Global Companies. [*Id.* ¶ 18]. Cardinale was permitted to bill these services as administrative expenses. [*Id.*]. Cardinale could also transfer the funds from his hedge fund, L3 Capital Income Fund, LLC to AG Two, Four, & Five and, in turn, those entities would invest in various development projects. [ECF No. 224 at 3]; *see also* [ECF No. 47 at 2].

Cardinale's L3 Capital Fund lent funds to AG Two and Four for investment in residential subdivision infrastructure and lot development projects. [ECF No. 224 at 3] (citing ECF No. 102 ¶ 16]). According to the Second Amended Complaint, Cardinale agreed to disclose to investors in

his L3Capital Fund his interest in the Alternative Global Companies. [ECF No. 102 ¶ 16]. Cardinale also billed the Alternative Global Companies more than $1.3 million dollars over the course of two years. [*Id.* ¶ 27]. Plaintiffs allege they paid these amounts believing they were paying Cardinale for administrative expenses, including bookkeeping and reporting services for the Alternative Global Companies. [*Id.*].

Plaintiffs allege they withdrew from the Alternative Global Companies in January 2022 and demanded the fair value of their membership interests from Cardinale. [*Id.* ¶ 1]. They claim Cardinale failed to properly disclose his interest in the Alternative Global Companies to L3 Capital Fund investors and failed to handle the administrative services for the Alternative Global Companies as agreed. They sued Cardinale for breach of fiduciary duty, conversion, fraudulent misrepresentation, and conspiracy to commit fraud seek payment of their interest in the companies and damages. [*Id.* at 26–38].

In August 2022, Cardinale issued a subpoena to the South Carolina-based real estate brokerage firm Blackstream ("Cardinale's Subpoena to Blackstream") in this case and Blackstream moved to quash the same. *See* [ECF No. 145] (Cardinale's Subpoena to Blackstream attached and incorporated by reference as Exhibit 8; Blackstream's Motion to Quash). After briefing and argument on the issue, the Court quashed the subpoena on November 1, 2023. [ECF No. 168 at 14]. Following a discovery hearing between the parties on May 1, 2024, the Court found, *inter alia*, that Cardinale failed to establish a *direct relationship* between himself and Blackstream that would warrant Blackstream disclosing its financials. [*Id.* at 14]. Indeed, "the real member of the SPVs, Blackstream LLC argue[d], is the entity to which the Alternative Global entities made their loans— Alternative Global Partners ("AG"). [*Id.* 12]. The Court also held that Cardinale also had access to most documents and routinely received information about the South

Carolina investments. [*Id.* at 11]. Cardinale, however, could not show he had any right to income from Blackstream and, thus, had no right to disclosure of its financials.

(b) *South Carolina Litigation.*

While the subpoena to Blackstream was pending in the original case, on December 2022, Cardinale, as the sole remaining member of AG Two, Four, and Five, sued Blackstream in the United States District Court for the District South Carolina for Breach of Fiduciary Duty (Count I) and an Accounting (Count II). [ECF No. 220 at 2]. He alleged in the Complaint that in 2020 the AG Companies and Blackstream agreed to a "joint venture" to provide investment capital for Blackstream and that the joint venture agreement supports his entitlement to an accounting regarding the funds AG Two invested in projects through Blackstream. [*Id.* at 3]. He claimed Blackstream instructed the AGs to wire funds to the "Project Account," and Blackstream would then "transfer the funds to the various entity bank accounts to cover expenditures." [*Id.*].

According to Cardinale, the investment capital lent to Blackstream funded seven real estate projects owned by special purpose vehicles ("SPVs") and two restaurant investments in Culver's fast-food restaurants, in which the AGs received ownership interests. [ECF No. 156 at 2]. Blackstream, essentially, is a conduit through the SPVs for Alternative Global Companies' investments in certain businesses. [ECF No. 168 at 11]. He alleged that "between May 8, 2020, and January 26, 2022, AG2, AG4, and AG5 funded at least $17,561,300 in wire transfers to Blackstream's Project Account. Those investments, in turn, funded the Blackstream SPV's." [ECF No. 156 at 4].

