IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-CV-20436-GAYLES/SHAW-WILDER

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DAVID J. FEINGOLD,
JOSEPH B. BALDASSARRA,
STEVEN S. BALDASSARRA,
BROAD STREET GLOBAL MANAGEMENT, LLC, and
BROAD STREET, INC.,

Defendants, and

JOSEPHBENJAMIN, INC., and
JUST A NICE DAY, INC.,

Relief Defendants.

**DEFENDANTS AND RELIEF DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Defendants and Relief Defendants ("Defendants") hereby file their Reply Statement of Material Facts in support of Defendants' Motion for Summary Judgment (ECF 300). Where Defendants state that a fact is "undisputed," that fact is undisputed only for purposes of the pending motion.

74. Disputed. The SEC's unsupported representations as to what the documents state are immaterial to the Motion. Defendants further object that the cited reports are unauthenticated and offered for the truth of their contents. Fed. R. Evid. 901, 801-802; Fed. R. Civ. P. 56(c)(2).

75. Disputed. The SEC fails to cite to any document distributed by Defendants which provides or states that "there were no fees because Broadstreet profited from the amounts that they received over and above what they paid investors." The few investor declarations relied upon by Plaintiff are perjurious. (*See* ECF 379 at 23-32 of 37) (explaining same). BSGF does not reduce a fund investor's principal balance when management fees are received. (ECF 54-2, ¶ 16). The fees were disclosed and acknowledged in writing. (ECF 300-3 ¶ 6; ECF 300-2 at 6, 21; ECF 84 at 63:18-25).

76. Undisputed that there do not exist separate Broadstreet bank accounts for each series. No provision of the PPM, the Operating Agreement, or any other Critical Document required investor funds to be held in Series-named accounts, and the use of affiliated Broadstreet accounts was disclosed to and acknowledged by investors. (ECF 300-1 ¶ 17; ECF 300-3 ¶¶ 6, 9; ECF 300-4 §§ 4.01, 5.01(e)(ii); ECF 300-2 at 6, 21, 48).

77. Disputed. No funds were "diverted." BSGM, as the fund manager, was provided broad discretion and nothing prohibited BSGM from transferring funds as it did. (*See* ECF 54-2 ¶¶ 55-56). The SEC's own accounting expert confirmed at the TRO hearing that approximately $880 million was deployed in investments for the benefit of investors. (ECF 84 at 121:22-23; *id.*

at 124:25-125:2). Section 4.09 of the Operating Agreement expressly permits the Manager and its Affiliates to purchase an investment that would otherwise be appropriate for the Fund or a Series to own. (ECF 300-4 § 4.09).

78. Disputed. It is unclear what is meant by "Series-level financial statements" nor is any requirement for same cited to. Defendants provided a complete accounting to the SEC satisfying the obligation under the Monitorship Order. (ECF 95). The obligation in every version of the governing documents was one of "commercially reasonable efforts," and the PPM reserved discretion as to the format and method of presentation. (ECF 300-4 § 9.03; ECF 300-2 at 50). BSGM kept and maintained separate records for each Series, and the SEC's own declarant confirms those records were produced at Bates SEC-BSGF-E-0000103 through SEC-BSGF-E-0000184. (ECF 300-1 ¶ 22; ECF 300-4 § 5.01(c); ECF 12 ¶ 55).

79. Disputed. There is no "so-called Tri-Party Agreement" that "purports to take retroactive effect . . . ." There is a Tri-Party Agreement that was executed in or about December 2022 with a stated effective date of June 30, 2022. (ECF 12, Ex. 32). The SEC identifies no representation made to any investor concerning that agreement. (ECF 278-2 at 21:4-7; *id.* at 27:6-8).

80. Disputed. The cited document does not adequately support the SEC's characterization. The asserted "lien" and "cross-liability" are legal conclusions characterizing a document that is the best evidence of its own contents, not statements of fact, and the SEC identifies no representation to any investor concerning the agreement. (ECF 12, Ex. 32, Recitals, ¶¶ 1.1, 1.3); Fed. R. Evid. 1002; Fed. R. Civ. P. 56(a).

81. Disputed. The quoted material is on its face an expression of a person's opinion, not fact. (ECF 269, Ex. B at 25-26 of 85). It is an unsworn, out-of-court statement offered for its

truth and cannot be presented in a form that would be admissible in evidence, and it concerns the redemption transaction rather than any representation made to any investor at the time of investment. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801-802.