AG Two propounded requests for production of documents and interrogatories to Blackstream seeking financial information from Blackstream. AG Two then filed four motions to compel before the South Carolina district court, seeking financial information from Blackstream

and information concerning its funding members. *See, e.g.* [ECF Nos. 50, 56, 57, 58]. AG Two continued serving Blackstream interrogatories and requests for production in South Carolina, requesting the same financial information from Blackstream and information concerning its funding members. [ECF No. 223 at 5]. Around the same time as the transfer, Cardinale, acting on behalf of AG Two, tried to subpoena Blackstream as a third party in this district, which this Court denied and granted Blackstream's motion to quash instead. [ECF No. 168 at 17].

(c) *The Discovery Motion.*

In July 2024, the South Carolina case was consolidated with the ongoing litigation before this Court. *Alternative Glob. Two LLC v. Blackstream Dev. LLC*, 24-cv-21147 (S.D. Fla., Mar 30, 2024), [ECF No. 70]. AG Two has now moved this Court to compel responses to essentially the same requests for production and interrogatories against Blackstream. [ECF No. 220]. Cardinale, through AG Two again alleges that AG Two and Blackstream are in a joint venture. As support for the claim that a joint venture exists, he cites only to the paragraph in his South Carolina Complaint in which he asserted its existence. [*Id*. at 2].

Nonetheless, Cardinale served more requests for production and sets of interrogatories to Blackstream relating to financial documents and business agreements from the South Carolina litigation. *See, e.g.*, [ECF No. 220-4] (AG's First Request for Production to Defendant); [ECF No. 220-5] (AG's Second Request for Production to Defendant); [ECF No. 220-6] (AG's First Set of Interrogatories to Defendant). These requests include Blackstream producing bank account statements related to funding, operating agreements for the SPVs, financial statements and tax returns, and documents substantiating monetary sources for the SPV projects. [ECF No. 220-4 at 11–20]. AG Two also requests operating agreements and ownership interests under Federal Rule of Civil Procedure 26(f). [ECF No. 220-5]. AG Two's interrogatories ask, in part, whether

Blackstream received $17,561,300 from AG Two, whether there was verbal communication between Blackstream and Feingold concerning investment funding, and to identify which Blackstream employees directed or transferred the funds to Southern First Bank. [ECF No. 220-6 at 11–12].

Cardinale accuses Blackstream of stonewalling these requests with "boilerplate, formulaic objections and refus[ing] to produce a single document or substantively answer a single [i]nterrogatory." [ECF No. 220 at 4]. As a result, AG Two filed this Motion to Compel Blackstream to respond to all its discovery requests.

(d) *Blackstream's Objections and Motion for Protective Order.*

Blackstream rejects AG Two's claims of any binding legal relationship between the Parties that requires it to disclose its finances to AG Two. Blackstream argues Cardinale is circumventing two failed attempts seeking the same previously sought information. [ECF No. 223 at 1]. Blackstream contends—and AG Two agrees—that the "right to an accounting can only be derived from a fiduciary duty, which cannot exist without the joint venture agreement alleged in [AG Two's] Complaint." [*Id.* at 1–2] (citing [ECF No. 223-4 ¶¶ 11, 24–30]); *see also* ECF No. 223 at 16] ("[Cardinale] concedes the right to an accounting can only be derived from a fiduciary duty, which cannot exist without the joint venture agreement alleged in Plaintiffs' Complaint.") (citing [ECF No. 168 at 12]). Blackstream also explains that it "does not own any of the real estate and restaurant projects, referred to as special purpose vehicles ("SPVs"). And, most importantly, Blackstream has never formed an agreement with AG2, 4 or 5 that could be categorized as a joint venture. [ECF No. 224 at 2].

A joint venture agreement is the only proper avenue that Cardinale can take to establish a fiduciary duty and, thus, require Blackstream to comply with the discovery requests. *See* [ECF No.