82. Disputed. The citation does not alone establish the SEC's contention that such document is an example of an account statement. The exhibit incorrectly bears the name "Broad Street, Inc." at the top. Feingold testified that the error arose during a migration of account-statement preparation from Colonial to a successor system, that "Broad Street, Inc. does not issue account statements," and that every affected statement was corrected once the error was identified. (ECF 12, Ex. 11, at 1459:10-1460:6). The account statements reflected investments at cost as the PPM required, and the PPM disclosed that cost may not represent fair market value. (ECF 300-2 at 20; ECF 300-1 ¶ 15).

83. Disputed. The cited documents do not adequately support the contention asserted. The referenced documents disclose the Manager's broad discretion and state expressly that "[o]wnership in a Series does not confer to any investor ownership in the assets underlying a Series" and that "[t]he Fund, the Manager or any affiliated individuals or entities of the same may be the ultimate owner of the underlying assets of a Series." (ECF 300-2 at 6, 21, 48; ECF 300-4 §§ 4.01, 4.09, 5.01(e)(ii); ECF 300-3 ¶¶ 7-9).

84. Disputed. The cited documents do not adequately support the SEC's characterization. What a document "implied" is argument, not fact. Further, the referenced documents identify "BROADSTREET INC." and its "Development Partner" "CONTENDER DEVELOPMENT," with Joseph Baldassarra (President), David Feingold (CEO) and Steven Baldassarra (COO) under the Broadstreet Inc. banner and Ford Elliot and Josh Howard under the Contender banner. (ECF 12, Ex. 62 at 4). The same documents disclose the Manager's discretion

and that the Manager or its affiliates may be the ultimate owner of the underlying assets of a Series. (ECF 300-2 at 6, 21, 48; ECF 300-4 §§ 4.01, 4.09).

85. Disputed. The cited documents do not adequately support the SEC's characterization. What a document "implied" is argument, not fact. *See* Defendants' response to ¶ 84. The cited decks are the best evidence of their contents and must be read with the disclosures in the PPM and the Operating Agreement, which the Court-appointed Monitor confirmed in writing are "quite broad." (ECF 103 ¶ 35; ECF 300-1 ¶ 9; ECF 300-2 at 6, 21, 48); Fed. R. Evid. 1002.

86. Disputed. The citation does not adequately support the SEC's assertion. Undisputed only that the quoted language appears in the deck.

87. Undisputed that certain investments were ultimately held by BSGM or BSI, which Section 4.09 of the Operating Agreement expressly permits and which the PPM disclosed. (ECF 300-4 §§ 4.01, 4.09; ECF 300-2 at 6, 48; ECF 300-3 ¶ 9).

88. Undisputed that BSGF was not a signatory to the referenced documents nor does the SEC cite to any legal requirement that such be the case. The Manager was empowered to contract for the Fund. (ECF 300-1 ¶ 14; ECF 300-4 § 4.01).

89. Undisputed that as of September 2023 BSGF is not the direct owner of infrastructure projects many of which are owned, in part, by BSI. The SEC does not cite to any legal requirement to own such infrastructure projects by BSGF. Affiliate ownership of underlying assets was expressly disclosed and permitted. (ECF 300-2 at 6, 48; ECF 300-4 § 4.09; ECF 300-3 ¶ 9).

90. Disputed. The cited documents do not adequately support the SEC's characterization. None of the referenced documents state that "the Baldassarras" managed BSDC.

Exhibit 93 at 12 does not exist. Exhibit 42 at 2-3 states that BSGF "has created a subseries investment in Broad Street Development Corporation (BSDC)" and that "[m]anagement of the Broad Street Global Fund shall be the management of BSDC." Exhibit 92 at 1 is a Delaware certificate of incorporation filed June 17, 2021 identifying a single director and no officers or managers. Exhibit 93 is a three-page email chain dated August 21-26, 2024 and has no page 12.

91. Disputed. The cited documents do not adequately support the SEC's characterization. Exhibit 42 at 3 states "BSDC presently intends to pursue ten developments, with the first development being 97 acres of land located on Saluda Dam Road in Easley, South Carolina. The project is intended to consist of 487 Lots currently Split into 2 Phases." Further, such statement is qualified by the disclaimer on the cover of the same deck, which states that "[a]ll information contained herein is subject to change, contains estimates, is not in any manner to be deemed an offer to make an investment" and that "[t]here can be no guarantee as to the accuracy of the information contained herein." (ECF 12, Ex. 42 at 1).

92. Disputed. "Exhibit 42 at 9" does not state that. The deck is the best evidence of its contents. Fed. R. Evid. 1002.

93. Disputed. The cited document does not say "would allow". The deck is the best evidence of its contents, and QSBS treatment requires a five-year holding period before any tax benefit can be secured. I.R.C. § 1202; Fed. R. Evid. 1002; (ECF 300-1 ¶¶ 18-19).