223 at 2]. Blackstream directs the Court to its previous May 1, 2024, discovery hearing between the Parties, where AG Two's counsel addresses whether a joint venture agreement exists. [*Id.*]. For example, counsel stated on the record that there is a "fiduciary duty that flows [where] the party to the joint venture agreement is to account fully to their partner," but could not present "a written document at this particular point." [*Id.*] (quoting [ECF Nos. 223-5 at 5:11–25, 223-6 at 24:23–25:6, 27:13–24].

Blackstream's unifying point here is that there is no "agreement between Blackstream and the AG companies, let alone a written joint venture agreement." [ECF No. 223 at 3] (citing [ECF No. 223-8]; *see also* Decl. of Josh Howard, Senior Vice President and General Counsel of Blackstream [ECF No. 168 at 12] ("This means Cardinale assumes the Alternative Global entities . . . are members of the SPVs with a right to their income, yet he makes no factual showing."). And without a joint venture agreement establishing a legal relationship between the parties, Cardinale is without cause to compel discovery from Blackstream. *See* [ECF No. 223 at 14]. The Court reached a similar conclusion in its Order quashing Blackstream's non-party subpoena. *See* [ECF No. 168 at 13] ("Notably, Cardinale fails to show that Blackstream, LLC even possesses or controls the documents related to the SPVs or the restaurant investments."). (citing *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468 (S.D. Fla. 2011)

Further, Blackstream contends that AG Two exceeded the number of interrogatories under Federal Rule of Civil Procedure 33, and the interrogatories and requests for production are overbroad and unduly burdensome. [*Id.* at 15–18]. Separately, Blackstream moves for a protective order, given the nature of the proceedings.[1] It requests the Court grant the protective order and:

[1] The Court allowed Blackstream leave to file its Motion for Protective Order. [ECF No. 222]; *see also* Fed. R. Civ. P. 26(c).

> (i) preclude Cardinale (and AG2, 4 and 5) from taking discovery as to Blackstream until such a time that he has established the existence of a joint venture partnership between AG2, 4 and 5 and Blackstream that would give rise to a fiduciary relationship and entitle him to access to Blackstream's corporate records, or, in the alternative, (ii) schedule an evidentiary hearing at which Cardinale is to introduce evidence to establish such a relationship, and (iii) grant such other and further relief as this Court deems just and proper.

[ECF No. 224 at 16].

## II. LEGAL STANDARD

District courts enjoy "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).

Federal Rule of Civil Procedure 26(b) permits "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" If the information appears reasonably calculated to lead to the discovery of admissible evidence, then it is relevant. *Nancy's Home of Stuffed Pizza, Inc. v. Freedman*, 22-14171-CIV, 2023 WL 6142457, at *2 (S.D. Fla. Sept. 20, 2023) (citing Fed. R. Civ. P. 26(b)(1)). Therefore, discovery is often broad, and to sustain discovery objections to a motion to compel, the objecting party "must . . . show that the requested discovery has no possible bearing on the claims and defenses in this case." *Nancy's Home of Stuffed Pizza*, 2023 WL 6142457, at *2 (quoting *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007)).

Lastly, a protective order under Federal Rule of Civil Procedure 26(c) requires good cause–– a "sound basis or legitimate need"— to limit discovery of the subject information. *Sierra Equity Grp. v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1370–71 (S.D. Fla. 2009) (internal citation omitted). The federal trial court may consider annoyance, embarrassment, oppression, undue burden or expense as indicia for granting a protective order. *See* Fed. R. Civ. P. 26(c).

## III. ANALYSIS

(a) AG Two Fails to Establish a Direct Relationship with Blackstream to Warrant Discovery.

Cardinale fails to present any evidence that establishes a legal right to request discovery from Blackstream. *See Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand"). While AG Two's twenty-eight-page Motion attaches another two hundred and twenty-five pages of exhibits, none of the documents include or reference such an agreement. AG Two's counsel refers to a "collection of documents" that may establish a joint venture agreement during a previous hearing, but nothing on point; Counsel states AG Two sued Blackstream "on a sort of breach of fiduciary duty joint venture theory." [ECF No. 223 at 2] (citing Tr. May 1, 2024, Disc. Hr'g [ECF No. 223-6 at 24:23–25:6].