94. Disputed. "Exhibit 42 at 2" does not state that. The deck is the best evidence of its contents. Fed. R. Evid. 1002.

95. Disputed. The citation is incomplete. The SEC omits the significant risk disclosure included on the cover page of the very deck the SEC quotes, which states that "[a]ll information contained herein is subject to change, contains estimates, is not in any manner to be deemed an

offer to make an investment and is for internal use only" and that "[t]here can be no guarantee as to the accuracy of the information contained herein and furthermore this information contains estimates based on presently available information, all of which is subject to change" (ECF 12, Ex. 42 at 1), and the note on the project financials that "[t]he financial results are not guaranteed. The financial models presented are based on experienced based assumptions," (*id.* at 5). The Series was discontinued in the first quarter of 2025, before any five-year holding period could run, and QSBS investors were given the option to be redeemed or to have their investment rolled over. (ECF 300-1 ¶¶ 19-20).

96. Disputed as immaterial. The obligation as to financial statements was one of "commercially reasonable efforts" in every version of the governing documents; every investor acknowledged in writing that it had read and consented to all matters contained in the PPM, the series supplements, the data room documents and Broadstreet's monthly updates and disclosures; and the PPM reserved discretion over the format and method of presentation of financial information. (ECF 300-3 ¶ 3; ECF 300-1 ¶ 21; ECF 300-4 § 9.03; ECF 300-2 at 50).

97. Disputed. "Virtually no activity" is an argumentative characterization rather than a statement of fact. ECF 12, Ex. 95 at 1-46 shows twenty-three consecutive monthly TD Bank statements for a single account ending in 9217 in the name of Broad Street Global Development Corp., beginning with a seven-day partial statement period of June 24-30, 2021 and the SEC cites to no requirement that BSDC bank account statements show more activity. The activity of the QSBS entity is further described at ECF 300-1 ¶ 18.

98. Disputed. Exhibit 35 to ECF 12 does not establish the asserted fact. It is a one-page financial schedule captioned "BSD and CDI — Investor Summary for FY20, FY21, FY22, 1Q23, Updated thru 09-30-23," consisting of columns for equity contributions and equity loans by period,

CDI consolidation and valuation, and forecast project costs, and it bears the legend "The Financial results are not guaranteed." It is not a deed, a title commitment, or any record of title. The ownership columns are captioned "Investor Ownership (K-1 Entity - Current 12/31/22)" and report tax-reporting equity ownership of the listed limited liability companies as of December 31, 2022, not record title to real property. The row the SEC relies upon is "Highway 153 Holdings, LLC," identified by the BuilderTrend name "Saluda Easley"; the exhibit nowhere identifies that row as the ninety-seven-acre Saluda Dam Road tract described in the pitch deck. Broad Street Global Development Corp. is not mentioned anywhere in the exhibit, and a schedule of CDI projects that does not refer to the entity cannot establish that the entity owns nothing. The same exhibit separately lists "Investment in Saluda Construction, LLC (CDI owns 40% at 03/31/23)" with the note that "CDI is Purchasing 20% Own[e]rship per YR for 5 YRS beginning in 2022 and they will own 100% by 2026," so the interests the SEC describes were by the exhibit's own terms changing year over year.

99. Disputed as immaterial. The SEC does not connect this paragraph to any representation made to any investor, and the sole citation does not establish the asserted fact. The witness testified only to his belief — "I believe Alternative North American is myself and Michael Dazzo" — after testifying that he could not confirm the ownership of these entities "without seeing the corporate records." (ECF 12, Ex. 11 at 310:6-8; *id.* at 311:5-6, 13-14). Defendants further object that the witness lacks personal knowledge of the matter asserted. Fed. R. Evid. 602.

100. Disputed. The cited documents do not adequately support the SEC's characterization. BSGM kept and maintained separate records for each Series, and those records were produced to the SEC on approximately November 22, 2023 at Bates SEC-BSGF-E-0000103 through SEC-BSGF-E-0000184. (ECF 300-1 ¶ 22; ECF 300-4 § 5.01(c); ECF 12 ¶ 55). The SEC's

declarant did not attach those schedules to his declaration. (*Id.*) The SEC's own submission describes the Fund Monthly Schedules as tracking client holdings for each Series, monthly investments into each Series, and dividends paid and reinvested for each Series. (ECF 12 ¶ 55). That the SEC would prefer records to be in a different form is not a representation to any investor and is not material.