The Court cannot take Cardinale just at his word that an agreement exists while Blackstream exhausts resources litigating. *See Henderson*, 269 F.R.D. at 686. Further, Cardinale fails to show that the disclosure will help him defend against Plaintiffs' fair value claim or that there is a need for such defense. *See* [ECF No. 165 at 14]. Although it appears that the Alternative Global Companies directed funds to certain projects, it is not evident that Blackstream can be compelled to produce the documents to Cardinale. [*Id.* at 13].

(b) AG Two's Motion Discovery Requests are Overburdensome and Disproportional.

And even assuming that there is a direct relationship between the Parties, requiring Blackstream to search and disclose the desired information is burdensome and disproportional to the case's needs. *See* F. R. Civ. P. 26(b)(2). AG Two's written discovery requests largely mirror past attempts to have Blackstream produce information. *Compare* [ECF No. 223 at 9] ("All agreements between Blackstream and the Alternative Global Companies"), *with* [ECF No. 223-18

(“Any Documents related to or referencing the Alternative Global Companies or Richard Cardinale”). [ECF No. 223 at 8 n.8]. “It is clear that the subpoena and the written discovery requests are after the same information,” as evidenced between the Court’s previous order, the South Carolina litigation, and this present motion. *See* [ECF No. 223 at 8–13].

Again, this is reiterating what the Court stated previously that “it appears each SPV, as its own entity, managed and controlled its documentation . . . . Requiring Blackstream to search and disclose information regarding the multiple SPVs is burdensome and disproportional to the needs of the case.” [ECF No. 168 at 14–15].

For those reasons, AG Two’s Motion to Compel is denied.

(c) <u>Blackstream is Entitled to a Protective Order Against Further Discovery</u>

Blackstream establishes good cause for the Court to impose a protective order against AG Two and Cardinale. Blackstream should not have to expend resources to produce records to a party that has no legal right to possess the discovery in the first place. Blackstream already presented that no fiduciary duty exists between the parties. [ECF No. 224 at 13] (quoting *In re Infinity Bus. Grp., Inc.*, 628 B.R. 213, 239–40 (D.S.C. 2021) (“a plaintiff must prove (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately resulting from the wrongful conduct of the defendant” to establish a breach of fiduciary duty cause of action)).

This is now the third attempt to request discovery from Blackstream. That alone is a “legitimate need” to limit discovery. *See* Fed. R. Civ. P. 26(c); *Sierra Equity*, 672 F. Supp. 2d at 1370–71. Without the protective order, Plaintiffs will likely keep trying to revive past discovery requests, which leads to a real fear of oppression, annoyance, and expense. *See* Fed. R. Civ. P. 26(c)(1); *Kehle v. USAA Cas. Ins. Co.*, No. 17-80447-CV, 2017 WL 6729186, at *6 (S.D. Fla. Dec. 28, 2017). The balance weighs in Blackstream’s favor to grant its protective order and

preclude AG Two and Cardinale from requesting discovery or an accounting of Blackstream's books and records. *See Cornelius v. Rollins Ranches*, LLC, 20-14464-CIV, 2021 WL 10382760, at *2 (S.D. Fla. May 24, 2021). Therefore, the Court will grant Blackstream's protective order and order that Cardinale, AG Two, Four, and Five are precluded from taking discovery as to Blackstream until Plaintiffs establish the existence of a joint venture relationship.

## IV. CONCLUSION

For the reasons expressed, Plaintiffs' Motion to Compel Discovery from Defendant Blackstream Development, LLC, [ECF No. 220] is **DENIED**. Defendant Blackstream Development, LLC's Motion for Protective Order [ECF No. 224] as to Discovery is **GRANTED**.

**SIGNED** this 2nd day of June, 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Roy K. Altman**;
**Counsel of Record**