101. Disputed. The assertion rests entirely on an SEC declarant's characterization of correspondence that is neither attached nor otherwise in the record, and it therefore cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

102. Disputed. The cited documents do not adequately support the SEC's characterization. The obligation each imposed was one of "commercially reasonable efforts." (ECF 12, Ex. 2 at 45; *Id.*, Ex. 4 § 9.03; ECF 300-4 § 9.03; ECF 300-2 at 50). Every investor acknowledged in writing that GAAP-audited financial statements would not be provided. (ECF 300-3 ¶ 3; ECF 300-1 ¶ 21).

103. Disputed. The cited document does not adequately support the SEC's characterization. The referenced correspondence simply does not reflect that BSG Management "ignored an auditor's request for information that prevented the auditor from completing its work" and is immaterial. The SEC also overlooks a significant contributing factor in the absence of an audit was that Broadstreet and/or the SEC advised potential auditors that Broadstreet was under SEC investigation. (ECF 300-1 ¶ 21).

104. Disputed. The cited document does not adequately support the SEC's characterization. *See* Defendants' response to ¶ 103. Undisputed only as to the dates of engagement and termination. The SEC cites no requirement that an auditor be retained and identifies no

representation to any investor that one had been. (ECF 300-1 ¶ 21; ECF 300-3 ¶ 3; ECF 54-2 ¶ 37).

105. Undisputed that Feingold gave the quoted testimony. (ECF 12, Ex. 11, at 296:5-25; *id.* at 993:10-995:20). Disputed to the extent the paragraph implies the breach of any obligation: the SEC identifies no requirement that audited financial statements be delivered to investors, and no representation to any investor that they had been. No GAAP-audited financial statements were required to be delivered to investors; the Operating Agreement and the PPM committed only to commercially reasonable efforts and reserved discretion over the format and method of presentation. (ECF 300-3 ¶ 3; ECF 300-1 ¶ 21; ECF 300-4 § 9.03; ECF 300-2 at 50). Further, what was or was not subsequently "provided" is a characterization outside the cited testimony, and the witness's testimony is the best evidence of what he said. Fed. R. Evid. 1002, 602.

106. Disputed. Only part of the statement referenced in the September 2023 Operating Agreement was deleted. (ECF 300-4 § 9.03; *compare* ECF 12, Ex. 45 at 36, *with* Ex. 44 at 84). Investors had already acknowledged in writing that GAAP-audited financial statements would not be provided, and the SEC identifies no investor who was told otherwise. (ECF 300-3 ¶ 3; ECF 300-1 ¶ 21).

107. Disputed. The citations only restate the PPM and do not adequately support the SEC's characterization.

108. Undisputed only for purposes of this Motion.

[*signature pages follow*]

Dated: September 3, 2026

Respectfully submitted,

**WELTZ KAKOS GERBI WOLINETZ VOLYNSKY LLP**

By: ***Thomas Scot Wolinetz***
Thomas S. Wolinetz
Florida Bar No. 1001160
Irwin Weltz (PHV)
1 Old Country Road, Suite 275
Carle Place, New York 11514
Telephone: (212) 202-3176
Facsimile: (516) 855-8776
twolinetz@weltz.law
irwin@weltz.law

**GALLIVAN WHITE & BOYD P.A.**

By: ***Austin P. Booth***
Ioannis (Ian) G. Conits (PHV)
Austin P. Booth
Florida Bar No. 1049907
55 Beattie Pl., Suite 1200
Greenville, South Carolina 29601
Telephone: 864-271-5432
iconits@gwblawfirm.com
abooth@gwblawfirm.com

**LETT LAW FIRM**

By: ***Ariel Lett***
Ariel Lett
Florida Bar No. 115513
6303 Blue Lagoon Dr., Suite 400
Miami, FL 33126
Telephone: 305-912-5388
alett@lettlawfirm.com

*Attorneys for Broadstreet Inc. and David Feingold*

**BERKELEY LAW P.A.**

By: ***Lorne E. Berkeley***
Lorne E. Berkeley
Florida Bar No. 146099
10600 Griffin Road, Suite 104
Cooper City, Florida 33328
Telephone: (954) 719-3484
Lorne@BerkeleyLawFL.com

*Attorneys for Broadstreet Global Management LLC, Joseph B. Baldassarra, and Steven B. Baldassarra*

**LOMAX LEGAL PLLC**

By: ***Brianna P. Hathaway***
Brianna P. Hathaway
Florida Bar No. 1019219
95 Merrick Way, 3rd Floor
Coral Gables, FL 33134
Telephone: 305.582.6506
Brianna@LomaxLegal.com

*Attorneys for Broadstreet Global Management LLC and for Relief Defendants, JosephBenjamin, Inc. and Just a Nice Day, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 3, 2026, I filed this document through the CM/ECF system, which will cause a copy of this document to be served by Notice of Electronic Filing on all counsel and parties of record.

By: ***Austin P. Booth***
Austin P. Booth